**UNITED STATES COURT OF INTERNATIONAL TRADE**

---------------------------------------------------------------------X

**ROOT SCIENCES, LLC**            :
                                  :
        **Plaintiff,**            :
                                  :          PUBLIC VERSION
        *v.*                      :          **No. 21-00123**
                                  :
**THE UNITED STATES**             :
                                  :
        **Defendant.**            :
---------------------------------------------------------------------X

<u>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S APPLICATION FOR AN ORDER TO SHOW CAUSE.**</u>

NEVILLE PETERSON LLP

Richard F. O'Neill
999 Third Ave., Ste. 2525
Seattle, WA 98104
(206) 518-9335
roneill@npwny.com

John M. Peterson
Patrick B. Klein
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Dated:  March 24, 2021

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

STATEMENT OF FACTS ......................................................................................... 2

ARGUMENT ............................................................................................................. 5

I.     This Action Involves the Exclusion of Plaintiff's Merchandise From Entry and the Court's Rules Anticipate That Such Actions Will be Given Precedence ........................... 6

     A.     Good Cause Exists to Grant This Motion and Order Defendant to Appear and Show Cause Why an Expedited Litigation Schedule Should Not Be Entered ........ 7

          1.     Plaintiff Has a High Likelihood of Success in this Case. ........................... 7

          2.     Plaintiff is Suffering Economic Harm as a Result of CBP's Position. ....... 14

          3.     The Public Interest Favors Imposing an Expedited Schedule. ................. 17

          4.     The Balance of Hardships Favors the Plaintiff. ....................................... 18

II.     This Court Should Order Defendant to Appear and Show Cause Why the Merchandise Should Not Be Immediately Released to Plaintiff Pursuant to 19 U.S.C. § 1499(c)(5)(C) ...................................................................................................... 19

CONCLUSION ......................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Invenergy Renewables Inc. v. United States*, 422 F. Supp. 3d 1255 (Ct. Int'l Tr. 2019)...............7
*Silfab Solar, Inc. v. United States*, 892 F.3d 1340 (Fed. Cir. 2018) ............................................7
*United States v. Columbia Pictures Corp.*, 169 F. Supp. 888 (S.D.N.Y. 1959)............................7
*Winter, v. Nat. Res. Def. Council*, 555 U.S. 7 (2008) .................................................................7

**Federal Statutes**

1 U.S.C. § 1 ....................................................................................................................................9
19 U.S.C. § 1499.................................................................................................... 1, 4, 19, 20
19 U.S.C. § 1595a................................................................................................................5, 7, 8
21 U.S.C. § 841..............................................................................................................................9
21 U.S.C. § 863..................................................................................................................... passim
28 U.S.C. § 1581.......................................................................................................................4, 6

**Federal Regulations**

19 C.F.R. § 174.13 .........................................................................................................................4
19 C.F.R. § 174.21 ......................................................................................................................4, 5

**State Statutes and Regulations**

Cal. Health & Safety Code § 11018.2..........................................................................................12
Cal. Health & Safety Code § 11362.1.................................................................................... 12, 13
Control, Regulate and Tax Adult Use of Marijuana Act, 2016 Cal. Legis. Serv. 1 ....................12
Initiative 502, 2013 Wash. Laws. ch. 3, § 20(3).........................................................................10
RCW 69.50.412 ...........................................................................................................................11
WAC 314-55-010 .........................................................................................................................11
WAC 314-55-104 ................................................................................................................... 11, 13
WAC 51-54A-3800 ......................................................................................................................11

**USCIT Rules**

USCIT Rule 3 ............................................................................................................................1, 6
USCIT Rule 7 .................................................................................................................................1

**Other Authorities**

21 U.S.C. § 806.............................................................................................................................9
Headquarters Ruling H275206 (March 24, 2017) .......................................................................14
Headquarters Ruling H282163 (April 13, 2017) .........................................................................14
Headquarters Ruling H306125 (August 5, 2020) ........................................................................14
Robert A. Mikos, *Marijuana Reforms Win Big at the Polls* … Vand. U. (November 4, 2020) .....................................................................................................................................10
Robert A. Mikos, *Only One State Has Not Yet Legalized Marijuana in Some Form* … , Vand. U. (July 16, 2018) ...........................................................................................................9

**UNITED STATES COURT OF INTERNATIONAL TRADE**

-------------------------------------------------------------------X

ROOT SCIENCES, LLC                        :

                                      :

        **Plaintiff,**                     :

                                        :

        *v.*                            :            **No. 21-00123**

                                        :

**THE UNITED STATES**                 :

                                         :

        **Defendant.**                    :

-------------------------------------------------------------------X

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S APPLICATION FOR AN ORDER TO SHOW CAUSE.

In accordance with Rules 3(g)(3) and 7 of the Rules of the United States Court of International Trade ("USCIT R."), Plaintiff, Root Sciences, LLC, hereby submits this Memorandum of Points and Authorities in support of its Application for an Order directing Defendant, the United States, to appear and Show Cause why the Court should not order (i) the cancellation of the deemed exclusion of Plaintiff's merchandise from entry into the United States pursuant to 19 U.S.C. § 1499(c)(5)(C); and/or (ii) the entry of an expedited litigation schedule in this case involving the exclusion of merchandise from entry into the United States.

As noted herein, since Defendant has failed to make an admissibility determination within the time provided by law, Plaintiff is entitled, pursuant to 19 U.S.C. § 1499(c)(5)(C), to an order directing the Defendant to appear and show good cause why an admissibility determination has not been made. Even assuming *arguendo* that the Defendant can provide good cause why it did not act administratively to determine admissibility in a timely manner, Plaintiff is entitled to an order directing Defendant to appear and show cause why an expedited litigation schedule

should not be entered in this case, so that the Court may make a prompt determination of admissibility.

Plaintiff submits that there is good cause for granting this Application.

## STATEMENT OF FACTS

This action is commenced to contest the deemed denial of Plaintiff's protest against the exclusion of certain merchandise from entry into the United States. Root Sciences imported the subject merchandise, described below, into the U.S. under cover of Los Angeles/Long Beach ("LA/LB") Entry No. F23-9253382-4 on December 18, 2020. *See* Customs Form ("CF") 7501, Compl. Ex. A, at Protest Ex. B.

The merchandise in Entry No. F23-9253382-4 was presented to CBP for examination on or around December 18, 2020. It consists of certain parts, specifically the feed vessel, for a Cryo-Ethanol Extraction System (Devex GmbH Model No. CryoEXS 400) ("CryoEXS400"). The CryoEXS 400 is an all-in-one cryo-extraction, solvent recovery and decarboxylation system designed for the recovery of cannabis crude extract from cannabis biomass. Cryo-ethanol extraction (a/k/a cold ethanol extraction) is an efficient solution for large-scale hemp and cannabis processing. It produces a cannabinoid-rich crude extract that is ideal for further refinement (*e.g.*, using short-path distillation machines) into high purity distillates and isolates. The CryoEXS400 is manufactured by Devex GmbH, of Splieterstr. 70, 48231 Warendorf, Germany ("Devex"). *See e.g.*, CryoEXS 400 Product Brochure, Compl. Ex. A, at Protest Ex. C.

The CryoEXS400 is depicted below (*id.*):



The parts of the CryoEXS400 imported under cover of Entry No. F23-9253382-4, which are at issue in this action, consist of the <u>hopper feed vessel</u> of the CryoEXS400 (the "Subject Merchandise"), which is depicted in the upper left portion of the above-image, and isolated below in the following image (*id.*):



CBP detained the Subject Merchandise on January 13, 2021. *See* DHS Form 6051, Detention Notice and Custody Receipt for Detained Property ("Notice of Detention"), Compl. Ex. A, at Protest Ex. A. The Notice of Detention, which is the best evidence of its contents, states that the Subject Merchandise was detained on suspicion that it was "possible drug paraphernalia."

Customs has made no inquiries of the Plaintiff regarding the detained merchandise.

Plaintiff, through its agents, and/or through counsel, has made numerous requests for an opportunity to confer with CBP at the Port of LA/LB. These requests have been made as early as January 2021 orally by telephone and voicemail to LA/LB's entry specialist teams, LA/LB's Trade Interface Unit ("TIU"), and to personnel at the CBP Center for Excellence and Expertise ("CEE") for Machinery, which is headquartered at the Port of Laredo, TX, and in writing by e-mail to LA/LB's entry specialist teams and LA/LB's TIU. On each occasion, CBP has refused to communicate regarding the detention. *See e.g.,* Affirmation of Richard F. O'Neill ("Aff. O'Neill").

The Subject Merchandise was deemed excluded by operation of 19 U.S.C. § 1499(c)(5) thirty (30) days after issuance of the notice of detention. Plaintiff timely protested the deemed exclusion of the Subject Merchandise on February 18, 2021 by filing LA/LB Port Protest No. 2704-2115231-2 (the "Protest"), pursuant to 19 C.F.R. § 1499(c), and 19 C.F.R. §§ 174.13 and 174.21(b), which require review and action by CBP "within 30 days from the date the protest was filed." *See* Protest and Memorandum of Points and Authorities in Support of Protest, Compl. Ex. A. The CBP regulations further provide that "[a]ny protest filed pursuant to this paragraph which is not allowed or denied in whole or in part before the 30th day after the day on which the protest was filed shall be treated as having been denied on such 30th day for purposes of 28 U.S.C. 1581."

The subject excluded merchandise is intended for, and necessary for, a CRYOEX400 Cryo-Ethanol Extraction System which is being installed at the premises of one of plaintiff's customers, which customer is located in the State of California.

As detailed below, California is a State which has legalized marijuana and whose laws authorize the possession, installation and use of devices for the processing of cannabis, such as the CRYOEX400 Cryo-Ethanol Extraction System.

The protest, and supporting materials submitted therewith, demonstrated that the Subject Merchandise is used in the hemp and cannabis industry but is not an importation contrary to law under 19 U.S.C. § 1595a(c)(2), and is not prohibited "drug paraphernalia" under 21 U.S.C. § 863(a). *See* Compl. Ex. A. Rather, it is subject to the authorization exemption of 21 U.S.C. § 863(f)(1), which allows those "authorized by local, State, or Federal law" to engage in the otherwise prohibited conduct, including the importation of the Subject Merchandise. The Subject Merchandise should have been allowed entry because its distribution, possession, and manufacture has been explicitly authorized by the laws of the State of California, and Washington State.

Plaintiff's protest was deemed denied pursuant to 19 C.F.R. § 174.21(b) on March 20, 2021—*i.e.,* "the 30th day after the day on which the protest was filed … " *Id.* On March 23, 2021, CBP emailed confirmation that the Protest was deemed denied on March 20, 2021. *See* Aff. O'Neill, at ¶ 14 and Ex. C.

Plaintiff timely filed this action to challenge the denial of its protest on March 22, 2021.

## ARGUMENT

Several factors support Plaintiff's Application for an Order Directing Defendant to Show Cause Why an Expedited Litigation Schedule Should Not Be Entered in this case. We summarize these as follows.

## I. This Action Involves the Exclusion of Plaintiff's Merchandise From Entry and the Court's Rules Anticipate That Such Actions Will be Given Precedence

Unlike most protest cases commenced pursuant to 28 U.S.C. § 1581(a), this action does not seek a refund of duties paid. Rather it seeks to obtain a swift adjudication on the question of whether Plaintiff's imported merchandise, consisting of parts to the CryoEXS400 extraction system, are admissible under the laws of the United States. Congress has spoken on this issue in 21 U.S.C. § 863(f)(1) and carved out an authorization exemption which requires that CBP apply the laws of relevant states in determining the admissibility of goods meeting the definition of "drug paraphernalia" under 21 U.S.C. § 863(d).

USCIT R. 3(g) provides (emphasis added):

(g) Precedence of Action. On motion for good cause or on its own the court may expedite the following actions and give them precedence over other pending actions:

(1) An action involving the exclusion of perishable merchandise or redelivery of such merchandise;

(2) An action described in 28 U.S.C. § 1581(c) to contest a determination under section 516A or 517(g) of the Tariff Act of 1930;

(3) An action described in 28 U.S.C. § 1581(a) to <u>contest the denial of a protest</u>, in whole or in part, under section 515 of the Tariff Act of 1930, <u>involving the exclusion or redelivery of merchandise;</u>

(4) An action described in 28 U.S.C. § 1581(b) to contest a decision of the Secretary of the Treasury under section 516 of the Tariff Act of 1930;

(5) Any other action that the court determines, based on motion and for good cause shown, warrants expedited treatment.

This is an action contesting the denial of a protest under section 515 of the Tariff Act of 1930 involving the exclusion of Plaintiff's merchandise from entry and the Rules of this Court anticipate that such actions will be given precedence. *Id.*

**A.** **Good Cause Exists to Grant This Motion and Order Defendant to Appear and Show Cause Why an Expedited Litigation Schedule Should Not Be Entered**

While Plaintiff is not seeking preliminary injunctive ("PI") relief in this action,[1] the factors typically considered by the Court in considering motions for PIs serve a useful guide for examining the good cause supporting the instant request. The court weighs four factors in ruling on a motion for a PI: (i) whether the plaintiff is likely to succeed on the merits; (ii) whether the plaintiff would suffer irreparable harm without the PI; (iii) whether the balance of hardships favors the plaintiff; and (iv) whether the PI would serve the public interest. *See e.g., Winter, v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *Silfab Solar, Inc. v. United States*, 892 F.3d 1340, 1345 (Fed. Cir. 2018); *see also Invenergy Renewables Inc. v. United States*, 422 F. Supp. 3d 1255 (Ct. Int'l Tr. 2019).

**1.** **Plaintiff Has a High Likelihood of Success in this Case.**

In this case, Plaintiff has a high likelihood of success on the merits of its claim—namely, the admissibility of the Subject Merchandise under 19 U.S.C. § 1595a(c) and 21 U.S.C. § 863(f)(1). The laws of California and Washington State concerning marijuana paraphernalia affirmatively authorize conduct otherwise prohibited by the federal Paraphernalia Control Act, deeming federally prohibited paraphernalia activities "lawful" and eliminating the Paraphernalia Control Act's prohibitions, including the federal prohibition on importation contained at 21 U.S.C. § 863(a), and attaching consequences, including seizure and forfeiture, *id.* at § 863(c). By invoking the authorization exemption of 21 U.S.C. § 863(f)(1), Washington State and California laws *inter alia* eliminate the federal prohibition on importing marijuana paraphernalia, which

---

[1] Courts will generally not grant preliminary injunctive relief which is tantamount to the final relief demanded, the rule is not absolute. *See United States v. Columbia Pictures Corp.*, 169 F. Supp. 888, 895 (S.D.N.Y. 1959).

also serves to eliminate any claim that the importation of marijuana paraphernalia into such states is an importation "contrary to law" under 19 U.S.C. § 1595a(c).

Merchandise may be seized and forfeited excluded from entry, and subjected to other sanctions, if *inter alia* "its importation or entry is subject to any restriction or prohibition which is imposed by law relating to health, safety, or conservation and the merchandise is not in compliance with the applicable rule, regulation, or statute[.]" 19 U.S.C. § 1595a(c)(2)(A).

Merchandise imported into the United States in violation of the drug paraphernalia restrictions of the Mail Order Drug Paraphernalia Control Act of 1986 ("Paraphernalia Control Act"), Pub. L. 99-570, 100 Stat. 3207-51, 21 U.S.C. § 863, *see also* Controlled Substances Act ("CSA"), Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub. L. No. 91-513, 84 Stat. 1236 (codified as amended at 21 U.S.C. §§ 801-972), can be excluded, and seized by CBP under authority of 19 U.S.C. § 1595a(c)(2)(A). 21 U.S.C. § 863(a). The Paraphernalia Control Act makes it "unlawful for any person—

(1) to sell or offer for sale drug paraphernalia;

(2) to use the mails or any other facility of interstate commerce to transport drug paraphernalia; or

(3) to import or export drug paraphernalia.

*Id.* at § 863(a). "Drug paraphernalia," as statutorily defined, covers a wide range of items used to prepare, conceal, and ingest controlled substances. According to the Paraphernalia Control Act, which is the best evidence of its contents, "Drug Paraphernalia" is defined as:

> … any equipment, product, or material of any kind which is primarily intended or designed for use in manufacturing, compounding, converting, concealing, producing, processing, preparing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance, possession of which is unlawful under this subchapter. It includes items primarily intended or designed for use in ingesting, inhaling, or otherwise introducing marijuana, cocaine,

hashish, hashish oil, PCP, methamphetamine, or amphetamines into the human body …

*Id.* at § 863(d). The Paraphernalia Control Act makes unlawful certain paraphernalia-related activities, id. at § 863(a), but the prohibition is not absolute.

Congress enacted a statutory exemption to the Paraphernalia Control Act at 21 U.S.C. § 863(f)(1), which demands consideration of local, state, and/or federal authorizations of the manufacture, possession, or distribution of merchandise meeting the federal definition of "drug paraphernalia," providing (emphasis added):

(f) Exemptions. <u>This **section shall not apply to**</u>—

(1) **any person authorized by local, State, or Federal law** <u>to manufacture, possess, or distribute such items</u>.

This exemption removes the prohibitions of § 863(a) for any "person"[2] authorized by local, state, or federal law to manufacture, possess, or distribute "drug paraphernalia."

Although prohibited by federal law, 21 U.S.C. § 841(a), nearly every state has legalized marijuana[3] in one form or another. *See* Robert A. Mikos, *Only One State Has Not Yet Legalized Marijuana in Some Form … ,* Vand. U. (July 16, 2018), https://my.vanderbilt.edu/marijuanalaw/2018/11/update-voters-in-3-of-4-states-approve-marijuana-legalization-measures (last accessed March 17, 2021). Numerous states have enacted

---

[2] The Dictionary Act, originally enacted in 1871, instructs courts to apply certain meanings to all federal statutory definitions of certain common words (including "person") "unless context indicates otherwise." 1 U.S.C. § 1. It provides that "<u>the words 'person'</u> and 'whoever' <u>include corporations, companies</u>, associations, firms, partnerships, societies, and joint stock companies, <u>as well as individuals</u>[.]" *Id.* (emphasis added).

[3] "Marijuana" is defined as "all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin." 21 U.S.C. § 806(a)(16)(A). "Marijuana" is classified as a Schedule I controlled substance under federal law, making it unlawful for any person to knowingly possess, dispense, distribute, or manufacture it. 21 U.S.C. § 841(a).

laws legalizing, *inter alia*, the growing, processing, possession and distribution/sale of marijuana for, *inter alia*, recreational and medical use. As of Nov. 3, 2020, 36 states (including Washington D.C.) have adopted medical marijuana laws, and 15 of those states (in addition to Washington DC) have adopted recreational marijuana laws. *See* Robert A. Mikos, *Marijuana Reforms Win Big at the Polls* … Vand. U. (November 4, 2020), accessible at https://my.vanderbilt.edu/marijuanalaw/2020/11/marijuana-reforms-win-big-at-the-polls/ (last accessed March 17, 2021). States have also enacted laws legalizing and authorizing the manufacture, possession, and distribution of merchandise meeting the federal definition of "drug paraphernalia" by persons over the age of 21. *See* 21 U.S.C. § 863(d).

Congress prescribed that the potential penalties for violating the Paraphernalia Control Act would be inapplicable in cases where a State has enacted laws legalizing, taxing, and/or regulating the use, possession, and distribution of medical and recreational marijuana. The federal authorization exemption, 21 U.S.C. § 863(f)(1), makes clear that CBP has no authority to seize imported "drug paraphernalia," as defined under § 863(d), as an importation "contrary to law" under 19 U.S.C. § 1595a(c), when state law serves to authorize its manufacture, possession, or distribution. This proscription clearly empowers States to enact laws that take advantage of the 21 U.S.C. § 863(f)(1) authorization exemption so that all persons (whether individual or corporate) doing business in their State can be shielded from the consequences that may otherwise attach under the to Paraphernalia Control Act violations.

Root Sciences is a Washington State limited liability corporation with its principal place of business in Belfair, WA. Washington State legalized the recreational use of marijuana in 2012 when its citizens voted to pass of Initiative 502, 2013 Wash. Laws. ch. 3, § 20(3) ("I-502"). The Washington State Liquor and Cannabis Board ("WSLCB") regulates Washington's cannabis

market, creating and enforcing rules regarding marijuana. Per the Revised Code of Washington ("RCW"), a person in the State of Washington violates the drug paraphernalia laws if they use, deliver, or possess any "equipment, products, [or] materials of any kind" to "plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance other than marijuana." RCW 69.50.412 (emphasis added); *see also* Washington Administrative Code ("WAC") 314-55-010 (excluding from the definition of "paraphernalia" all "items for growing, cultivating, and processing marijuana[.]"). Accordingly, under Washington State law, the possession, manufacture, or distribution of marijuana-related "equipment, products, and materials of any kind" is authorized.

Washington State law imposes significant and stringent requirements on marijuana extractors. *See e.g.,* WAC 314-55-104 ("Marijuana Processor License Extraction Requirements"). These requirements include, but are not limited to, the following:

- Professional grade closed loop extraction system must be commercially manufactured and bear a permanently affixed and visible serial number;
- Licensed engineer review and prior certification from state-licensed engineer must be provided to the WSLCB to certify that the system was (i) commercially manufactured; (ii) safe for its intended use (*i.e.,* as a professional grade closed loop extraction system); and (iii) built to "codes of recognized and generally accepted good engineering practices" (*e.g.,* ASME, ANSI, UL, ASTM).
- Certification of the professional grade closed loop extraction system must contain signature and stamp of a professional engineer and the serial number of the extraction unit being certified.
- Before the item is sold, the technical report accompanying a particular professional grade closed loop extraction system must be approved by the state building code officials, *see e.g.,* WAC 51-54A-3800.

The merchandise which is the subject of this request was imported into the United States before being detained and excluded at the Port of Los Angeles/Long Beach, CA. It is intended for sale to Plaintiff's customer which is located in the State of California.

Cannabis in California has been legal for medical use since 1996, and for recreational use since 2016. California's marijuana paraphernalia law specifically addresses the federal Paraphernalia Control Act and authorization exemption of 21 U.S.C. § 863(f)(1). *See* Control, Regulate and Tax Adult Use of Marijuana Act, 2016 Cal. Legis. Serv. 1 (codified as amended in scattered sections of Cal. Bus. & Prof. Code, Cal. Food & Agric. Code, Cal. Health & Safety Code, Cal. Lab. Code, Cal. Rev. & Tax Code, and Cal. Water Code). California's marijuana paraphernalia law, which is the best evidence of its contents, (i) makes it "lawful" to possess, transport, purchase, procure, use, manufacture, and give away marijuana "accessories" to persons over twenty-one years of age, *see* Cal. Health & Safety Code § 11362.1(a)(5) ("[i]t shall be lawful under state and local law…for persons 21 years of age or older to…[p]ossess, transport, purchase, obtain, use, manufacture, or give away cannabis accessories to persons 21 years of age or older without any compensation whatsoever."); and (ii) defines marijuana "accessories" with language that closely follows the federal definition of paraphernalia, stating:

> "Cannabis accessories" means any equipment, products or materials of any kind which are used, intended for use, or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, smoking, vaporizing, or containing cannabis, or for ingesting, inhaling, or otherwise introducing cannabis or cannabis products into the human body.;

*See* Cal. Health & Safety Code § 11018.2; *cf* 21 U.S.C. § 863(d) ("The term 'drug paraphernalia' means any equipment, product, or material of any kind which is primarily intended or designed for use in manufacturing, compounding, converting, concealing, producing, processing, preparing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance, possession of which is unlawful ..."); (iii) clarifies that by making paraphernalia-related activities lawful, the California law "intend[s] to meet the requirements of subsection (f) of Section 863 of Title 21 of the United States Code (21 U.S.C. Sec. 863(f))"—the

21 U.S.C. § 863(f)(1) authorization exemption—"by authorizing, under state law, any person in compliance with this section to manufacture, possess, or distribute cannabis accessories," *see* Cal. Health & Safety Code § 11362.1(b); and (iv) that paraphernalia should not be subject to the penalties imposed by the Paraphernalia Control Act, stating that items deemed "lawful" by the provision "are not contraband nor subject to seizure, and no conduct deemed lawful by this [provision] shall constitute the basis for detention, search, or arrest." *Id.* § 11362.1(c).

While 21 U.S.C. § 863(f)(1) clearly exempts from the prohibitions of 21 U.S.C. § 863(a) any person who is authorized by local, state, or federal law to manufacture, possess, or distribute "drug paraphernalia," CBP has not consistently recognized this statutory exemption in determining the admissibility of cannabis and hemp processing equipment and parts thereof when imported into states such as California and Washington State that have explicitly authorized the possession, distribution, and manufacture of merchandise meeting the federal definition of "drug paraphernalia." 19 U.S.C. § 863(d).

The Subject Merchandise, consisting of parts to the CryoEXS400 extraction system, has been subject to prior review and certification by third party engineers as required by state law and related regulations. *See e.g.*, WAC 314-55-104. The Engineer Certification Report (*see* Pressure Safety Inspectors, Technical Report No. 201910008, Rev. 0 (August 20, 2020), *see* Compl. Ex. A, at Protest Ex. D), demonstrates that the CryoEXS 400 has undergone strict technical safety reviews of the system designs by professional engineers licensed by numerous states. The design of the CryoEXS 400 extraction system has been approved by state-certified professional engineers from more than two dozen states including Washington State and California.

The instant exclusion is unlawful and disregards the clear intent of Congress which seeks to recognize state laws governing merchandise meeting the federal definition of "drug paraphernalia." *See* 21 U.S.C. § 863(d). The disregard of Congressional intent reflects a concerning CBP policy position which refuses to recognize and apply the exemption which Congress enacted in 21 U.S.C. § 863(f)(1). CBP's interpretation is incorrect as a matter of law. The position taken by CBP in Headquarters ("HQ") Ruling H306125 (August 5, 2020), HQ Ruling H275206 (March 24, 2017), and HQ Ruling H282163 (April 13, 2017), represents numerous attempts to write the 21 U.S.C. § 863(f)(1) authorization exemption—on which Root Sciences relies to lawfully conduct business in this country—out of the law. This ultra vires interpretation of the law, as reflected in the instant exclusion of merchandise, must be rejected by this Court, and the merchandise must be released.

For these reasons, Plaintiff submits that it has a strong likelihood of success on the merits of its admissibility claims in this case. This provides good cause for expediting the litigation of this matter.

### 2.   Plaintiff is Suffering Economic Harm as a Result of CBP's Position.

As noted above, CBP has taken the position that it can disregard the clear intent of Congress which seeks to recognize state laws governing merchandise meeting the federal definition of "drug paraphernalia," *see* 21 U.S.C. § 863(d), in determining whether importers are authorized to deal in such goods, and therefore exempted under 21 U.S.C. § 863(f)(1).

Root Sciences' imported merchandise has been detained, seized, excluded—and generally harassed—at numerous ports upon entry into the United States. In each prior instance, the merchandise was imported at U.S. ports of entry located within states that have enacted laws

that unquestionably trigger the federal authorization exemption of 21 U.S.C. § 863(f)(1). Root Sciences faces potentially irreparable and continuing harm.[4]

Root Sciences will suffer continued and ongoing harm if it is not permitted release of the Subject Merchandise. *See* Affirmation of Forrest Didier, CEO of Root Sciences, LLC (hereinafter "Aff. Didier"), at ¶ 10. While the merchandise in question is not technically "perishable merchandise" in the conventional sense of the term, the goods are subject to a sales and installation agreement that requires elaborate coordination with the customer, specialized trades persons at the site of installation, and local licensing and permitting authorities.

Root Sciences' customer in California requires the delivery of the feeder vessel for the CryoEXS400 system so that it may complete the assembly of the system [




] Accordingly, the fact that the excluded merchandise is subject to a sales and installation agreement and the fact that Root Sciences will lose additional revenue beyond the value of the Subject Merchandise supports the request for an expedited litigation schedule.

Root Sciences also has significant concerns with potential loss of goodwill, damage to business reputation, and lost business opportunities. The company has had several recent occasions where CBP has detained and/or seized its imported merchandise on suspicion of "drug

---

[4] It should be noted that 21 U.S.C. § 863(b) imposes monetary and criminal penalties for violations of 21 U.S.C. § 863(a), including imprisonment for not more than three years and fines under title 18. Such potential for the imposition of criminal and monetary penalties constitute irreparable harm.

paraphernalia." In each of these prior instances—which occurred at the Port of Seattle, WA, and the Port of Chicago, IL—the merchandise was ultimately released back to Root Sciences (after counsel engaged CBP to explain how the 21 U.S.C. § 863(f)(1) authorization exemption is triggered by applicable state law), with no requirement that the company pay of remission fees, storage costs, or penalties. *Id.* at 11. The resulting delays in Root Sciences' ability to make timely delivery and installation of equipment at its customer's premises erodes the company's hard earned goodwill, damages its reputation as a reliable supplier, and may result in the loss of future business opportunities. *Id.* Such losses are irreparable and cannot be compensated by an award of damages in this lawsuit.

Moreover, the industry is aware of at least one other situation where CBP has effectively excluded merchandise from entry by declining to reach an admissibility determination regarding whether or not imported merchandise is "drug paraphernalia" under 21 U.S.C. § 863(d). *Id.* CBP cannot elect to exclude goods from entry by declining to make a determination as to admissibility, as is the case here, and in *Keirton USA, Inc. v. U.S. Customs and Border Protection*, U.S. District Court for the Western District of Washington, Case No. 21-224.[5]

In this regard, the measure of whether an economic harm is irreparable is whether it can be compensated with an award of money damages. However, no damages are available in an action such as the instant one, and Defendant has considerable sovereign immunity.

CBP continues to blindly refuse to consider Congressional intent to consider state authorizations of cannabis paraphernalia in 21 U.S.C. § 863(f)(1). Until this action is litigated to completion, Root Sciences is faced with irreparable harm on a continuing basis due to the

---

[5] *Keirton* involves a CBP exclusion of parts for products known as "twisted trimmers" which are used to harvest agricultural commodities, including cannabis by legal cannabis producers.

uncertainty created by CBP's unlawful refusal to consider 21 U.S.C. § 863(f)(1), which requires that CBP consider state authorizations of cannabis paraphernalia in reaching an admissibility determination.

### 3. The Public Interest Favors Imposing an Expedited Schedule.

The public interest demands clarity in CBP's consideration of the authorization exemption of the Paraphernalia Control Act, 21 U.S.C. § 863(f)(1). CBP is incredibly inconsistent in its application of the exemption and consideration of States' laws that authorize conduct otherwise prohibited by federal law.

In passing the Controlled Substances Act, Congress was clear that the federal government should abstain from enforcing and regulating drug paraphernalia. According to a Department of Justice Manual, this is "because [federal enforcement] was not thought to represent the most efficient or sensible allocation of federal drug enforcement resources." *See* U.S. Dep't of Justice, Drug Paraphernalia: Federal Prosecution Manual 1 (1991) ("DOJ Drug Paraphernalia Manual of 1991"), accessible at https://www.ncjrs.gov/pdffiles1/Digitization/134764NCJRS.pdf (last accessed March 20, 2021). The widely adopted 1979 Model Drug Paraphernalia Act ("Model Act") served as a guide to enable states to legislate the possession, sale, manufacture, and advertisement of drug paraphernalia. *See United States v. Mishra*, 979 F.2d 301, 303 (3d Cir. 1992) (The Model Act was "adopted in some form in thirty-eight states and the District of Columbia."). "While state laws patterned on the Model Act were largely effective in combatting intrastate sales," Remarks of Rep. Mel Levine on the House Floor, 131 Cong. Rec. 5932·(Mar. 20, 1985), concerns about inconsistencies between the federal prohibition of drugs versus the lack of federal prohibition of drug paraphernalia, and concerns about the trafficking of drug paraphernalia, led Congress to pass the Mail Order Drug Paraphernalia Control Act of 1986,

which was patterned after the Model Act. *See* DOJ Drug Paraphernalia Manual of 1991, at 3. However, the 1986 Act went a step beyond the Model Act and "added an exemption provision for tobacco products[6] and authorized individuals." *Id.* at 4. As in the CSA, Congress again reiterated that the federal government's prohibition of drug paraphernalia in 21 U.S.C. § 863(a) is submissive to the laws of the States wherever authorization is given. *See* 21 U.S.C. § 863(f)(1).

In this case, the public interest clearly favors providing the public with an accurate statement on the authorization exemption that comports with the authorization exemption in § 863(f)(1) and requires CBP to interpret and apply relevant state laws. This is particularly true in a time where there is such inconsistency in application by CBP and in light of the ever-expanding legalization of cannabis—whether industrial hemp at the federal level, and/or medical and recreational marijuana by the States. The public, and especially those operating lawfully under State legalization regimes, deserve clarity, and such relief should be expedited where CBP has, without good cause, refused to make an admissibility determination.

### 4. The Balance of Hardships Favors the Plaintiff.

Imposing an expedited litigation schedule will not unduly burden the Defendant. While CBP was uniquely uninterested in engaging with Plaintiff during the administrative stage—

---

[6] To determine whether an item is intended for tobacco use or for use with a controlled substance, courts look to objective factors rather than a defendant's subjective intent. *See Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 520–21 (1994) ("An item's 'traditional' use is not based on the subjective intent of a particular defendant."). As defined by the Act, "drug paraphernalia" refers to any item "primarily intended or designed for use in manufacturing, compounding, converting, concealing, producing, processing, preparing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance." 21 U.S.C. § 863(d). Subsection (d) recites a brief list of items that fall within the definition, but an item may still be considered paraphernalia when "designed" or "primarily intended" for use with a controlled substance. *Id.* It is the intent of the manufacturer, rather than that of the retailer or buyer, that is relevant, *Posters 'N' Things, Ltd.,* 511 U.S. at 518, and no scienter requirement exists for parties other than manufacturers.

refusing numerous requests for conference calls, ignoring most correspondence, and being entirely evasive as to its position on the authorization exemption of 21 U.S.C. § 863(f)(1)—Plaintiff now seeks judicial intervention to force the Government to engage on these important issues. The Government has passively allowed Plaintiff's protest to be "deemed denied." Only judicial intervention will force the Government to meaningfully consider the important issues involved in this case. Plaintiff has intentionally positioned this matter so that it would be ready for quick adjudication, should it become necessary. That time has come.

## II. This Court Should Order Defendant to Appear and Show Cause Why the Merchandise Should Not Be Immediately Released to Plaintiff Pursuant to 19 U.S.C. § 1499(c)(5)(C)

Once an action respecting a detention of merchandise is commenced, Defendant has the burden of showing good cause, by a preponderance of the evidence, why an admissibility determination has not been reached; and if it cannot meet this burden, the Court may cancel the detention and release the merchandise. 19 U.S.C. § 1499(c)(5)(C) provides:

> Notwithstanding section 2639 of title 28, once an action respecting a detention is commenced, unless the Customs Service establishes by a preponderance of the evidence that an <u>admissibility decision has not been reached for good cause</u>, the court shall grant the appropriate relief which may include, but is not limited to, an <u>order to cancel the detention and release the merchandise</u>.

(Emphasis added). CBP having failed to timely make a determination of admissibility, Plaintiff is entitled by statute to have the Government appear and show cause why the goods should not be released to Plaintiff.

Here, as detailed in the Affirmation of Richard F. O'Neill, counsel to Root Sciences, CBP has made no inquiries or requests for information to Root Sciences respecting the merchandise and has refused to engage with counsel regarding the entry and Subject Merchandise. Counsel has made numerous requests to communicate, and CBP has ignored nearly all correspondence

about the Subject Merchandise and has refused to return emails, phone calls, and voicemails requesting a conference with CBP officials who have relevant knowledge about the entry and Subject Merchandise. This is unacceptable. Unless CBP can support, by a preponderance of the evidence, that it has good cause for its failure to reach an admissibility determination regarding the Subject Merchandise, Plaintiff submits that the Court should order the Defendant to appear and show cause why the cancellation of the detention and release of the Subject Merchandise to Plaintiff is not required under these facts. 19 U.S.C. § 1499(c)(5)(C). Such a showing would require that Defendant offer evidence establishing good cause why it has failed to make an admissibility determination. Plaintiff submits that no such showing can be made.

## CONCLUSION

For the foregoing reasons, good cause exists for establishing an expedited litigation schedule in this matter. Plaintiff asks that the Court direct Defendant to appear and show cause why an expedited schedule should not be entered. Moreover, because Defendant has failed to make a determination of admissibility within the time provided by law, and pursuant to 19 U.S.C. § 1499(c)(5)(C), Plaintiff is entitled to an order directing the Defendant to show good cause why an admissibility determination has not been made and to show good cause why the detention of merchandise should not be cancelled and why the merchandise should not be immediately released.

Respectfully submitted,

NEVILLE PETERSON LLP

/s/ Richard F. O'Neill
    Richard F. O'Neill
    999 Third Ave., Ste. 2525
    Seattle, WA 98104
    (206) 518-9335
    roneill@npwny.com

/s/ John M. Peterson
    John M. Peterson
    Patrick B. Klein
    One Exchange Plaza
    55 Broadway, Suite 2602
    New York, NY 10006
    (212) 635-2730
    jpeterson@npwny.com

Dated:  March 24, 2021

## APPLICATION FOR ORDER TO SHOW CAUSE
## EXHIBIT LIST

| Ex. | Description | Confidential? |
|-----|-------------|---------------|
| **A** | Affirmation of Forrest Didier, CEO, Root Sciences, LLC | Yes |
| **B** | Affirmation of Richard F. O'Neill, Esq., counsel to Root Sciences, LLC, and O'Neill Affirmation Exhibits A, B, and C. | Yes |

**UNITED STATES COURT OF INTERNATIONAL TRADE**

----------------------------------------------------------------------X

ROOT SCIENCES, LLC           :
                                        :

        **Plaintiff,**            :
                                        :

         *v.*                     :          **No. 21-00123**
                                         :

THE UNITED STATES        :
                                        :

        **Defendant.**           :

----------------------------------------------------------------------X

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Richard F. O'Neill, of Neville Peterson LLP, who is responsible for the instant Memorandum, relying upon the word count feature of the word processing program used to prepare the Brief, certify that it complies with the word count limitation under the Court's Standard Chambers Procedures and contains 5,743 words.

                                   Respectfully submitted,

                                   /s/ Richard F. O'Neill
                                   Richard F. O'Neill