**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. GARY S. KATZMANN, JUDGE**

-------------------------------------------------------------------X

**ROOT SCIENCES, LLC**                                        :
                                                             :
      **Plaintiff,**                                   :
                                                             :
       *v.*                                      :      **No. 21-00123**
                                                             :
**THE UNITED STATES**                                        :
                                                             :
      **Defendant.**                                  :

-------------------------------------------------------------------X

**BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

NEVILLE PETERSON LLP

Richard F. O'Neill
999 Third Ave., Ste. 2525
Seattle, WA 98104
(206) 518-9335
roneill@npwny.com

John M. Peterson
Patrick B. Klein
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Dated:  April 30, 2021

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... ii

BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS .................................... 1

STATEMENT OF FACTS ................................................................................................ 1

STANDARD OF REVIEW ............................................................................................... 6

SUMMARY OF ARGUMENT ........................................................................................... 7

ARGUMENT ................................................................................................................ 9

I.     The Complaint Properly Invokes This Court's Subject Matter Jurisdiction ....................... 9

     A.     An Uncommunicated Seizure Does Not Prevent a "Deemed Exclusion" From Occurring. ........................................................................................ 15

     B.     The Alleged Seizure Does Not Present an Issue of Jurisdiction, But Rather a Potential Issue of Comity ................................................................................ 17

     C.     The Pattern and Practice of the Government Regarding 21 U.S.C. § 863 Counsels Strongly Against Abstention ........................................................... 20

II.     The Complaint Properly States a Claim Upon Which Relief Can Be Granted. ................. 25

CONCLUSION ............................................................................................................ 26

**TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................ 6
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................ 6
*Blink Design Inc. v. United States*, 986 F. Supp. 2d 1348 (Ct. Int'l Tr. 2014) .................... passim
*CBB Group Inc. v. United States*, 783 F. Supp. 2d 1248 (Ct. Int'l Tr. 2011) ............... 7, 9, 10, 11
*Church of Scientology of California v. United States Army*, 611 F.2d 738 (9th Cir. 1979) ......... 18
*Cooper v. Pate*, 378 U.S. 546 (1964) ................................................................................ 6
*Davenport v. Hansaworld USA, Inc.*, 23 F. Supp. 3d 679 (S.D. Miss. 2014) ............................ 19
*Former Emps. of Sonoco Prods. Co. v. United States*, 27 C.I.T. 812 (2003) ................................ 6
*Gould, Inc. v. United States*, 935 F.2d 1271 (Fed. Cir. 1991) ............................................. 6
*Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567 (2004) ............................................ 19
*Henke v. United States*, 60 F.3d 795 (Fed. Cir. 1995) ....................................................... 6
*Hilton v. Guyot*, 159 U.S. 113 (1895) ............................................................................. 18
*Jazz Photo Corp. v. United States,* 439 F.3d 1344 (Fed. Cir. 2006) ........................................ 9
*Keirton USA, Inc. v. U.S. Customs and Border Prot.*, Case No. 20-1734-RSM, 2020 WL
  6887871 (W.D. Wash. Nov. 24, 2020) ......................................................................... 22
*Keirton USA, Inc. v. United States Customs & Border Prot.,* 2021 Dist. Lexis 73578
  (W.D. Wa. April 16, 2021) ......................................................................... 16, 22, 23
*McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178 (1936) ................................................ 6
*Mollan v. Torrance*, 22 U.S. 537 (1824) ........................................................................... 19
*PRP Trading Corp. v. United States*, 36 C.I.T. 1354 (2012) ........................................... 11, 12
*Société Nationale Industrielle Aérospatiale v. United States Dist. Ct.*, 482 U.S. 522
  (1987) ........................................................................................................... 18
*Spirit Aerosystems. Inc. v. United States*, 468 F. Supp. 3d 1349 (Ct. Int'l Tr. 2020) ............... 8, 26
*United States v. 57,261 Items of Drug Paraphernalia*, 705 S. Supp. 1256 (M.D. Tenn.
  1988) ............................................................................................................. 17
*United States v. Islip*, 22 C.I.T. 852 (1998) ................................................................... 6
*United States v., Assorted Drug Paraphernalia*, 90 F. Supp. 3d 1222 (D. N. M. 2015) ............. 17
*Washington Int'l Ins. Co. v. United States*, 25 C.I.T. 207 (2001) ............................................ 18

**Statutes**

18 U.S.C. § 983 ............................................................................................................. 17
19 U.S.C. § 1337 ........................................................................................................... 16
19 U.S.C. § 1499 ..................................................................................................... passim
19 U.S.C. § 1500 ........................................................................................................... 19
19 U.S.C. § 1514 .......................................................................................................... 7, 8
19 U.S.C. § 1595a ................................................................................................... 4, 20, 24
21 U.S.C. § 802 ............................................................................................................. 22
21 U.S.C. § 806 ............................................................................................................. 22
21 U.S.C. § 841 ............................................................................................................. 22
21 U.S.C. § 863 ....................................................................................................... passim
28 U.S.C. § 2643 ......................................................................................................... 8, 26
7 U.S.C. § 1639o ........................................................................................................... 22

**Regulations**

19 C.F.R. § 12.34 .................................................................................................................. 16
19 C.F.R. § 12.39 .................................................................................................................. 16
19 C.F.R. § 174.13 .................................................................................................................. 3
19 C.F.R. § 174.21 ........................................................................................................... 3, 4, 14
19 C.F.R. § 177.9 .................................................................................................................. 21

**USCIT Rules**

USCIT Rule 12 ........................................................................................................................ 9
USCIT Rule 3 ......................................................................................................... 18, 19, 25

**Other Authorities**

*HQ Ruling H308808* (August 5, 2020) ............................................................................ 20, 21
Office of the Inspector General, Department of Homeland Security, OIG-20-66, DHS
    Inconsistently Implemented Administrative Forfeiture Authorities under CAFRA
    (August 27, 2020) ............................................................................................................... 16

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. GARY S. KATZMANN, JUDGE**

-------------------------------------------------------------------X

ROOT SCIENCES, LLC                                  :
                                                    :
        **Plaintiff,**                :
                                                    :
        *v.*                         :        **No. 21-00123**
                                                    :
THE UNITED STATES                                   :
                                                    :
        **Defendant.**               :
-------------------------------------------------------------------X

## BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff, Root Sciences, LLC ("Root Sciences"), hereby submits this Brief in Opposition to the Motion to Dismiss of Defendant, the United States, for lack of subject matter jurisdiction and/or for failure to state a claim upon which relief can be granted.

## STATEMENT OF FACTS

Plaintiff commenced this action to contest the denial of its protest against the exclusion of certain merchandise from entry into the United States. Root Sciences imported the subject merchandise, described below, under cover of Los Angeles/Long Beach ("LA/LB") Entry No. F23-9253382-4 on December 18, 2020. *See* Customs Form ("CF") 7501, Compl. Ex. A, at Protest Ex. B.

The entered merchandise consists of the hopper feed vessel part of a previously imported Cryo-Ethanol Extraction System (Devex GmbH Model No. CryoEXS 400) ("CryoEXS400"). The CryoEXS 400 is an all-in-one cryo-extraction, solvent recovery and decarboxylation system designed for the recovery of cannabis crude extract from cannabis biomass. Cryo-ethanol extraction (a/k/a cold ethanol extraction) is an efficient solution for large-scale hemp and

cannabis processing. It produces a cannabinoid-rich crude extract that is ideal for further refinement (*e.g.*, using short-path distillation machines) into high purity distillates and isolates. The CryoEXS400 is manufactured by Devex GmbH, of Splieterstr. 70, 48231 Warendorf, Germany ("Devex"). *See e.g.*, CryoEXS 400 Product Brochure, Compl. Ex. A, at Protest Ex. C.

The CryoEXS400 is depicted below (*id.*):



The parts of the CryoEXS400 imported under cover of the entry at issue in this action is the hopper feed vessel of the CryoEXS400 (the "Subject Merchandise"), which is depicted in the upper left portion of the above-image, and isolated below (*id.*):



CBP detained the Subject Merchandise on January 13, 2021. *See* DHS Form 6051, Detention Notice and Custody Receipt for Detained Property ("Notice of Detention"), Compl.

Ex. A, at Protest Ex. A. The Notice of Detention, which is the best evidence of its contents, states that the Subject Merchandise was detained on suspicion that it was "possible drug paraphernalia."

Customs made no inquiries of the Plaintiff regarding the detained merchandise.

Beginning in January 2021, Plaintiff, through its agents, and/or through counsel, made numerous requests for updates and for an opportunity to confer with CBP at the Port of LA/LB regarding the detention. These requests were made orally by telephone, and voicemail to LA/LB's entry specialist teams, LA/LB's Trade Interface Unit ("TIU"), and to personnel at the CBP Center for Excellence and Expertise ("CEE") for Machinery, which is headquartered at the Port of Laredo, TX, and in writing by e-mail to LA/LB's entry specialist teams and LA/LB's TIU. On each occasion, CBP refused to communicate with Plaintiff or its counsel regarding the detention. *See e.g.,* Affirmation of Richard F. O'Neill ("Aff. O'Neill").

The Subject Merchandise was deemed excluded by operation of 19 U.S.C. § 1499(c)(5) thirty (30) days after issuance of the notice of detention.[1] Plaintiff timely protested the deemed exclusion of the Subject Merchandise on February 18, 2021 by filing LA/LB Port Protest No. 2704-2115231-2 (the "Protest"), pursuant to 19 U.S.C. § 1499(c), and 19 C.F.R. §§ 174.13 and 174.21(b), which require review and action by CBP "within 30 days from the date the protest was filed." *See* Protest and Memorandum of Points and Authorities in Support of Protest, Compl. Ex. A. The CBP regulations further provide that "[a]ny protest filed pursuant to this paragraph

---

[1] Section 499 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1499, sets out the statutory procedure governing CBP determinations regarding the admissibility of merchandise. CBP has plenary authority to inspect goods at the border, and to make admissibility determinations regarding same. Under Section 499(c)(1), CBP has five (5) days from the date goods are presented for examination to make a determination as to whether the goods should be released into the commerce of the United States. If CBP does not make a determination to admit the goods within five days, they are deemed to be "detained." Section 499(c)(5)(A) provides that CBP may detain goods to determine admissibility for up to thirty (30) days. If, after 30 days, no decision has been made on their admissibility, they are "deemed excluded" and a protest may be lodged to challenge the deemed exclusion (or an actual exclusion) pursuant to Section 499(a). That is precisely what happened here.

which is not allowed or denied in whole or in part before the 30th day after the day on which the protest was filed shall be treated as having been denied on such 30th day for purposes of 28 U.S.C. § 1581." *Id.* at § 174.21(b).

The subject feed hopper unit is necessary for operation of the CRYOEX400 Cryo-Ethanol Extraction System which is being installed at the premises of one of Plaintiff's customers located in the State of California.

The protest, and supporting materials submitted therewith, demonstrated that the Subject Merchandise is used in the cannabis industry but is not an importation contrary to law under 19 U.S.C. § 1595a(c)(2), and is not prohibited "drug paraphernalia" under 21 U.S.C. § 863(a). *See* Compl. Ex. A. Rather, the merchandise is subject to the <u>authorization exemption of 21 U.S.C. § 863(f)(1)</u>, which allows those "authorized by local, State, or Federal law" to engage in the otherwise prohibited conduct, including the importation of the Subject Merchandise. The Subject Merchandise should have been allowed entry because its distribution, possession, and manufacture has been explicitly authorized by the laws of the State of California, and Washington State, and its importation is allowed by 21 U.S.C. § 863(f)(1).

Plaintiff's protest was deemed denied pursuant to 19 C.F.R. § 174.21(b) on March 20, 2021—*i.e.,* "the 30th day after the day on which the protest was filed … " *Id.* As explained, CBP subsequently issued to Plaintiff a notice confirming exclusion of its entry and denial of its protest.

Plaintiff timely filed this action to challenge the denial of its protest on March 22, 2021. On that same day, Plaintiff emailed courtesy copies of its complaint and other case-initiating documents to opposing counsel and requested an opportunity to discuss plaintiff's request for an expedited schedule, and the need for prompt entry of a judicial protective order ("JPO") prior to

Plaintiff's filing of its complaint and other documents. A telephone conference (discussed *infra*) was held on March 22, 2021 with DOJ counsel Justin Miller, Aimee Lee, and Guy Eddon. The discussion focused on the nature of the case, the merchandise at issue, Plaintiff's position regarding 21 U.S.C. § 863(f)(1), as well as the need for a JPO and expedition of the case schedule.

On March 23, 2021, CBP sent to Plaintiff's counsel an email confirming the operative facts giving rise to this Court's jurisdiction, stating:

**Dear Customer,**

Protest No. 270421152312 filed at Port 2704 has been Denied for the following reasons:

Deemed denied by operation of law 30 days from filing. Filed 2/18/2021. Deemed denied 3/20/2021.

Any person whose protest has been denied, in whole or in part, has the right to file a civil action contesting the denial of the protest in accordance with chapter 169 of title 28 of the United States Code (28 USC §§ 2631 et seq.) within the time prescribed by section 2636 (28 USC § 2636).

*See* Aff. O'Neill, Ex. C (screenshot of email depicted above). Not only did CBP confirm the operative jurisdictional facts Government counsel now disputes, it explicitly advised Root Sciences of its right to bring an action in this Court to contest the denial of the protest in this Court. Thus, with the operative jurisdictional facts admitted, and less than two hours after the Court issued the JPO in this case (*see* ECF No. 11), Root Sciences filed its Confidential Complaint on March 24, 2021 (*see* ECF No. 13).

Thereafter, to Plaintiff's surprise, about eight hours later on March 24, 2021, Government counsel sent an email to Plaintiff's counsel asserting that "we just learned tonight that CBP seized the merchandise at Long Beach on February 10, 2021," and attached a copy of the previously unserved notice of seizure. The notice was dated March 8, 2021—some 26 days after the deemed exclusion occurred, and 18 days after Plaintiff filed its protest challenging the

deemed exclusion. The notice was first served 2 days after Plaintiff filed its Summons in this action, and many hours after the filing of Plaintiff's Complaint.[2]

A second telephone conference was held on March 25, 2021 with DOJ counsel Justin Miller, Aimee Lee, and Guy Eddon. The discussion focused on CBP's previously uncommunicated claims that the merchandise had been seized on February 10, 2021, and the Government's intention to file a motion to dismiss. Defendant filed the instant Motion to Dismiss on April 23, 2021.

## **STANDARD OF REVIEW**

When the court's jurisdiction is challenged, "[t]he party seeking to invoke … jurisdiction bears the burden of proving the requisite jurisdictional facts." *Former Emps. of Sonoco Prods. Co. v. United States*, 27 C.I.T. 812, 814 (2003) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

In deciding a motion to dismiss an action for lack of jurisdiction or failure to state a claim, "the Court assumes that 'all well-pled factual allegations are true,' construing 'all reasonable inferences in favor of the nonmovant.'" *United States v. Islip*, 22 C.I.T. 852, 854 (1998) (quoting *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991)); *see also Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995); *Cooper v. Pate*, 378 U.S. 546 (1964). To survive a motion to dismiss, a complaint must plead sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

[2] The Government's claim that Plaintiff, on April 21, 2021, "requested, and CBP agreed, to extend the deadlines in the seizure notice … " requires clarification. *See* Def.'s Mem. at n. 6. This language suggests that Plaintiff recognizes the validity of the seizure notice, which was not served until after this case was filed. More accurately, Plaintiff's counsel noted that it does not accept the validity of the seizure notice or concede that any response is required but "in an abundance of caution" requested *confirmation that CBP will not enforce* any deadlines associated with the unserved seizure notice.

<u>**SUMMARY OF ARGUMENT**</u>

Defendant's Motion to Dismiss asserts that an importer lacks jurisdiction in this Court when they have (i) incurred a deemed exclusion of their goods under 19 U.S.C. § 1499(c)(5)(A); (ii) filed a timely protest to challenge a deemed exclusion of those goods under 19 U.S.C. § 1514(a)(4); (iii) received explicit confirmation from CBP that the protested entry was excluded and the protest filed thereon was denied; (iv) timely filed an action to challenge the protest denial in the CIT under 28 U.S.C. § 1581(a); and (v) never received notice of seizure (or any communication that the entry was seized), and therefore did not attempt to protest a seizure, rather than an exclusion. As demonstrated herein, the government's position is directly contrary to the prior teachings of this court, in *Blink Design Inc. v. United States*, 986 F. Supp. 2d 1348 (Ct. Int'l Tr. 2014), and *CBB Group Inc. v. United States*, 783 F. Supp. 2d 1248 (Ct. Int'l Tr. 2011). Even assuming, *arguendo*, that issuance of a notice of seizure terminates or precludes the statutory sequence of time-delimited events set out in 19 U.S.C. § 1499, this Court has made it clear that where deemed exclusion occurs before CBP mails a notice of seizure, there has been a protestable event over which this Court may exercise subject matter jurisdiction upon denial of a timely-filed protest. *See Blink Design Inc., supra; CBB Group Inc., supra.*

While this Court would not have jurisdiction over a hypothetical action, if any, which might one day be commenced to affect a forfeiture of the subject goods pursuant to a seizure (and that day may never come), it is vividly clear that there is a timely protested deemed exclusion of merchandise over which this Court can, and must, exercise exclusive subject matter jurisdiction under 28 U.S.C. § 1581(a). If, as the government contends, it has unencumbered power to oust this Court of it through effectuating a seizure after a protestable decision has been made, this would allow impermissible interference by the Executive Branch with the functions of

the Judicial Branch of Government.[3] As discussed herein, this Court has wisely refused to allow such (arguably unconstitutional) interference with its mandate.

Moreover, the Court has power to provide plaintiff with relief in the form of an order directing CBP to release the goods for consumption, irrespective of the seizure. Not only does 19 U.S.C. § 1499(c)(5)(C)'s direction that the CIT "shall grant appropriate relief which may include, but is not limited to, an order to cancel the detention and release the merchandise," (emphasis added), this Court has power to order additional relief necessary to give effect to a judgment rendered in a case arising under 28 U.S.C. § 1581(a). *See* 28 U.S.C. § 2643(c); *see also Spirit Aerosystems. Inc. v. United States*, 468 F. Supp. 3d 1349, 1354 (Ct. Int'l Tr. 2020).

There is no question here that Plaintiff's Complaint, by contending that CBP denied its protest against exclusion, alleged the facts necessary to invoke this Court's 28 U.S.C. § 1581(a) jurisdiction. As these jurisdictionally operative facts were conceded by Defendant in writing after Plaintiff initiated this action. Defendant's Motion is unfounded.

Customs' failure to make an admissibility determination within thirty days empowers the importer to file a protest, 19 U.S.C. § 1499(c)(5)(A), 19 U.S.C. § 1514(a)(4), and upon CBP's denial thereof, to file suit in the CIT under 28 U.S.C. § 1581(a). There is no basis for the Court to decline to hear this case because the jurisdiction of this Court is properly invoked, and the Court can issue meaningful relief on Root Sciences' claims.

---

[3] While the Government asserts this power in the instant case, involving a protested exclusion of merchandise, the Government's position, carried to its conclusion, would allow it to oust this Court of jurisdiction in any 28 U.S.C. § 1581(a) action, assuming the subject merchandise was available to be seized.

## ARGUMENT

## I. The Complaint Properly Invokes This Court's Subject Matter Jurisdiction.

The Government moves to dismiss Plaintiff's Complaint under USCIT Rule 12(b)(1) on the basis that the Court lacks jurisdiction. According to the Government, there was no affirmative exclusion of merchandise and no exclusion by operation of law under 19 U.S.C. § 1499(c) because CBP allegedly seized the merchandise on February 10, 2021.

The central fallacy of the Government's argument is the notion that no "deemed exclusion" of plaintiff's merchandise occurred because CBP purported to seize the merchandise before this case was initiated. *See* Def.'s Mem. 8-9. However, that argument disregards this Court's prior teachings in the matter, particularly as articulated in *Blink Design Inc. v. United States*, 986 F. Supp. 2d 1348 (Ct. Int'l Tr. 2014), and *CBB Group Inc. v. United States*, 783 F. Supp. 2d 1248, 1255 n. 3 (Ct. Int'l Tr. 2011), which instruct that a seizure is not effective until, at the earliest, a notice of seizure is communicated to the importer.

In this case, it is uncontradicted that the first, unsuccessful attempt to notify the importer of the purported seizure did not occur until March 8, 2021. Def.'s Mem. at 5. But the deemed exclusion by operation of law occurred much earlier—according to the Government's facts—on February 11, 2021. Plaintiff timely protested that deemed exclusion on February 18, 2021. The parties are in agreement that plaintiff did not become aware of the purported seizure until after this action was filed on March 22, 2021.

CBP, in denying Plaintiff's protest, acknowledged that there had been a deemed exclusion of plaintiff's goods, and a deemed denial of its protest. *See* Aff. O'Neill, at ¶ 14 and Ex. C.[4]

---

[4] The Government's notice and acknowledgement to Plaintiff is entitled to a presumption of regularity. *See Jazz Photo Corp. v. United States,* 439 F.3d 1344 (Fed. Cir. 2006). The burden of challenging the presumption of

The Government presumes that its internal, uncommunicated (alleged) decision to seize Plaintiff's merchandise prevented a protestable "deemed exclusion" from occurring. Def.'s Mem. at 10. This court has twice rejected that notion.

In *Blink Design*, the Government argued that certain entries at issue were seized within thirty days of their presentment to CBP for examination. The Government moved to dismiss the action for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. In denying the Government's Motion, and agreeing with plaintiff that the Court's 28 U.S.C. § 1581(a) jurisdiction was properly invoked because it had timely filed an exclusion protest, and timely challenged the denial thereof, the Court investigated "the question of when Customs effects a seizure." 986 F. Supp. 2d at 1356. The Court rejected the assumption that "the date of seizure asserted by Customs in its seizure notices marks the time at which the court considers the entries seized," reasoning that "this Court has held that 'an internal agency decision to proceed with seizure, which did not ripen into a notice to the importer' cannot affect the Court's jurisdiction." *Id.* (citing *CBB Group., Inc.,* 783 F. Supp. 2d at 1255 n.3).

The same situation obtains in this case. Even using the first date CBP issued the Notices of Seizure to Root Sciences—which occurred in a Notice said to be stamped by CBP on March 8, 2021—a protestable exclusion of Plaintiff's merchandise occurred weeks earlier on February 11, 2021. The parties are in agreement that Plaintiff filed a protest against exclusion on February 18, 2020.

Additional support is found in *CBB Group, supra*. In *CBB Group*, an importer protested exclusion of its merchandise in November, 2010, and filed suit a month later after its protest was deemed denied. Whereas CBP claimed to have seized the merchandise on December 21, 2010,

regularity in this case rests with the Government. Nothing in the Government's Memorandum, nor in the declarations attached to the Government's Motion, serve to rebut this presumption.

and to have issued a notice of seizure on January 11, 2011, the Court denied the Government's motion to dismiss for lack of 28 U.S.C. § 1581(a) jurisdiction, concluding that a protestable "deemed exclusion" had occurred and was timely protested, and that the plaintiff properly invoked the CIT's subject matter jurisdiction over the action. The Court reasoned (*id.* at 751 (emphasis added)):

> Under defendant's view of this case, the court would have no power to do what the statute directs it to do, regardless of whether Customs will be able to make the good cause showing, even though this case presents the very situation Congress addressed in section 499(c)(5)(C). <u>Defendant's theory of this case would hold that an action by an administrative agency, which in this case is the issuance of the Seizure Notice, somehow deprives this court of the ability to fulfill its judicial responsibility as directed by statute. The court rejects this theory as contrary to the congressional intent underlying section 499(c) and inimical to the court's proper exercise of its jurisdiction.</u> While arguing that "Customs determined that CBB's merchandise was clearly piratical," Def.'s Mem. 7, defendant also fails to explain how Customs could be free to effectuate that determination when only the court, not the agency, is now empowered to reach definitive findings of fact and conclusions of law on the admissibility of the merchandise and fashion a remedy if plaintiff prevails. In the circumstances of this case, the determination of admissibility and the determination of whether the merchandise is piratical are the same determination, and Customs is not free to usurp the court's power to make and effectuate that determination.

The *CBB Group* Court emphasized the importance of notice to the importer, stating:

> Defendant argues that Customs "seized" the merchandise at issue on December 21, 2010, which was the day this case commenced. Def.'s Mem. 2. The Seizure Notice, however, was not issued until January 11, 2011. *Id*. <u>The court fails to see how an internal agency decision to proceed with seizure, which did not ripen into a notice to the importer until twenty-one days later, could have the effect of precluding a remedy in this case</u>.

*Id.* at 751, n.3 (emphasis added).

Here, the Government urges the Court to distinguish *CBB Group* from the facts of this case, advancing that the Court should instead rely on *PRP Trading Corp. v. United States*, 36 C.I.T. 1354 (2012). However, the facts in *PRP Trading* are clearly inapposite because PRP Trading brought a 28 U.S.C. § 1581(a) action admitting it had previously received actual notices

of seizure prior to invoking the CIT's jurisdiction by filing a summons on April 12, 2012, and complaint on April 27, 2012. *Id.* at 1312 (the seizure occurred on February 7, 2012, and CBP issued notices of seizure on March 23, 2012 which PRP Trading received and addressed in its complaint).

The Government attempts to sidestep the most recent decision of this Court on the issue in *Blink Design*, which despite a less favorable fact pattern for Blink Design than exists here for Root Sciences, resulted in the CIT accepting jurisdiction over the action. It is wholly supportive of Plaintiff's position here. The *Blink Design* Court held that "even using the earlier dates upon which Customs issued the Notices of Seizure, such dates are uniformly more than thirty days after the date the merchandise was presented for examination," and for that reason, "Customs seized each entry more than thirty days after presentation and that, therefore, each entry was deemed excluded prior to seizure." Similarly here, even using the earliest date that CBP could ever claim it "issued" the notice of seizure to Root Sciences—*i.e.,* March 8, 2021—the entry, having been deemed excluded on February 11, 2021, was properly protested on February 18, 2021.

The facts here favor Plaintiff more strongly than in *Blink Design* because here, CBP conceded in writing that the exclusion protest was denied on March 20, 2021 and CBP expressly noted Plaintiff's right to challenge the denial in this Court. From this admission, the Government is foreclosed from asserting that this Court lacks jurisdiction over the denied protest. Indeed, this Court has—and only this Court *could ever have*—subject matter jurisdiction over suits contesting protest denials, 28 U.S.C. § 1581(a); and by virtue of this *exclusive* jurisdiction, the Court does not abandon this suit until the issues presented in the denied protest are decided.

Courts focus on whether a plaintiff's challenge is to an exclusion or to a seizure of merchandise. In this case, CBP concedes that Plaintiff could bring an action to challenge the denied exclusion protest, and Plaintiff could not have been aware of the purported seizure of its goods. As noted in *Blink Design*:

> Moreover, to determine whether a plaintiff has challenged a seizure, as opposed to an exclusion, the Court has considered various factors, including whether:
>
> > 1) the plaintiff's protest indicated that it was challenging the "seizure" of the merchandise; 2) the plaintiff received a notice of seizure from Customs; 3) the government had control over the merchandise; and 4) upon notice, the plaintiff was required to choose between immediate forfeiture proceedings or a petition for relief from seizure.
>
> *H & H Wholesale Servs., Inc*., 30 CIT at 694, 437 F. Supp. 2d at 1341 (citations omitted); *Tempco Mktg*., 21 CIT at 193, 957 F. Supp. at 1278 (citation omitted). With respect to the first factor, Plaintiff's protest ambiguously challenges Customs alleged exclusion of Plaintiff's merchandise, claiming that "there is no basis in law for the seizure of these goods." (Pl.'s Mot. Expedite Ex. A at 3.) Next, the record shows that Plaintiff received Notices of Seizure from Customs for each entry. (Pl.'s Mot. Expedite Ex. B.) It is also undisputed that Customs has control over the merchandise. Finally, the Notices of Seizure required Plaintiff to choose between immediate forfeiture proceedings and a petition for relief from seizure. (See Pl.'s Mot. Expedite Ex. B.) **Three, if not four, of the factors suggest that Plaintiff's case is really concerned with seizure rather than exclusion**.

986 F. Supp. 2d at 1360 (emphasis added). Here, evaluating the same four *Blink Design* factors, it is clear that Root Sciences' case is only concerned with CBP's exclusion of its merchandise:

1) Root Sciences' protest indicated it was challenging a deemed exclusion. This is not disputed.

2) Root Sciences never received a notice of seizure from CBP. This is not disputed.

3) The Government has control over the merchandise. This is not disputed.

4) As no notice of seizure was ever provided to Root Sciences, Plaintiff could not have chosen between immediate forfeiture proceedings and a petition for relief from seizure. This is not disputed.

Operation of the statutory scheme set out in Section 499 resulted in a protestable "deemed exclusion" which Plaintiff timely protested. Pursuant to 19 C.F.R. § 174.21(b),[5] CBP had thirty (30) days to determine Plaintiff's timely-filed protest against the deemed exclusion of its merchandise. In this case, there was both a deemed exclusion and a CBP denial of plaintiff's protest. Plaintiff timely commenced this action pursuant to 28 U.S.C. § 1581(a) to challenge the denial of its protests. That denial has not been rescinded or set aside in any way (nor does Defendant so argue). This Court has exclusive jurisdiction over this action challenging the denial of Plaintiff's protest. It never loses that jurisdiction.

Moreover, CBP must bear the consequences of its lack of communication with Plaintiff. On numerous occasions in January and February, 2021, Plaintiff's representatives made repeated inquiries of CBP officials at the Port of LA/LB to determine the status of the entry. By email dated January 28, 2021, counsel for Root Sciences provided detailed information to CBP about the entry and merchandise entered under cover thereof. Counsel specifically indicated that while Plaintiff hoped to avoid litigation, it was prepared to elect the appropriate, available remedy as soon as possible:

---

[5] 19 C.F.R. § 174.21(b) provides:

(b) Protests relating to exclusion of merchandise. If the protest relates to an administrative action involving exclusion of merchandise from entry or delivery under any provision of the Customs laws, the Center director shall review and act on a protest filed in accordance with section 514(a)(4), Tariff Act of 1930, as amended (19 U.S.C. 1514(a)(4)), within 30 days from the date the protest was filed. Any protest filed pursuant to this paragraph shall clearly so state on its face. Any protest filed pursuant to this paragraph which is not allowed or denied in whole or in part before the 30th day after the day on which the protest was filed shall be treated as having been denied on such 30th day for purposes of 28 U.S.C. 1581.

> We are hoping to avoid the cumbersome and expensive process of litigating this claim—either <u>through the filing of a claim and cost bond and request for prompt referral for judicial forfeiture proceedings in the event of a seizure</u>; the filing of an exclusion protest and request for accelerated disposition …

*See* Aff. O'Neill, at Ex. B. Similar inquiries and requests for information about CBP's actions, or intended actions, were made by email and phone in the following weeks. *Id.*

Despite these facts, the Government now advances a baseless theory that Plaintiff might somehow have learned that the entry had been seized before March 24, 2021, claiming that "[o]n February 11, 2021, CBP's official system of record was further updated to release the 'hold' on the subject merchandise and reflect that the merchandise had been seized." *See* Def.'s Mem. 4 (citing the Declaration of Mr. Jarrell, at ¶ 20). On the contrary, nothing available to Plaintiff reflected that the merchandise had been seized.[6] The administrative advancement of CBP's actions detailed in the Government's affirmations were never communicated in any way to Plaintiff or its representatives. An examination of the agency's official ACE report available to the broker for the entry in question only (inaccurately) indicates that the goods had been "released." The ACE report contains no reference to an alleged seizure at all. *See* Exhibit A.

## A. An Uncommunicated Seizure Does Not Prevent a "Deemed Exclusion" From Occurring.

While 19 U.S.C. § 1499(c)(4) indicates that goods in "detention" status may be seized or forfeited "if otherwise provided by law," nothing in the statute suggests that an uncommunicated seizure prevents a "deemed exclusion" from occurring, nor affects a deemed exclusion which has

---

[6] Plaintiff could have done nothing more to learn about the alleged administrative seizure in advance of bringing this exclusion case. Undoubtedly, however, CBP could have done more. CBP could have returned counsel's numerous phone calls; it could have emailed or mailed a copy of the seizure notice to Plaintiff's counsel or its customs broker. Notably, CBP utilized email communication to send other important notices required by regulation; CBP admits that it sent a copy of the detention notice by email to Plaintiff's customs broker, T.H. Weiss, on January 13, 2021. *See* Declaration of Scott Jarrel at ¶ 13 (ECF No. 28-1). CBP's total failure to communicate the alleged seizure to Plaintiff and its representatives' is inexcusable.

already occurred, been the subject of a denied protest, and which is the subject of a summons and complaint in the CIT.

"Exclusion" is a different event than "seizure." Goods may be excluded from entry for a variety of reasons, most of which do not involve any finding or allegation that a law has been violated.[7] While CBP may not allow the importer to clear the goods for consumption in the United States, the importer is free to take his or her goods, and return them to the place of origin or some other destination where they can be admitted.

Seizure of goods, on the other hand, is not an admissibility determination made pursuant to 19 U.S.C. § 1499. It is, rather, a separate enforcement action, which may be taken by CBP officials, or other federal law enforcement officers,[8] when they believe a crime or a violation of law has taken place. A seizure can be undertaken completely independent of, and without regard to, any determination of admissibility. Had CBP released Plaintiff's merchandise, this would not preclude a law enforcement officer who believed the goods were prohibited "drug paraphernalia" from subsequently effecting a seizure of the merchandise.[9]

---

[7] For example, if goods are offered for entry in excess of an absolute quota (such as those currently in effect with respect to steel products from various countries), the over-quota amount may be excluded from entry. Where goods offered for entry are subject to exclusion pursuant to a general or limited exclusion order issued pursuant to 19 U.S.C. § 1337, CBP officers may exclude them from entry (goods covered by a Section 337 order are only subject to seizure if, after CBP excludes the goods, the importer attempts to re-enter them, *see* 19 C.F.R. § 12.39(c)). CBP may also exclude goods from entry if it believes it lacks sufficient information upon which to make a determination of admissibility. *See Keirton USA, Inc. v. United States Customs & Border Prot.,* 2021 Dist. Lexis 73578 (W.D. Wa. April 16, 2021) (*"Keirton II"*). There may be regulatory bans on the importation of certain goods, such as white phosphorous matches. *See* 19 C.F.R. § 12.34(a). In all of these cases, goods are excluded from entry without any violation of law occurring.

[8] The Department of Homeland Security ("DHS") alone, has three (3) components with seizure and forfeiture authority: CBP, Immigration and Customs Enforcement ("ICE") and the Secret Service. *See e.g.,* Office of the Inspector General, Department of Homeland Security, OIG-20-66, DHS Inconsistently Implemented Administrative Forfeiture Authorities under CAFRA (August 27, 2020), at 1.

[9] In addition to the three DHS components, some of the agencies authorized to effect seizures of drug paraphernalia include the Treasury Department, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), the Drug Enforcement Administration ("DEA"), the Federal Bureau of Investigation ("FBI"), Department of Justice, Office of the United States Attorney, and the Postal Inspection Service. *See e.g.,* U.S. Dep't. of Justice, Public Notices of Forfeiture, https://www.forfeiture.gov (last visited Apr. 30, 2021).

Seizures follow an entirely different regulatory pathway than admission/exclusion decisions under 19 U.S.C. § 1499. Constitutional due process considerations require that persons with an interest in the property be notified of the seizure and given the opportunity to petition administratively or in the courts for return of the property. Certain seizures and forfeitures are governed by the Civil Asset Forfeiture Reform Act ("CAFRA"), 18 U.S.C. § 983. A claimant is entitled to request the initiation, in Federal District Court, of an *in rem* forfeiture proceeding against the seized goods and to assert a claim to the property.[10] These proceedings are entirely different, and distinct, from determinations relating to the admissibility of imported merchandise. A District Court forfeiture action merely determines whether title to the seized property vests in the United States or in the claimant. It is not concerned with the admission or exclusion of merchandise seized while in CBP detention, or after the detention period had concluded and a deemed exclusion has arisen. Only this Court has jurisdiction to make that determination, and only following a timely protest against exclusion and denial thereof—both jurisdictionally operative events occurred here and both were admitted by CBP.

**B.**    **The Alleged Seizure Does Not Present an Issue of Jurisdiction, But Rather a Potential Issue of Comity.**

In addition to being the subject of a denied protest, the instant merchandise is apparently also the subject of a separate administrative action: an alleged seizure by CBP which *might*—but not necessarily *will*—result in a separate proceeding in a Federal District Court at some unspecified time in the future.

The claimed seizure of Plaintiff's merchandise does not present this court with an issue of jurisdiction, but rather, with a potential issue of comity. This Court unquestionably has

---

[10] *See e.g., United States v., Assorted Drug Paraphernalia*, 90 F. Supp. 3d 1222 (D. N. M. 2015); *United States v. 57,261 Items of Drug Paraphernalia*, 705 S. Supp. 1256 (M.D. Tenn. 1988).

jurisdiction over this action challenging CBP's exclusion. The only question is whether the Court should stay or defer consideration of this case until separate proceedings relating to the seizure are resolved in a Federal District Court. Thus, having properly invoked this Court's subject matter jurisdiction to decide legal issues concerning 21 U.S.C. § 863(f)(1) in its exclusion protest, and a direction under USCIT Rule 3(g) to expedite consideration of the action, should the Court proceed to decide this case on its merits? Or should it stay the action until some unspecified future date when a heretofore non-commenced forfeiture action is possibly commenced in District Court? As discussed herein, sound considerations of equity favor having this Court decide this exclusion action as quickly as practicable. Plaintiff submits that there is no reason for this Court to delay.

To be sure, "comity" is an amorphous concept—it "is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other." *Hilton v. Guyot*, 159 U.S. 113, 163-64 (1895). The Supreme Court has characterized it, when applied in an international context, as the "spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states." *Société Nationale Industrielle Aérospatiale v. United States Dist. Ct.*, 482 U.S. 522, 543 n.27 (1987). Comity ordinarily invites the courts of one jurisdiction to give effect to the judicial decisions of another court. Comity is an equitable principal designed to preserve judicial resources and to avoid the embarrassment of conflicting judgments. *See Church of Scientology of California v. United States Army*, 611 F.2d 738, 749 (9th Cir. 1979). However, comity does not require this Court to stay its hand (or this legal action) when the subject matter of this case is uniquely within this Court's exclusive and specialized jurisdiction. *Washington Int'l Ins. Co. v. United States*, 25 C.I.T. 207, 218-20 (2001). Here, 21 U.S.C. § 863(a)(3) prohibits the importation of "drug

paraphernalia," and § 863(f)(1) provides a clear exception whenever State laws authorize the manufacture, possession or sale thereof. This Court has been vested with exclusive national jurisdiction to determine when imported goods, presented to CBP for a determination of admissibility pursuant to 19 U.S.C. § 1499, and a consumption entry filed pursuant to 19 U.S.C. § 1500, may be lawfully imported. This is particularly true where the procedures specified in § 1499 have run their course and resulted in a deemed exclusion, admitted by CBP, and a denial of the importer's protest which is ripe for adjudication, and upon which litigation has commenced.

The relevant time for determining jurisdiction is the time of filing of the complaint. *See Mollan v. Torrance*, 22 U.S. 537, 539-40 (1824); *See also, Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570 (2004) (quoting *Mollan, supra;* and *Davenport v. Hansaworld USA, Inc.*, 23 F. Supp. 3d 679, 702 (S.D. Miss. 2014)). As of the time the Complaint in this action was filed, all the conditions for perfecting subject matter jurisdiction in this Court had been perfected.

The present circumstances thus indicate that a 28 U.S.C. § 1581(a) denied protest case is before this court—a case of a type to be given precedence under USCIT Rule 3(g). There is no other currently pending judicial proceeding concerning the merchandise which is the subject of this case—indeed, there may never be one. A decision on admissibility rendered by this Court may well inform CBP's determination on whether to proceed with an attempt to forfeit the subject goods. This Court is constituted an Article III court, with the full powers in law and equity granted to Federal District Courts; there is no reason for this Court to defer to its equal—an equal which has not been convened, and may never be convened, the address the merchandise which is the subject of this case.

### C. The Pattern and Practice of the Government Regarding 21 U.S.C. § 863 Counsels Strongly Against Abstention

Moreover, the pattern of conduct by the government with respect to the statute at issue in this case, 21 U.S.C. § 863, counsels strongly against abstention. In August 2020, CBP issued a Headquarters ("HQ") Ruling adopting an unusual interpretation of 21 U.S.C. § 863 indicating that CBP would disregard totally the exception provided in § 863(f)(1). In *HQ Ruling H308808* (August 5, 2020), CBP states:

> In the context of 21 U.S.C. § 863, federal law does not "authorize" the importation of drug paraphernalia under any circumstances. Instead, 21 U.S.C. § 863(a) relates in part to the importation and exportation of drug paraphernalia, an area of paramount federal concern. <u>By prohibiting the import of drug paraphernalia into the United States, Congress sought to protect all states from the problems associated with drug paraphernalia</u>. The current version of this provision was drafted broadly to provide a comprehensive prohibition on the importation of drug paraphernalia and the transportation of drug paraphernalia in interstate commerce. <u>If a state could essentially exempt itself from this federal statutory regime, then importations of drug paraphernalia into that state could easily be transported to other states in which drug paraphernalia remains illegal. We decline to interpret 21 U.S.C. § 863(f)(1) in this way because doing so would deprive other states of the full protections afforded by federal law</u>.

(Emphasis added). Obviously, Plaintiff submits that CBP is incorrect in its interpretation of this statute and the clear language of § 863(f)(1).

The words of Congress itself evince an intention to require consideration of state authorization regimes, and exemption from the prohibitions of § 863(a). The operation of the Mail Order Drug Paraphernalia Control Act of 1986 ("Paraphernalia Control Act"), Pub. L. 99-570, 100 Stat. 3207-51 (codified at 21 U.S.C. § 863) is inapplicable where a State has enacted laws legalizing the use, possession, and distribution of marijuana. The federal authorization exemption, 21 U.S.C. § 863(f)(1), makes clear that CBP has no authority to seize (or exclude, by refusing to make an admissibility determination) imported "drug paraphernalia," as defined under § 863(d), as an importation "contrary to law" under 19 U.S.C. § 1595a(c), or according to

the seizure provisions of § 863(c), when state law authorizes the manufacture, possession, or distribution of such goods. The Paraphernalia Control Act makes it "unlawful for any person to, among other things, "import or export drug paraphernalia." *See* 21 U.S.C. § 863(a)(3). The Paraphernalia Control Act makes unlawful certain paraphernalia-related activities set forth in § 863(a), but this prohibition is not absolute. The statutory authorization exemption of the Paraphernalia Control Act at § 863(f)(1) requires CBP's consideration of local, state, and/or federal authorizations:

(f) Exemptions. This section shall not apply to—

(1) any person authorized by local, State, or Federal law to manufacture, possess, or distribute such items.

The § 863(f)(1) exemption thus removes all prohibitions on "drug paraphernalia" included in "the section"—*i.e.,* the entirety of 21 U.S.C § 863, including the import prohibition of § 863(a)(d)—for those authorized by local, state, or federal law to manufacture, possess, or distribute "drug paraphernalia."

No matter how incorrect it is as a matter of law, CBP's interpretation of the § 863(f)(1) authorization exemption in *HQ Ruling H308808* (August 5, 2020) represents the official position of CBP and is binding on all CBP officers nationwide. 19 C.F.R. § 177.9(a). And there is every indication that CBP officers are following the ruling, excluding from entry, and seizing shipments of, cannabis processing equipment even when imported into States where cannabis is legal, such as Washington and California. Parties affected by this interpretation are entitled to seek judicial review of it by means of an appropriate vehicle, such as this exclusion action.

At the same time, CBP appears to be doggedly engaged in a pattern of trying to avoid judicial review of its untenable position. This is evident in CBP's recent treatment of many importers, including Root Sciences. For instance, a Washington State importer, Keirton USA,

Inc. ("Keirton"), manufactures and imports parts and components used for agricultural purposes; its primary product is a machine that separates branches from the leaves and crop heads of agricultural commodities including cannabis known as the "Twister Trimmer." In late 2020, CBP at the Port of Blaine, WA, seized several Keirton part shipments as illegal imports of "drug paraphernalia," asserting a violation of 21 U.S.C. § 863(a), because press publications indicated the merchandise was used to process cannabis.[11] *See Keirton USA, Inc. v. United States Customs & Border Prot.*, 2021 Dist. Lexis 73578, at \*n.1 (W.D. Wa. April 16, 2021) ("*Keirton II*"). Keirton filed an action in the U.S. District Court for the Western District of Washington seeking a temporary restraining order ("TRO"). *See Keirton USA, Inc. v. U.S. Customs and Border Prot.*, Case No. 20-1734-RSM, 2020 WL 6887871, at \*1 (W.D. Wash. Nov. 24, 2020) ("*Keirton I*"). The parties later reached a settlement agreement in which Keirton agreed to pay a remission fee in exchange for CBP releasing the seized merchandise back to Keirton for entry into the United States ("2020 Settlement").

Apparently trusting that CBP's 2020 Settlement and release of the seized merchandise demonstrated the agency's willingness to recognize the lawfulness of its merchandise, proceeded to import parts required for its U.S. manufacturing operations. However, less than one month after the settlement in January 2021, CBP again detained one of Keirton's shipments containing parts of cannabis processing equipment. CBP requested information from the importer—even though CBP had intimate knowledge of the end-use of the equipment in processing cannabis

---

[11] Notably, a product's use with "cannabis" does not *per se* mean that it is "drug paraphernalia" under 21 U.S.C. § 863(d). "Cannabis" includes both "hemp" and "marijuana." In order for an item used to process "cannabis" to meet the definition for "drug paraphernalia," the item must be designed and intended for use in *inter alia* manufacturing, producing and processing a "controlled substance." Cannabis itself is not a controlled substance; rather, only cannabis plants constituting "marijuana" containing more than 0.3 percent THC are considered a controlled substance. *See* 21 U.S.C. § 806(a)(16)(A); 21 U.S.C. § 841(a). Cannabis plants with less then 0.3 percent THC are considered "hemp" and are legally grown and sold throughout the United States and are not controlled substances under the CSA. *See* 21 U.S.C. § 802(16)(B); 7 U.S.C. § 1639o(1).

based on the 2020 seizures and ensuing litigation—and, alleging dissatisfaction with the responses, excluded the merchandise on February 11, 2021 pursuant to 19 U.S.C. § 1499(c)(5). Perhaps not appreciating the distinction between a communicated seizure notice and exclusion, Keirton again filed suit in the U.S. District Court for the Western District of Washington, seeking injunctive and declaratory relief.

In turn, CBP argued that the CIT has exclusive jurisdiction over the action. Noting that the "Tariff Act of 1930 ("Act") establishes a detailed structure for reviewing CBP's decisions to exclude merchandise[,]" the Court in *Keirton II* dismissed the action finding that "[t]he <u>CIT has exclusive jurisdiction over any civil action contesting the denial of a protest</u>. 28 U.S.C. § 1581(a)." *Keirton II*, at *6 (emphasis added). The court explained:

> Courts have found such "exclusive" grants of jurisdiction to preclude district court jurisdiction over claims relating to the relevant statutory scheme. *See, e.g., Thunder Basin Coal Co.*, 510 U.S. at 208; *Jarkesy v. S.E.C.*, 803 F.3d 9, 16, 419 U.S. App. D.C. 394 (D.C. Cir. 2015); *Wirtgen Am., Inc.*, 443 F. Supp. 3d at 211.
>
> The detailed structure of the Act demonstrates Congress's intent to preclude this challenge. *See Thunder Basin Coal Co.*, 510 U.S. at 207-09. Nothing in the text of the Act suggests that an importer may avoid its review structure by declining to file a protest and instead filing a district court action challenging future enforcement proceedings. The Court concludes that the Act reflects a fairly discernible intent to preclude district court jurisdiction over CBP's exclusion decisions.

*Id.* at *1-2. The Court found that the CIT could provide Keirton with meaningful judicial relief, both injunctive and declaratory in nature. *Id.* at *7-10. For its part, CBP agreed with the District Court that the CIT could provide Keirton with an adequate remedy. *Id.* at 10.

And yet, here, the Government seeks to prevent Root Sciences from gaining clarity on the § 863(f)(1) exception in this Court following CBP's admission of the operative jurisdictional facts relating to exclusion, protest denial, and the opportunity to file a 28 U.S.C. § 1581(a)

challenge. O'Neill Aff. Ex. C. This is not the first time CBP has played judicial keep away with Root Sciences.

In an instance arising earlier this year involving similar cannabis processing equipment, CBP seized Root Sciences' merchandise under § 863(c) and 19 U.S.C. § 1595a(c). After engaging counsel, Root Sciences filed a claim, cost bond and demanded the immediate institution of judicial forfeiture proceedings. After the claim was filed but before the check for the cost bond could even reach CBP at the Port of Seattle, CBP's FP&F office contacted Plaintiff's counsel and requested that it withdraw the claim and cost bond in exchange for return of the seized merchandise. Upon agreeing to this release, CBP waived all storage charges and made no demands for remission fees. In another similar instance earlier this year, following detention of merchandise at the Port of Chicago, Plaintiff's counsel emailed the CBP Contraband Enforcement Team ("CET") about the merchandise at issue, provided a lengthy analysis of 21 U.S.C. § 863 and the subsection (f)(1) authorization exemption, and an examination of Illinois laws and State authorizations relating to cannabis paraphernalia. Plaintiff's counsel indicated its intention to file a claim and cost bond in the event of a seizure, or a protest in the event of an exclusion. CBP again agreed to release the merchandise to Root Sciences without demanding storage charges or remission fees.

Despite its agreements on numerous occasions to release merchandise it considers "drug paraphernalia" back to the "drug paraphernalia" dealer—as it were—CBP maintains that it will refuse to recognize the clear Congressional intent in 21 U.S.C. § 863(f)(1) which directs the consideration of state authorization regimes concerning *inter alia* cannabis paraphernalia. Until the scope of the § 863(f)(1) exemption is decided by a court of law, Root Sciences (and the entire industry supporting the production of legal cannabis products) is faced with continuing harm due

to the uncertainty created by what Plaintiff contends is CBP's unlawful refusal to consider and apply the § 863(f)(1) authorization exemption.

And to be clear, when an action is brought or demanded in District Courts, the Government asserts that the admissibility of § 863(d) merchandise, and applicability of § 863(f)(1), must be litigated in the CIT. When jurisdiction in the CIT is perfected by the denial of a protest, the Government moves to dismiss the action so that the matter can (possibly) be sent off to a District Court—where CBP controls the timing of filing of suit, and may elect not to file suit, or to file suit so late that a seizure can be invalidated on grounds of unconstitutional delay, without reaching the question of how 21 U.S.C. § 863(f)(1) should be interpreted and administered.

The instant Motion to Dismiss is the Government's latest move in this game of "judicial keep away." It is without merit and should be denied, and this Court should proceed to decide the issue framed in plaintiff's Complaint on an expedited basis, in keeping with USCIT Rule 3(g).

## II.     The Complaint Properly States a Claim Upon Which Relief Can Be Granted.

The Government asserts that "this action is subject to dismissal for failure to state a claim upon which relief can be granted because this Court cannot grant Root Sciences any meaningful relief, thus rendering Root Sciences' claims non-justiciable." Def.'s Mem. at 17. In support, it cites Plaintiff's prayer for relief. *Id.* at 17-18. While the language in Plaintiff's prayer for relief focuses on admissibility of the merchandise, and prays that the Court direct CBP to release the merchandise, this underscores the fact that Plaintiff had no knowledge that the Government would later allege that a seizure had occurred. How could the prayer for relief have addressed circumstances the Government concedes were withheld from Plaintiff?

Setting that aside, however, the Government curiously omits reference to the ad damnum clause in Plaintiff's Complaint that requests that the Court "provide Plaintiff with such other and further relief as this Court may deem just." Undoubtedly, this "Court is empowered under 28 U.S.C. § 2643 to order 'any other form of relief that is appropriate[.]" *Spirit Aerosystems, Inc. v. United States*, 468 F. Supp. 3d 1349, 1354 (Ct. Int'l Trade 2020). Thus, notwithstanding the Notice of Seizure, the Court is empowered to order release of goods back to Plaintiff.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully asks that the Court deny the Government's Motion to Dismiss, and establish an expedited litigation schedule in this action.

Respectfully submitted,

NEVILLE PETERSON LLP

/s/ Richard F. O'Neill
Richard F. O'Neill
999 Third Ave., Ste. 2525
Seattle, WA 98104
(206) 518-9335
roneill@npwny.com

/s/ John M. Peterson
John M. Peterson
Patrick B. Klein
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Dated: April 30, 2021

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. GARY S. KATZMANN, JUDGE**

-------------------------------------------------------------------X

ROOT SCIENCES, LLC                    :

           :

       **Plaintiff,**              :

           :

        *v.*                 :        **No. 21-00123**

           :

THE UNITED STATES              :

           :

       **Defendant.**           :

-------------------------------------------------------------------X

## CERTIFICATE OF COMPLIANCE

I, Richard F. O'Neill, of Neville Peterson LLP, who is responsible for the instant Brief,

relying upon the word count feature of the word processing program used to prepare the Brief,

certify that it complies with the word count limitation under the Court's Standard Chambers

Procedures and contains 8,401 words.

                            Respectfully submitted,

                            /s/ Richard F. O'Neill
                            Richard F. O'Neill