UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. GARY S. KATZMANN, JUDGE

_____
                                   :

ROOT SCIENCES, LLC,                  :

                                   :

                     Plaintiff,      :           Court No. 21-00123

                                   :

                    v.              :

                                   :

UNITED STATES,                    :

                                   :

                    Defendant.    :

_____:

**<u>DEFENDANT'S REPLY MEMORANDUM</u>**
**<u>IN SUPPORT OF ITS MOTION TO DISMISS</u>**

## **TABLE OF CONTENTS**

ARGUMENT ....................................................................................................................... 2

   I.     THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE
        CUSTOMS SEIZED THE MERCHANDISE .................................................... 2

      A.  The Date Of The Seizure Notice Is Not The Date Of Seizure ................... 3

      B.  Even If The Notice Date Controls, CBP Sent The Notice Within Sixty
           Days Of Presentation For Customs Examination, As Required By Law .... 8

      C.  The Court Lacks Jurisdiction Because Customs Timely Seized The
           Merchandise And Seizures Are Not Protestable ....................................... 13

   II.    ROOT SCIENCES FAILS TO STATE A CLAIM FOR WHICH RELIEF
        CAN BE GRANTED ...................................................................................... 19

CONCLUSION ................................................................................................................. 21

# TABLE OF AUTHORITIES

## Cases

*Adkins v. United States*,
  69 F.3d 1317 (Fed. Cir. 1995) ...................................................................20

*A.M. & J. Solari, Ltd. v. United States*,
  6 Cust. Ct. 373 (1941) ..............................................................................6

*Blink Design, Inc. v. United States*,
  986 F. Supp. 2d 1348 (Ct. Int'l Trade 2014) ...................................*passim*

*CBB Group Inc. v. United States*,
  35 C.I.T. 743, 783 F. Supp. 2d 1248 (2011).....................................*passim*

*CDCOM (U.S.A.) Int'l, Inc. v. United States*,
  21 C.I.T. 435, 963 F. Supp. 1214 (1997).................................................12

*Genii Trading Co. v. United States*,
  21 C.I.T. 195 (1997) ............................................................................6, 17

*H & H Wholesale Servs., Inc. v. United States*,
  30 C.I.T. 689, 437 F. Supp. 2d 1335 (2006)......................................*passim*

*ICCS USA Corp. v. United States*,
  357 F. Supp. 3d 1314 (Ct. Int'l Trade 2018), *aff'd*, 952 F.3d 1325 (Fed. Cir. 20202)....7

*Indus. Chems, Inc. v. United States*,
  941 F.3d 1368 (Fed. Cir. 2019) ...................................................................2

*Int'l Maven, Inc. v. McCauley*,
  12 C.I.T. 55, 678 F. Supp. 300 (1988).................................................6, 17

*Keirton USA, Inc. v. United States Customs & Border Prot.*,
  C21-224-TSZ, 2021 WL 1516169 (W.D. Wa. April 16, 2021) ...................19

*Murphy v. United States*,
  993 F.2d 871 (Fed. Cir. 1993) ...................................................................20

*PRP Trading Corp. v. United States*,
  36 C.I.T. 1354, 885 F. Supp. 2d 1312 (2012)..............................6, 7, 12, 14

*Seaside Food, Inc. v. United States*,
  21 C.I.T. 189 (1997) ....................................................................................6

*Serrano v. Custom & Border Patrol, U.S. Customs & Border Prot.*,
   975 F.3d 488 (5th Cir. 2020), *cert. denied sub nom*, *Serrano v. Customs & Border Prot.*, No. 20-768,
   2021 WL 1520791 (U.S. Apr. 19, 2021) ........................................................................ 7

*Tempco Mktg. v. United States*,
   21 C.I.T. 191, 957 F. Supp. 1276 (1997) ........................................................ 6, 15, 17

*Washington Intern. Ins. Co. v. United States*,
   25 C.I.T. 207, 138 F. Supp. 2d 1314 (2001) ................................................................ 18

*West Gulf Mar. Ass'n v. ILA Deep Sea Local 24*,
   751 F.2d 721 (5th Cir. 1985) ....................................................................................... 18

## **Statutes, Regulations, and Rules**

18 U.S.C. § 983(a)(1)(A)(i) ............................................................................................. 4

19 U.S.C. § 1499 ............................................................................................................ 10

19 U.S.C. § 1499(c) ..................................................................................................... 9, 16

19 U.S.C. § 1499(c)(5) ................................................................................................... 9

19 U.S.C. § 1499(c)(5)(A) ..................................................................................... 3, 13, 14

19 U.S.C. § 1514(a) ........................................................................................................ 2

19 U.S.C. § 1595a(c)(2)(A) ...................................................................................... 11, 13

19 U.S.C. § 1608 ............................................................................................................ 20

19 U.S.C. § 4320 ............................................................................................................ 11

28 U.S.C. § 1356 ................................................................................................... 2, 12, 19

28 U.S.C. § 1581(a) ............................................................................................. 1, 2, 14, 19

19 C.F.R. § 24.5 .............................................................................................................. 11

19 C.F.R. § 151.16(b) ..................................................................................................... 11

19 C.F.R. § 162.31 ..................................................................................................... 3, 4

19 C.F.R. § 162.92(a) ...................................................................................................... 4

USCIT Rule 3(a) ................................................................................................................ 14

USCIT Rule 12(b)(1) ........................................................................................................... 1

USCIT Rule 12(b)(6) ........................................................................................................... 1

## **Other Authorities**

North American Free Trade Agreement Implementation Act,
   H.R. Rep. No. 103-361, pt. 1, *as reprinted in* 1993 U.S.C.C.A.N. 2552, 1993 WL
   478184 ....................................................................................................................... 3, 9, 10

*What Every Member of the Trade Community Should Know About:* Customs
Administrative Enforcement Process: Fines, Penalties, Forfeitures and Liquidated
Damages,
   (2004) ................................................................................................................................ 8

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. GARY S. KATZMANN, JUDGE

| | | |
|---|---|---|
| ROOT SCIENCES, LLC, | : | |
| | : | |
| Plaintiff, | : | Court No. 21-00123 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

## **DEFENDANT'S REPLY MEMORANDUM**
## **IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant, United States (the Government), submits this reply memorandum in further support of its motion, pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of International Trade, to dismiss this action for lack of subject matter jurisdiction and/or for failure to state a claim upon which relief can be granted.

Plaintiff, Root Sciences, LLC (Root Sciences), commenced this action to challenge an alleged deemed exclusion of one entry of drug paraphernalia imported through the Port of Los Angeles/Long Beach.  Resp. Br. at 3.  The merchandise at issue consists of a "hopper feed vessel" of the CryoEXS 400, an apparatus "designed for the recovery of cannabis crude extract from cannabis biomass."  *Id.* at 1.  Because the subject merchandise was seized before any deemed exclusion could attach, the Court lacks 28 U.S.C. § 1581(a) jurisdiction over this action.  Alternately, the complaint is subject to dismissal because it fails to state a claim upon which this Court can grant relief.

Pursuant to the briefing schedule set by the Court, the Government filed its motion to dismiss on April 23, 2021, and Root Sciences responded in opposition on

April 30, 2021.  ECF nos. 27-29.  We now file our reply to plaintiff's opposition.  For the reasons that follow, the Court should dismiss this case for lack of jurisdiction and/or for failure to state a claim upon which relief can be granted.

## ARGUMENT

### I.  THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE CUSTOMS SEIZED THE MERCHANDISE

Root Sciences asserts jurisdiction under 28 U.S.C. § 1581(a), *see* Compl. ¶ 2, which grants the Court exclusive jurisdiction over "any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930."  28 U.S.C. § 1581(a).  As explained in the Government's motion to dismiss and more fully below, in order for there to be section 1581(a) jurisdiction, there must be a valid protest of a Customs' decision and a valid denial of that protest.  Root Sciences has not challenged the denial of a valid protest because its merchandise was timely seized by CBP, which is not a protestable decision.  *See* 19 U.S.C. § 1514(a); *Indus. Chems., Inc. v. United States*, 941 F.3d 1368, 1372 (Fed. Cir. 2019) (explaining that Customs' decision "was not a 'protestable decision' under 19 U.S.C. § 1514(a)," and, therefore, "the CIT did not err in finding [plaintiff's] Protest invalid.").

"It is well established" that the U.S. Court of International Trade (CIT) "lacks jurisdiction under § 1581(a) to review a seizure of goods by Customs."  *H & H Wholesale Servs., Inc. v. United States*, 30 C.I.T. 689, 692, 437 F. Supp. 2d 1335, 1340 (2006).  Pursuant to 28 U.S.C. § 1356, jurisdiction over seized merchandise lies with the district court.  Accordingly, Root Sciences fails to satisfy the requirements for subject matter jurisdiction in this Court.

2

### A.      The Date Of The Seizure Notice Is Not The Date Of Seizure

Root Sciences contends that a seizure occurs on the date the notice of seizure is

issued to the importer.  Resp. Br. at 9 ("[A] seizure is not effective until, at the earliest, a

notice of seizure is communicated to the importer.").  Root Sciences is incorrect.

First, the statute gives CBP thirty days to make an admissibility determination—

that is, to determine whether to release or seize or exclude the merchandise:

> The failure by the Customs Service to make a final
> determination with respect to the admissibility of detained
> merchandise within 30 days after the merchandise has been
> presented for customs examination, or such longer period if
> specifically authorized by law, shall be treated as a decision
> of the Customs Service to exclude the merchandise for
> purposes of section 1514(a)(4) of this title.

19 U.S.C. § 1499(c)(5)(A); *see also, e.g., H & H Wholesale,* 30 CIT at 696 ("The Mod

Act amendments to § 1499 now provide a period of detention, prior to *a decision to*

*release or seize* the merchandise, of at least thirty days before exclusion is assumed, and

an additional thirty days before suit may be filed.") (emphasis added) (also quoting the

North American Free Trade Agreement Implementation Act, H.R. Rep. No. 103-361,

pt. 1 at 111–12, as reprinted in 1993 U.S.C.C.A.N. 2552 at 2662-63 ("It is intended that

the provisions set forth in subsection (c), relating to the detention of merchandise,

provide a carefully balanced structure which allows the Customs Service, in the first

instance, a minimum of 60 days in which *to determine whether merchandise initially*

*detained shall be excluded from entry or seized* and forfeited if otherwise authorized

under other provisions of law.") (emphasis added)).  The statute certainly does not

require CBP to issue notice of its determination within that thirty-day period.

Customs regulations are consistent on this point as well.  Here, the applicable

regulation, 19 C.F.R. § 162.31, requires that "[w]ritten notice of … any liability to

forfeiture shall be given to each party that the facts of record indicate has an interest in the … seized property," but does not specify the time in which the notice must be provided.  A similar regulation that applies specifically to seizures under the Civil Asset Forfeiture Reform Act (CAFRA seizures) provides that "Customs will send written notice of seizure as provided in this section to all known interested parties as soon as practicable.  Except as provided in paragraphs (b), (c) and (d) of this section, in no case may notice be sent more than ***60 calendar days after the date of seizure***."  19 C.F.R. § 162.92(a) (emphasis added).  While 19 C.F.R. § 162.92(a) is not implicated here, because this case does not involve a CAFRA seizure, it is instructive that in the CAFRA context the law explicitly provides that notice to interested parties "shall be sent in a manner to achieve proper notice as soon as practicable, and in no case more than 60 days after the date of the seizure."  18 U.S.C. § 983(a)(1)(A)(i).

A seizure necessarily occurs prior to the date on which Customs issues the notice of seizure.  As explained in CBP's declarations supporting the motion to dismiss, a notice of seizure can only be issued after the agency has already determined to seize the merchandise.  ECF nos. 28-1 ¶ 20 and 28-2 ¶¶ 3-5.  Once the determination to seize is effectuated by the port, the file is transferred to the relevant Fines, Penalties and Forfeitures Office (FP&F Office) responsible for preparing and issuing the notice.  *Id*.  Accordingly, there will always be some necessary period of time between the seizure and the preparation and issuance of the seizure notice to allow for administrative processing as described in the CBP declarations.  *Id.*  It also follows that CBP's issuance of a notice of seizure cannot feasibly define when a seizure occurs.  A seizure notice contains the

4

date of seizure which is a date prior to the date of the notice.  In this case, the date of the notice is March 8, 2021, and provides that the date of the seizure is February 10, 2021.

Root Sciences contends that "this Court has held that 'an internal agency decision to proceed with seizure, which did not ripen into a notice to the importer' cannot affect the Court's jurisdiction."  Resp. Br. at 10 (quoting *Blink Design, Inc. v. United States*, 986 F. Supp. 2d 1348, 1356 (Ct. Int'l Trade 2014), which in turn cites a footnote in *CBB Group Inc. v. United States*, 35 C.I.T. 743, 751 n.3, 783 F. Supp. 2d 1248, 1255 n.3 (2011)).  Root Sciences' reliance on this statement in *Blink Design* is perplexing, however, as it is undisputed that the seizure here did ripen into a notice to the importer and that such notice was sent long before Root Sciences filed suit.

*Blink Design* explains that in *CBB Group*, "[t]he court concluded that it retained jurisdiction over the claim because Customs lacked the authority to take action affecting the status of the merchandise once the court had established its jurisdiction," as Customs had seized the merchandise over sixty days after it had been presented to Customs for examination and after a suit had been commenced in the CIT challenging the deemed exclusion.  *Blink Design*, 986 F. Supp. 2d at 1359, citing *CBB Group*, 783 F. Supp. 2d at 1256.  By contrast, in *Blink Design*, "the court face[d] no such scenario, because Customs seized the entries within the sixty-day period and before Plaintiff filed suit.  Thus, Customs retained the authority to take action through seizure when it did so with regard to the . . . entries at issue [in that case]."  *Blink Design*, 986 F. Supp. 2d at 1359.  Here, as

in *Blink Design*, and unlike in *CBB Group*, Customs seized the merchandise within the sixty-day statutory period and well before Root Sciences filed suit.[1]

This is why in *Tempco Marketing*, for example, this court noted and credited the following relevant facts: "Customs seized the goods on October 11, 1996, and informed Tempco of the seizure by notice dated October 18, 1996. … The goods were seized on October 11, 1996, by notice dated October 18, 1996." *Tempco Mktg. v. United States*, 21 C.I.T. 191, 192, 957 F. Supp. 1276, 1277 (1997). Thus, the court understood and credited the fact that the notice of seizure was issued after the date of the seizure itself. A survey of prior cases reveals that this process is entirely consistent with the historical understanding of Customs seizures. *See, e.g., A.M. & J. Solari, Ltd. v. United States*, 6 Cust. Ct. 373, 376 (1941) (discussing a Mar. 11, 1936 notice of a seizure that occurred on Feb. 27, 1936); *Int'l Maven, Inc. v. McCauley*, 12 C.I.T. 55, 55, 678 F. Supp. 300, 300-01 (1988) ("On August 17, 1987, … Customs seized the merchandise …, as indicated in the notice of seizure dated August 21, 1987"); *Seaside Food, Inc. v. United States*, 21 C.I.T. 189, 190 (1997) (the subject merchandise was "seized on January 3, 1997, notice of which was issued on January 14, 1997"); *Genii Trading Co. v. United States*, 21 C.I.T. 195, 195 (1997) ("On October 18, 1996, plaintiff received a notice stating that on

---

[1]  The sixty-day period runs from presentment of the merchandise to Customs for examination and is comprised of two thirty-day sub-periods: 1) the thirty days following presentment for examination by Customs (culminating in a deemed exclusion should Customs not act), and 2) the thirty days following the filing of a protest in the event of the exclusion of the entry. *See CBB Group*, 35 C.I.T. at 748, 783 F. Supp. 2d at 1253 ("It is apparent that the House Report, in mentioning a 'minimum' of 60 days, refers to the period following presentation of the merchandise for examination as established by paragraph (A) of section 499(c)(5), which is thirty days 'or such longer period if specifically authorized by law,' together with the thirty-day period following the filing of the protest as established by paragraph (B) of the provision.").

October 11, 1996, Customs seized the merchandise at issue …"); *H & H Wholesale*, 30

C.I.T. at 690, 437 F. Supp. 2d at 1338 (discussing a seizure notice issued on July 21,

2005, for a seizure that occurred on July 14, 2005, see exhibits to the complaint in that

case, including the seizure notices, at CIT No. 05-00636, ECF no. 4-4); *PRP Trading

Corp. v. United States*, 36 C.I.T. 1354, 1355, 885 F. Supp. 2d 1312, 1313 (2012) ("On

February 7, 2012, Customs seized all five entries, and on March 23, 2012, issued notices

of seizure to [the importer]."); *ICCS USA Corp. v. United States*, 357 F. Supp. 3d 1314,

1318 (Ct. Int'l Trade 2018), *aff'd*, 952 F.3d 1325 (Fed. Cir. 2020) (discussing a seizure

that occurred on April 19, 2017, for which the seizure notice was issued on May 1, 2017);

*see also, e.g., Serrano v. Customs & Border Patrol, U.S. Customs & Border Prot.*, 975

F.3d 488, 492-93 (5th Cir. 2020), *cert. denied sub nom.*, *Serrano v. Customs & Border

Prot.*, No. 20-768, 2021 WL 1520791 (U.S. Apr. 19, 2021) (discussing CBP's seizure of

a vehicle on September 21, 2015, notice of which was mailed by CBP on October 1,

2015).

      In all of these cases, the courts acknowledge, without question, that the seizure

notice postdates the actual seizure, and in no case does the court suggest that the seizure

did not occur until the notice was mailed (let alone suggest that no seizure could occur

until the notice of seizure is actually received by the importer of record).

      Despite the overwhelming number of cases crediting Customs' date of seizure,

Root Sciences attempts to rely on a single statement in *Blink Design* noting that in *CBB

Group*, "the court declined to rely on the date Customs asserted that seizure occurred and,

instead, utilized the date of the Notice of Seizure." *Blink Design*, 986 F. Supp. 2d

at 1356.  As explained previously, in *CBB Group* the court was concerned that Customs

had seized the merchandise on the same day the court case was commenced and then issued the notice of seizure several weeks after the case was filed, finding that "[i]n the circumstances of this case," such unique facts did not divest the court of jurisdiction. *CBB Group*, 35 C.I.T. at 751 and n.3, 783 F. Supp. 2d at 1255 and n.3.

This case presents no such concerns.  CBP seized the merchandise within the statutory period and long before the case was filed.  Likewise, the notice of seizure was issued weeks before this case was filed.  Accordingly, there was no administrative action that occurred to divest the court of jurisdiction; simply put, jurisdiction never attached in the first place.

Adopting Root Sciences' construction of the law would have troubling implications for the Government's criminal enforcement authority.  The law requires that, following the seizure of goods subject to judicial forfeiture "that may be related to a possible criminal prosecution, Customs must report the matter to the appropriate U.S. Attorney.  If requested by the U.S. Attorney, the administrative processing of seizures may be delayed to avoid interference with any criminal prosecution.  Assuming criminal prosecution is declined, or, if accepted, Customs has received consent of the U.S. Attorney to proceed administratively, the notices discussed above will be issued."  U.S. Customs and Border Protection, *What Every Member of the Trade Community Should Know About:* Customs Administrative Enforcement Process: Fines, Penalties, Forfeitures and Liquidated Damages 15 (2004), *available at* https://www.cbp.gov/sites/default/files/documents/icp052_3.pdf (last visited May 10, 2021).  If a seizure did not have legal effect until the issuance or receipt of the seizure notice, then CBP would be forced to provide notice contemporaneously with seizure,

potentially compromising a criminal investigation, or allow shipments to be deemed

excluded, permitting the importer to retain possession of the contraband goods.  Root

Sciences' construction of the interplay between seizures and deemed exclusions –

whereby, in Root Sciences' incorrect view, a deemed exclusion could attach even where,

as here, CBP determined within thirty days of the merchandise being presented for

examination that such merchandise shall be seized, if the *notice* of seizure was not sent

within thirty days of presentation for examination – would thus not only curtail the

statutory timeframe that Congress provided for CBP to make its admissibility decisions,

19 U.S.C. § 1499(c)(5), but could also interfere with potential criminal enforcement or

prosecution by the U.S. Attorney.  In light of the statutorily provided timeframe,

legislative history, customs regulations, and the precedent of this Court, the Court should

not adopt the date of the notice of seizure as controlling when the seizure occurred.

>  **B.     Even If The Notice Date Controls, CBP Sent The Notice Within Sixty
>          Days Of Presentation For Customs Examination, As Required By
>          Law**

Root Sciences entirely ignores the fact that both *CBB Group* and *Blink Design*

rely on and quote from the legislative history, which explains that 19 U.S.C. § 1499(c) is

intended to allow CBP to make a decision on whether to release, seize, or exclude

detained merchandise within sixty days of the merchandise being presented for Customs

examination:

> As explained in the report of the House Committee on
> Ways and Means accompanying the Customs
> Modernization Act ("House Report"), the purpose of
> section 499(c) is to "provide a carefully balanced structure
> which allows the Customs Service, in the first instance, a
> minimum of 60 days in which to determine whether
> merchandise initially detained shall be excluded from entry
> or seized and forfeited if otherwise authorized under other
> provisions of law."  H.R.Rep. No. 103–361, pt. 1, at 111–

> 12 (1993), *as reprinted* in 1993 U.S.C.C.A.N. 2552, 2659
> ("House Rept.").  It is apparent that the House Report, in
> mentioning a "minimum" of 60 days, refers to the period
> following presentation of the merchandise for examination
> as established by paragraph (A) of section 499(c)(5), which
> is thirty days "or such longer period if specifically
> authorized by law," together with the thirty-day period
> following the filing of the protest as established by
> paragraph (B) of the provision.

*Blink Design*, 986 F. Supp. 2d at 1359 (quoting *CBB Group*, 35 C.I.T. at 748, 783 F.

Supp. 2d at 1253).

The Customs Modernization Act (Mod Act) amendments to 19 U.S.C. § 1499

established the sixty-day period for Customs to decide whether to seize a detained entry.

The House Committee on Ways and Means report accompanying the Mod Act that

created 19 U.S.C. § 1499 more fully explains that the detention procedures are intended

to:

> provide a carefully balanced structure which allows the
> Customs Service, in the first instance, a minimum of 60
> days in which to determine whether merchandise initially
> detained shall be excluded from entry or seized and
> forfeited if otherwise authorized under other provisions of
> law.  After the passage of 60 days, an importer may
> institute an action in the Court of International Trade.  If
> such action is taken, it is the Committee's intent that the
> burden of proof shall be on the Customs Service to show,
> by a preponderance of evidence, good cause as to why an
> admissibility decision had not been made prior to the time
> the importer commenced suit.

H.R. Rep. 103-361 at 111-12, *reprinted in* 1993 U.S.C.C.A.N. 2552, 2661-62, 1993 WL

478184*; see also, H & H Wholesale*, 30 C.I.T. at 696, 437 F. Supp. 2d at 1343 (due to the

sixty-day period in Mod Act amendments, "[t]he court cannot assume that failure to seize

the merchandise immediately upon entry gave rise to a protestable exclusion").

10

Here, even if the date of the notice of seizure controls the date on which an admissibility determination is made, which it does not, the notice was sent within sixty days of the merchandise being presented for Customs examination.  Root Sciences does not and cannot dispute that the merchandise was presented for Customs examination on January 11, 2021.  *See, generally,* Resp. Br.; *see also,* Jarrell Decl. ¶¶ 9, 10 (ECF no. 28-1).  As explained in the Jarrell declaration, and consistent with the applicable regulation, 19 C.F.R. § 151.16(b), CBP considers the merchandise as presented for Customs examination when the container at issue is unloaded at the warehouse and is ready for examination by CBP officials, the same standard that the court upheld in *Blink Design*. *Blink Design*, 986 F. Supp. 2d at 1355-56; Jarrell Decl. ¶¶ 4-5, 10.  Thus, in accordance with Congressional intent as quoted and relied upon in *Blink Design* and *CBB Group*, CBP had "a minimum of 60 days" from January 11, 2021—*i.e.*, until March 12, 2021—"in which to determine whether [the subject] merchandise [that was] initially detained shall be excluded from entry or seized and forfeited if otherwise authorized under other provisions of law."  *Blink Design*, 986 F. Supp. 2d at 1359.

On February 10, 2021, CBP determined to seize the merchandise, as authorized under 19 U.S.C. § 1595a(c)(2)(A), and, on March 8, 2021, CBP mailed written notice of seizure to the official importer of record address that was provided to CBP in the formal entry documentation for this entry, as well as the official importer of record documentation required by 19 U.S.C. § 4320 and 19 C.F.R. § 24.5.  The seizure notice clearly states that Customs seized the merchandise on February 10, 2021.  ECF no. 28-2 at 15.  Even assuming, *arguendo*, that the date of the seizure were determined by the date of the notice, which it is not and cannot be, here the date on which CBP sent the seizure

notice by registered mail to the importer of record's registered address clearly establishes that CBP determined that the merchandise shall be seized within sixty days of the merchandise being presented for Customs examination.

Therefore, "at its heart, this case challenges Customs seizures of Plaintiff's merchandise." *Blink Design*, 986 F. Supp. 2d at 1361.  The timing of that seizure, which occurred long before Root Sciences commenced this action, makes the jurisdictional analysis of *CBB Group* inapposite.  Because the merchandise was seized, the Court must follow the jurisdictional statute for seizure found at 28 U.S.C. § 1356, which provides that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of any seizure under any law of the United States on land or upon waters not within admiralty and maritime jurisdiction, except matters within the jurisdiction of the Court of International Trade under section 1582 of this title."  28 U.S.C. § 1356; *see also, PRP Trading Corp.*, 36 C.I.T. at 1357, 885 F. Supp. 2d at 1314 (2012).

Root Sciences improperly suggests that "Courts focus on whether a plaintiff's challenge is to an exclusion or to a seizure of merchandise" in order to determine whether a deemed exclusion or a seizure occurred.  Resp. Br. at 13, citing and quoting *Blink Design*, 986 F. Supp. 2d at 1360, which in turn quotes *H & H Wholesale*, 30 C.I.T. at 694, 437 F. Supp. 2d at 1341.  In *H & H Wholesale*, however, the court considered whether CBP made an express exclusion, after having concluded that no deemed exclusion occurred; the court did not review whether plaintiff purported to challenge a seizure or an exclusion.  Rather, the court considered whether Customs' action was an express exclusion or whether it was a seizure, such that if it were an express exclusion, the court would have jurisdiction.  *H & H Wholesale*, 30 C.I.T. at 694-95, 437 F. Supp.

2d at 1341-42; *see also, CDCOM (U.S.A.) Int'l, Inc. v. United States*, 21 C.I.T. 435, 438-39, 963 F. Supp. 1214, 1216-18 (1997) (concluding that the case involved the protest of a seizure and not an exclusion).

Even assuming that the date CBP mails the seizure notice controls, which it does not, CBP mailed the seizure notice within sixty days of the date the merchandise was presented for Customs examination, as required by law.  Because the merchandise was seized before jurisdiction could attach, this case, at its heart, challenges Customs seizure of Root Sciences' merchandise.

### C.   The Court Lacks Jurisdiction Because Customs Timely Seized The Merchandise And Seizures Are Not Protestable

Root Sciences commenced this action to challenge what it alleges was a denial, by operation of law, of a protest contesting an alleged deemed exclusion of its drug paraphernalia.  Compl. ¶¶ 6, 12, 15.  Root Sciences contends that "CBP sent to Plaintiff's counsel an email confirming the operative facts giving rise to this Court's jurisdiction."  Resp. Br. at 5.  That computer-generated e-mail message simply states that Root Sciences' protest was "[d]eemed denied by operation of law 30 days from filing.  Filed 2/18/2021.  Deemed denied 3/20/2021."  *Id.*

The automated e-mail message that Root Sciences received from Customs on March 23, 2021, is entirely irrelevant here because, as discussed in detail in the Government's moving brief and above, before any deemed exclusion could occur, Customs seized the merchandise as drug paraphernalia pursuant to 19 U.S.C. § 1595a(c)(2)(A).  *Notice of Seizure*, Baxley Decl. Exh. 1 (ECF no. 28-2).  Accordingly, the protest could not have been denied by operation of law under 19 U.S.C. § 1499(c)(5)(B), contrary to Root Sciences' argument, because § 1499(c)(5)(B) applies

only to protests "against the decision [or deemed decision] to exclude the merchandise."

Here, because there was no decision or deemed decision to exclude the merchandise,

§ 1499(c)(5)(B) is inapplicable and cannot have denied Root Sciences' invalid protest by

operation of law.  A deemed exclusion occurs only when CBP does not "make a final

determination with respect to the admissibility of [the] detained merchandise within 30

days after the merchandise has been presented for customs examination," such that

CBP's inaction is "treated as a decision of [CBP] to exclude the merchandise for

purposes of section 1514(a)(4) of this title." *See* 19 U.S.C. § 1499(c)(5)(A).  But here

CBP did make an admissibility determination within thirty days after the merchandise

was presented for customs examination – on February 10, 2021, CBP determined that the

merchandise is inadmissible and shall be seized.  Therefore there was never a deemed

exclusion, and accordingly no deemed denial of the protest by operation of 19 U.S.C.

§ 1499(c)(5)(B).

Subject matter jurisdiction is determined at the time an action is commenced,

which for section 1581(a) actions is when a summons is filed pursuant to USCIT

Rule 3(a).  For this reason, whether Customs takes administrative action on the

underlying entry before or after a suit is commenced is critical in determining this Court's

jurisdiction.  If, as in *CBB Group*, Customs takes action on the goods after a suit is

properly commenced in this Court, the Court's jurisdiction cannot be divested by

Customs' subsequent administrative action.  By contrast, here, like in *PRP Trading Co.*,

section 1581(a) jurisdiction did not attach because Customs effected a seizure of the

goods prior to the commencement of the action.  *See PRP Trading Co*., 36 C.I.T. at 1357,

885 F. Supp. 2d at 1314 ("[T]he timing of the seizure, before commencement of

Plaintiff's action, makes the jurisdictional analysis of *CBB Group* inapposite to this case."). Because Root Sciences commenced this action long after its merchandise had been seized, jurisdiction over the seizure lies exclusively in a federal district court.

In *Blink Design*, three of the eight entries were seized more than thirty days after presentation for Customs examination but prior to the filing of the suit. *Blink Design*, 986 F. Supp. 2d at 1352. Although the court found that it retained jurisdiction over the entries that were deemed excluded and, on that basis, denied the Government's motion to dismiss, the court found that "this case is a seizure case at its heart." *Id.* at 1358. Therefore, although the court found that it retained jurisdiction over the denied protests, it also concluded that "only the district court can provide judicial relief to Plaintiff from the seizure of the merchandise." *Id.* at 1361. Accordingly, the court found "that it is in the sound interest of judicial economy to stay this proceeding, pending Plaintiff's election of remedies pursuant to the Notices of Seizure and any administrative and/or judicial proceedings resulting from that election." *Id.*

To determine whether a particular challenged CBP action is truly a seizure or an exclusion, the court has considered various factors, including whether "1) the plaintiff's protest indicated that it was challenging the 'seizure' of the merchandise; 2) the plaintiff received a notice of seizure from Customs; 3) the government had control over the merchandise; and 4) upon notice, the plaintiff was required to choose between immediate forfeiture proceedings or a petition for relief from seizure." *Blink Design*, 986 F. Supp. 2d at 1360 (quoting *H & H Wholesale Servs., Inc.*, 30 CIT at 694, 437 F. Supp. 2d at 1341 (citations omitted) and citing *Tempco Mktg.*, 21 CIT at 193, 957 F. Supp. at 1278).

Here, there can be no dispute that CBP sent timely notice of the seizure to the importer of record's mailing address; it is through no fault of CBP that Root Sciences failed to receive the notice.  Likewise, Root Sciences does not and cannot dispute that since the date of seizure the Government has had control over the merchandise.  Resp. Br. at 13.  Finally, it is indisputable that the seizure notice requires Root Sciences to choose between immediate forfeiture proceedings or a petition for relief from seizure.  *Notice of Seizure*, Baxley Decl. Exh. 1 (ECF no. 28-2).  As Root Sciences concedes, it has since "requested confirmation that CBP will not enforce any deadlines associated" with the seizure notice.  Resp. Br. at 6, n.2.  Root Sciences cannot transform seizures into exclusions by filing a protest challenging an alleged deemed exclusion.

In sum, the court in *Blink Design* found that it retained jurisdiction over the deemed exclusions, but, because the merchandise had been seized, it stayed the case pending the election by plaintiff to resolve the seizure in the district courts.  In effect, there was nothing for the court to do until the seizure issue was decided, an issue outside of its jurisdiction.  There was also no question in *Blink Design* that three of the eight entries had been deemed excluded, *i.e.*, had not been seized within thirty days of presentation for Customs examination.  Here, by contrast, there is no entry that Customs failed to seize within the statutory thirty-day period and therefore there is no deemed exclusion.

Similar to three of the entries in *Blink Design*, in *CBB Group*, the entry at issue was deemed excluded.  The importer protested the exclusion, and the protest was deemed denied.  The importer filed suit, but CBP seized the entry after commencement of the action in the CIT:

16

> The court, therefore, must determine the effect the issuance
> of the Seizure Notice, which occurred after the close of the
> 60-day period and after this case was commenced, will
> have on the court's ability to order relief.  Specifically, the
> court considers whether, jurisdiction having attached,
> Customs is free to take actions affecting the status of the
> merchandise through proceedings initiated by the Seizure
> Notice and, if so, whether those proceedings would
> preclude any grant of relief to plaintiff that the court may
> order in the future.

*CBB Group*, 35 C.I.T. at 748, 783 F. Supp. 2d at 1253.  The court considered that

Congress gave Customs a minimum of sixty days to make a determination whether to

exclude or seize an entry under 19 U.S.C § 1499(c), but held that once the court had

established jurisdiction and the sixty-day period had elapsed, CBP no longer had

authority to act against the entry.  "A determination of admissibility that the agency

reaches after the jurisdiction of the Court of International Trade has attached to a

plaintiff's cause of action contesting a deemed exclusion cannot be binding on this Court,

for otherwise, the agency's determination would be permitted to usurp the Court's

judicial power and prevent the Court from fulfilling its judicial responsibility."  *Id.* at 35

C.I.T at 749, 783 F. Supp. 2d at 1254.  The court also distinguished *H & H Wholesale*,

*Tempco Mktg.*, *Genii Trading*, and *Int'l Maven* on the basis that "[i]n none of them had

the jurisdiction of the Court of International Trade attached prior to the agency actions

taken to effect seizure of the merchandise."  *Id.* at 35 C.I.T. at 752, 783 F. Supp. 2d at

1256.

Unlike the facts here, in *CBB Group* the merchandise was seized *after*

commencement of the suit challenging the protest denial.  For that reason, the court found

that it retained jurisdiction over the case and that CBP could not take action that

foreclosed judicial relief once jurisdiction had attached.  But the facts of *CBB Group* are

inapposite here, where there is no dispute that the seizure occurred *before* the summons was filed.

Next, Root Sciences argues that the "seizure of Plaintiff's merchandise does not present this court with an issue of jurisdiction, but rather, with a potential issue of comity." Resp. Br. at 17. Comity applies when there are dueling cases before the district courts with overlapping issues, which is certainly not the case here. "The federal courts long have recognized that the principle of comity requires federal district courts—courts of coordinate jurisdiction and equal rank—to avoid interference with each other's affairs." *West Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir. 1985).

The only CIT case that Root Sciences cites in support of its argument for comity is *Washington Intern. Ins. Co. v. United States*, 25 C.I.T. 207, 138 F. Supp. 2d 1314 (2001), a case concerning the purported reliquidation by Customs of an entry as part of a settlement agreement entered by the bankruptcy court. In that case, the CIT emphasized that its "[j]urisdiction over Customs' actions is measured at the time the summons is filed," and that "[o]nce entries are properly before the Court, Customs is powerless to exert authority over these entries in the absence of a Court order." *Id.* at 25 C.I.T. at 218, 138 F. Supp. 2d at 1326. Accordingly, the CIT held that "Customs' purported 'reliquidation' is a nullity," and "[t]he fact that Customs acted pursuant to the bankruptcy settlement order is irrelevant." *Id.* Because the CIT, and not the bankruptcy court, had exclusive jurisdiction over the reliquidation of the entry, the bankruptcy court's settlement order was not subject to comity. *Id.*

Judicial comity is entirely inapplicable here.  There is no co-pending related litigation in the district courts and, since the merchandise was timely seized before it could be deemed excluded, jurisdiction lies exclusively in the federal district courts.

Finally, Root Sciences inappropriately turns to the underlying merits of the seizure, which, for all the reasons explained above must be argued in the district courts. The Government is not asking the court to *abstain* from hearing this case.  Resp. Br. at 20.  Rather, the Government seeks the case's dismissal because this Court lacks jurisdiction to reach the merits as well as to offer Root Sciences any relief from the seizure.  In support of its "abstention" argument, Root Sciences cites a recently dismissed district court case in which CBP had actually excluded the merchandise, and the merchandise was released to the importer for re-exportation (unlike here, where the merchandise has been seized and remains in CBP's custody).  But rather than protesting the exclusion and filing a case at the CIT, the plaintiff in that case erroneously filed its action in the district court.  *Keirton USA, Inc. v. United States Customs & Border Prot.*, C21-224-TSZ, 2021 WL 1516169 (W.D. Wa. April 16, 2021).  In *Keirton*, CBP argued that the CIT has exclusive jurisdiction over customs exclusions, and the court agreed. *Id.*at *4.  That position is entirely consistent with the Government's position here, which is that the district courts have exclusive jurisdiction over seizures.

For these reasons, and because there was no deemed exclusion, there was no protestable decision that gave rise to section 1581(a) jurisdiction.  Accordingly, the case must be dismissed for lack of jurisdiction.

## II.     ROOT SCIENCES FAILS TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED

Root Sciences believes that its merchandise was wrongly seized and seeks its return.  Resp. Br. at 26.  Pursuant to 28 U.S.C. § 1356, the proper forum for such relief lies in a federal district court.  Despite the clarity of the statute, and without any citation, Root Sciences nevertheless claims that, "notwithstanding the Notice of Seizure, the Court is empowered to order release of goods back to Plaintiff."  *Id.*  There is no legal basis for that position and Root Sciences does not even attempt to provide one.

This action is also subject to dismissal for failure to state a claim upon which relief can be granted because this Court cannot grant Root Sciences any meaningful relief, thus rendering Root Sciences' claims non-justiciable.  "Even where a court possesses jurisdiction to hear a claim, it may not do so in cases where the claim presents a nonjusticiable controversy-*i.e.,* the claim is such that the court lacks 'ability to supply relief.'"  *Adkins v. United States*, 68 F.3d 1317, 1322 (Fed. Cir. 1995) (quoting *Murphy v. United States*, 993 F.2d 871, 872 (Fed. Cir. 1993)).

As explained in the notice of seizure, once the goods have been seized, there are express procedures the importer must follow to obtain the release of the goods.  *See also* 19 U.S.C. § 1608.  Through the enumerated procedures, Root Sciences would be able to obtain review, challenge the seizure, and pursue the return of any merchandise determined through such procedures to be non-violating.  Because Root Sciences cannot obtain the only substantive relief that it seeks, this action must also be dismissed for failure to state a claim for which relief can be granted.

## <u>CONCLUSION</u>

For the foregoing reasons and those in our moving papers, this Court should grant

the Government's motion to dismiss.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

JUSTIN R. MILLER
Attorney in Charge
International Trade Field Office

/s/ Aimee Lee
AIMEE LEE
Assistant Director

/s/ Guy R. Eddon
GUY R. EDDON
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-9232 or 9230
*Attorneys for Defendant*

Of Counsel:
Mathias Rabinovitch
Alexandra Khrebtukova
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

Dated:  May 12, 2021

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Guy Eddon, an attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the Government's memorandum in support of defendant's motion to dismiss, dated May 12, 2021, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, and contains 6,094 words.

<u>/s/ Guy Eddon</u>