**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. GARY S. KATZMANN, JUDGE**

------------------------------------------------------------------- X
ROOT SCIENCES, LLC                                          :
                                                            :
     **Plaintiff,**                                        :
                                                            :
     *v.*                                                :          **No. 21-00123**
                                                            :
THE UNITED STATES                                           :
                                                            :
     **Defendant.**                                       :
------------------------------------------------------------------- X

<u>**PLAINTIFF'S REPSONSES TO JUNE 16, 2021 QUESTIONS FOR ORAL ARGUMENT**</u>

NEVILLE PETERSON LLP

Richard F. O'Neill
999 Third Ave., Ste. 2525
Seattle, WA 98104
(206) 518-9335
roneill@npwny.com

John M. Peterson
Patrick B. Klein
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Dated:  June 28, 2021

Plaintiff, Root Sciences, LLC ("Root Sciences") submits the following responses to the

Court's June 16, 2021 questions for oral argument (ECF No. 39) directed at Plaintiff:

1. **Does Plaintiff disagree with or challenge any aspect of the Government's presentation of facts or evidence offered in support of its motions?**

    a. **Specifically, the Government contends that the Merchandise here at issue was presented for examination to Customs and Border Patrol ("CBP") on January 11, 2021; the Merchandise was seized on February 10, 2021; notice of seizure, although not received by Plaintiff, was first sent on March 8, 2021; February 11, 2021, marks thirty days after the Merchandise was presented for examination; and March 12, 2021, marks sixty days after the Merchandise was presented for examination.  Def.'s Mot. To Dismiss at 2–5, Apr. 23, 2021, ECF No. 28 ("Def.'s Br."); Def.'s Reply Mem. in Supp. of Mot. to Dismiss at 11, May 12, 2021, ECF No. 30 ("Def.'s Reply").  Does Plaintiff contest any of these dates?**

**<u>Plaintiff's Response</u>**: Plaintiff lacks access to information necessary to dispute the facts asserted

by the Government. There has been no jurisdictional discovery in this case that would allow

Plaintiff to probe, and potentially dispute, the veracity of the Government's claims regarding the

date for presentation of merchandise for examination. However, for purposes of this motion,

Plaintiff does not dispute the presentation of facts or evidence advanced by the Government.

2. **Does Plaintiff contend that a communicated seizure would have prevented a deemed exclusion from occurring?  See Pl.'s Br. in Opp'n to Def.'s Mot. To Dismiss at 15, Apr. 30, 2021, ECF No. 29 ("Pl.'s Br.") ("An Uncommunicated Seizure Does Not Prevent a 'Deemed Exclusion' From Occurring").**

    a. **If so, does Plaintiff contend that seizure will prevent a deemed exclusion from occurring if and only if the notice of seizure is sent and/or received within thirty days of the merchandise at issue being presented for examination?   What authorities support your answer?**

**<u>Plaintiff's Response</u>**: It is unclear whether a notice of seizure, communicated or not, serves as

an admissibility determination. Section 499 of the Tariff Act and its legislative history clearly

anticipate that, if an importer does not receive an admissibility determination within 30-days of

presentment of the goods, a "deemed exclusion" occurs. The implementing CBP regulation, 19

C.F.R. § 151.16(c), requires issuance of a detailed notice of exclusion when CBP makes a

decision to detain goods.[1] However, the regulations do not specify what form a CBP notice of exclusion is to take, nor how it should be communicated to the importer, essentially leaving it to this Court to make that determination on a case-by-case basis.

As noted in Plaintiff's response in opposition to the Government's Motion to Dismiss ("Pl.'s Resp."), a notice of seizure does not by nature constitute an admissibility determination. Seizure notices may be issued by a variety of agencies other than CBP, before[2], during and after the Section 499 process takes place.[3] While a communicated affirmative notice of exclusion indicates that goods are being denied admission,[4] a seizure notice is a different animal. It goes beyond mere exclusion (where the importer is generally free to re-export the excluded goods); it deprives the owner of possession of his property, and charges a violation of law, for which a penalty of forfeiture may be imposed.

---

[1] 19 U.S.C. § 151.16(c) provides:

> (c) Notice of detention. If a decision to detain merchandise is made, or the merchandise is not released within the 5-day period, Customs shall issue a notice to the importer or other party having an interest in such merchandise no later than 5 days (excluding weekends and holidays) after such decision or failure to release (see paragraph (b) of this section). Issuance of a notice of detention is not to be construed as a final determination as to admissibility of the merchandise. The notice shall be prepared by the Customs officer detaining the merchandise and shall advise the importer or other interested party of the:
> (1) Initiation of the detention, including the date the merchandise was presented for examination;
> (2) Specific reason for the detention;
> (3) Anticipated length of the detention;
> (4) Nature of the tests or inquiries to be conducted; and
> (5) Nature of any information which, if supplied to the Customs Service, may accelerate the disposition of the detention.

[2] Nothing requires that imported goods be entered, or presented for examination, before they may be seized by CBP or another agency. However, they must be presented for CBP examination before an *admissibility* determination can made under Section 499.

[3] Various other regulations govern detention in cases where the detention is made by, or at the behest of, an agency other than CBP.

[4] For example, goods may be excluded from entry under Section 337 of the Tariff Act, 19 U.S.C. § 1337, because they violate a general or limited exclusion order issued by the International Trade Commission ("ITC"). However, there is no basis for seizure under Section 337 (unless the importer tries to re-import goods previously excluded, 19 C.F.R § 12.39(c)(1)), because no violation of law exists. A Section 337 exclusion order is not a *prohibition* on importation, but rather an *instruction to CBP officers* to exclude and turn away certain Section 337-subject goods at the border.

A notice of seizure might imply to an importer that goods have been, or will be, excluded from entry. But it is not a statutory or regulatory notice of exclusion under 19 U.S.C. § 1499.

Essentially, this question asks whether a notice of seizure might be *deemed* an admissibility determination under certain circumstances—for instance, when issued by CBP within 30-days after goods are presented for examination. Absent any statutory or regulatory definition of how a notice of exclusion will be communicated to the importer, this requires an examination of the circumstances of each case.

Here, the exclusion of Plaintiff's merchandise was apparently not even communicated internally by Defendant to CBP's Protest Section, which notified Plaintiff on March 23, 2021, that its Protest against the deemed exclusion of its goods had been received, was deemed denied, and whose denial created a cause of action in this Court.

In this regard, the equities do not favor the Government. The Notice of Seizure in this case was not communicated to Plaintiff within 30-days of presentment of the goods. An unserved notice of seizure is not considered a legally sufficient notice of the seizure. This is particularly true following enactment of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub. L. 106-185, which amended various Federal statutes to make notice a requirement in order for seizures to be effective. Courts interpret the applicable statutory notice requirements "in light of constitutional due process concerns regarding notice of impending legal proceedings." *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003).[5] Due process requires that notice be

---

[5] *Ritchie* arose in the context of an appellate review of a district court's denial of the claimant's Fed. R. Crim. P. 41(e) motion for return of seized personal property taken during execution of a search warrant of the claimant's property. Claimant sought return of the seized property, asserting the Government had not provided her with adequate notice of the forfeiture proceedings. The *Ritchie* Court observed (342 F.3d at 910 (emphasis added)):

> Federal law authorizes forfeiture in drug cases and incorporates forfeiture procedures from the Tariff Act. *See* 21 U.S.C. § 881(d). … Because forfeitures are disfavored, *see United States v. One Ford Coach*, 307 U.S. 219, 226, 83 L. Ed. 1249, 59 S. Ct. 861 (1939), forfeiture laws and their notice provisions are "strictly construed … against the government," [*United States v.*] *Marolf*, 173 F.3d [1213,] 1217 [(9th Cir. 1999)]. The statutory and regulatory guidelines for forfeitures are

"reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). Where personal notice letters are returned undelivered, the Government must make additional efforts to provide personal notice, which additional efforts are reasonable depends on the circumstances of the case. *Ritchie*, 342 F.3d at 911. When the Government fails to provide adequate notice, its forfeiture of property is void. *United States v. Marolf*, 173 F. 3d 1213, 1216 (9th Cir. 1999).

It is difficult to see how an uncommunicated seizure determination, internal to CBP, could rebut the presumption of correctness attaching to CBP's determination that there was a deemed denial of a protest challenging a deemed exclusion.

This Court has made it clear that where a deemed exclusion occurs before CBP mails a notice of seizure, there has been a protestable event; and if a protest is timely filed with CBP and later denied, this Court must exercise subject matter jurisdiction to decide the merits of the denied protest. *See Blink Design Inc*., 986 F. Supp. 2d 1356, 1361 (Ct. Int'l Tr. 2014);*CBB Group Inc*., 783 F. Supp. 2d at 1256 (Ct. Int'l Tr. 2011).

In this case, it is uncontradicted that CBP's first, unsuccessful attempt to notify the importer of the purported seizure was not even initiated until March 8, 2021. Def.'s Mem. at 5. But the deemed exclusion by operation of law occurred much earlier—according to the Government's facts this occurred on February 11, 2021. During this time, Plaintiff has well-documented efforts to communicate with CBP and learn what action(s) CBP had taken, if any. Plaintiff timely protested that deemed exclusion on February 18, 2021. CBP, in denying

---

interpreted in light of constitutional due process concerns regarding notice of impending legal proceedings. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*[,] 339 U.S. [at] 314.

Plaintiff's protest, acknowledged by email of March 23, 2021, that there had been a deemed exclusion of Plaintiff's goods, and a deemed denial of its protest. *See* Affirmation of Richard F. O'Neill ("Aff. O'Neill"), at ¶ 14 and Ex. C (ECF 14). The parties agree that Plaintiff did not become aware of the purported seizure until after this action was filed on March 22, 2021.

Even so, the Government presumes that its internal, uncommunicated decision to seize Plaintiff's merchandise prevented a protestable "deemed exclusion" from occurring. Def.'s Mem. at 10. This court has twice rejected that notion. In *Blink*, the Court investigated "the question of when Customs effects a seizure." 986 F. Supp. 2d at 1356. The Court rejected the assumption that "the date of seizure asserted by Customs in its seizure notices marks the time at which the court considers the entries seized," reasoning that "this Court has held that 'an internal agency decision to proceed with seizure, which did not ripen into a notice to the importer' cannot affect the Court's jurisdiction." *Id.* (citing *CBB Group., Inc.*, 783 F. Supp. 2d at 1255 n.3).[6]

Additionally, in *CBB Group*, an importer protested exclusion of its merchandise in November, 2010, and filed suit a month later after its protest was deemed denied. Whereas CBP claimed to have seized the merchandise on December 21, 2010, and to have issued a notice of seizure on January 11, 2011, the Court denied the Government's motion to dismiss for lack of 28 U.S.C. § 1581(a) jurisdiction, concluding that a protestable "deemed exclusion" had occurred and was timely protested. The Court reasoned (*id.* at 751 (emphasis added)):

> Under defendant's view of this case, the court would have no power to do what the statute directs it to do, regardless of whether Customs will be able to make the good cause showing, even though this case presents the very situation Congress addressed in section 499(c)(5)(C). <u>Defendant's theory of this case would hold that an action by an administrative agency, which in this case is the issuance of the Seizure Notice, somehow deprives this court of the ability to fulfill its judicial responsibility as directed by statute. The court rejects this theory as contrary to the</u>

---

[6] Even using the first date CBP issued the Notices of Seizure to Root Sciences—which occurred in a Notice claimed to have been stamped on March 8, 2021—a protestable exclusion of Plaintiff's merchandise occurred weeks earlier on February 11, 2021. The parties agree that Plaintiff filed a protest against exclusion on February 18, 2020.

> congressional intent underlying section 499(c) and inimical to the court's proper exercise of its jurisdiction. While arguing that "Customs determined that CBB's merchandise was clearly piratical," Def.'s Mem. 7, defendant also fails to explain how Customs could be free to effectuate that determination when only the court, not the agency, is now empowered to reach definitive findings of fact and conclusions of law on the admissibility of the merchandise and fashion a remedy if plaintiff prevails. In the circumstances of this case, the determination of admissibility and the determination of whether the merchandise is piratical are the same determination, and Customs is not free to usurp the court's power to make and effectuate that determination.

The Court in *CBB Group* further emphasized the importance of *actual* notice to the importer, stating:

> Defendant argues that Customs "seized" the merchandise at issue on December 21, 2010, which was the day this case commenced. Def.'s Mem. 2. The Seizure Notice, however, was not issued until January 11, 2011. *Id.* The court fails to see how an internal agency decision to proceed with seizure, which did not ripen into a notice to the imorter until twenty-one days later, could have the effect of precluding a remedy in this case.

*Id.* at 751, n.3 (emphasis added). Actual notice of seizure communicated to the importer is critical; and failure to provide notice of seizure violates Plaintiff's right to due process of law.

For Defendant to attempt to rely on an unserved notice of seizure as an instrument of notice is particularly inequitable in this case, since because beginning in January 2021, Plaintiff, through its agents and counsel, made numerous requests for updates and for an opportunity to confer with CBP at the Port of LA/LB regarding the detention of the Subject Merchandise. On each occasion, CBP refused to communicate with Plaintiff or its counsel regarding the detention. *See e.g.,* Aff. O'Neill.

**3.** Plaintiff asserts that "[a] seizure can be undertaken completely independent of, and without regard to, any determination of admissibility." Pl.'s Br. at 16.  Does Plaintiff here contend that a seizure of merchandise, communicated or not, has no effect on whether a deemed exclusion occurs?

    **a.** How does Plaintiff reconcile this assertion with the court's finding in <u>CDCOM (U.S.A.) International, Inc. v. United States</u>, 21 CIT 435, 438–39, 963 F. Supp. 1214, 1217 (1997), that "[CBP] made an admissibility determination within the thirty-day statutory period required under 19 U.S.C. § 1499(c)(5)(A), declaring both shipments of the subject merchandise 'seized'"?  <u>See also</u> <u>id.</u> at 1217 n.7 ("Under 19 U.S.C. § 1499(c)(5)(A), since both seizures occurred within thirty days of the presentation for examination, the merchandise was never deemed excluded." (citation omitted)).

Plaintiff stands by the statement in its brief. Seizures can be executed at different times within and without the period for the Section 499 admissibility process, and by agencies other than CBP.[7]

As we previously noted, Section 499 of the Tariff Act indicates in some detail the contents of a notice of detention, but does not specify the contents of a notice of exclusion nor the method of its provision to the affected party.[8] CBP could have filled this statutory "gap" through regulations, but did not. As a result, reviewing Courts must define whether a notice not styled as a notice of exclusion in fact constitutes notice of "exclusion," on a case-by-case basis. Courts have focused on factors such as whether the importer received notice before the 30-day period specified in Section 499 of the Tariff Act, and whether its protest challenges "exclusion" only, or references "seizure" in the protest. Prior judicial decisions have not always been a model of clarity.

---

[7] No one, for example, would seriously suggest that a seizure effected by an agency other than CBP, even if conducted during the 30-day detention period set out in 19 U.S.C. § 1499, would constitute a CBP determination of admissibility.

[8] A decision to admit goods is presumably evidenced by CBP's release of the cargo.

For instance, the pre-CAFRA *CDCOM* case, referenced in the Court's question, does indeed contain the statement that "[CBP] made an admissibility determination within the thirty-day statutory period required under 19 U.S.C. § 1499(c)(5)(A), declaring both shipments of the subject merchandise 'seized.'" Well, if a seizure notice is an instrument of noticing an admissibility determination under 19 U.S.C. § 1499, it must surely have been a notice of exclusion since, as the Court noted, CBP retained custody of the importer's goods. Why then was it held not to be protestable under 19 U.S.C. § 1514(a)(6)? The *CDCOM* court does not explicitly answer this question but seems to base its decision on the contents of the ensuing protest, which mentioned the "seizure" of the goods.

As the Court's question notes, the *CDCOM* court also noted—in a footnote—that "since both seizures occurred within thirty days of the presentation for examination, the merchandise was never deemed excluded." 963 F. Supp. 1217 at n.7. If the notice of seizure was an admissibility determination, this statement is true only to the extent that there was no *deemed* exclusion. What the *CDCOM* court did not address, however, is why the notices did not constitute an *affirmative* exclusion, protestable under 19 U.S.C. § 1514(a)(6).[9]

In light of CAFRA, it is difficult to see how an uncommunicated seizure could be effective for any purpose.

Here, if the Court deems' CBP's claimed seizure of Plaintiff's merchandise to be an *affirmative* exclusion in this case, it is of no moment, since Plaintiff's protest of exclusion is

---

[9] The same footnote 7 indicates that "Congress has also expressly provided that merchandise may be detained and then seized without having gone through a period of exclusion. *See* 19 U.S.C. § 1499(c)(4)." We have no idea what a "period of exclusion" might be. But that is not at all what the statute says. Subsection 499(c)(4) merely says "If otherwise provided by law, detained merchandise may be seized and forfeited." *CDCOM,* 963 F. Supp 1217 at n.7. It says nothing about abolishing the 5-day detention period set out in the statute. 19 U.S.C. § 1499(c)(1). The 30-day exclusion period begins with the presentment of the goods to CBP and culminates, in all cases, no longer than 30-days later, either with an admission (affirmative) or an exclusion (affirmative or deemed). This is the mechanism which Congress fashioned in Section 499. The notion that an importer might not receive an admissibility determination under that statute is not something Congress ever contemplated or provided for.

nonetheless timely filed, and CBP recognized that the protest was denied pursuant to law. *See* Aff. O'Neill, at ¶ 14 and Ex. C. If the Court deems the notice to have been effective when the notice of seizure was mailed—*i.e.,* March 8, 2021—then a deemed exclusion occurred, again properly and timely protested. If the Court deems the notice to have been effective when the notice of seizure was first received by Plaintiff—*i.e.,* March 24, 2021 (2 days after initiation of this action)—then the seizure is not valid because the Government never sought leave of Court to effectuate the seizure of goods already within the Court's jurisdiction. *See infra*.

Congress' failure to specify in Section 499 the mechanism for providing a notice of exclusion, and CBP's failure to "fill the gap" with regulations, has left this Court with the task of defining when such a notice is given in each case. In this regard, it is important to appreciate the evolution of this Court's analytical approach and practices. In recent cases, such as *Blink* and *CBB*, the Court has looked to principles of equity and comity to determine whether to hear the exclusion protest directly or abstain until (potential future) seizure proceedings are commenced.[10]

Congress has fashioned a clear statutory remedy for importers to challenge in this Court decisions by CBP to exclude goods from entry. Section 499 of the Tariff Act of 1930, as amended by the Customs Informed Compliance and Modernization Act, which was included as Title VI of the North American Free Trade Agreement Implementation Act, Pub. L. No. 103-182, 107 Stat. 2057 ("Mod Act"), sets out a statutory mechanism for CBP to make admissibility decisions, examination and detention decisions, and/or exclusion decisions. The statute sets clear statutory deadlines for CBP to act and provides for "deemed detentions" and "deemed exclusions" by operation of law if CBP does not act within those deadlines. Section 514(a)(6)

---

[10] It is possible that seizure proceedings might result in a determination by CBP or a District Court to remit the forfeiture, but on condition of exportation. In such an event, this Court would then proceed to determine admissibility as a matter of law.

provides that CBP decisions to exclude goods from entry (whether affirmative or "deemed" decisions) may always be protested.[11]

Goods may be excluded from entry for a variety of reasons—most of which do not implicate violations of law which may trigger a seizure of the goods. For example, goods may be excluded from entry if they do not bear the correct country of origin marking,[12] if they are of class of goods deemed inadmissible by statute or regulation,[13] or if they are subject to an exclusion order issued pursuant to Section 337 of the Tariff Act, 19 U.S.C. § 1337.[14]

Imported goods may also be seized for a variety of reasons. As noted in Plaintiff's Response to Defendant's Motion to Dismiss in this case, a "seizure" is a different act from an "exclusion from entry." Pl.'s Resp. at 16-17 (ECF 29). Seizures assert that the goods are the subject of a legal violation for which Congress has provided a penalty of forfeiture. A seizure may be performed by a variety of Federal agencies, and, in the case of imported goods, may occur after the goods have been released by CBP into the United States consumption. A threshold question for the Court in this case is whether a seizure performed *by CBP* while imported goods are undergoing the statutory admissibility process set out in 19 U.S.C. § 1499 either (i) constitutes an admissibility determination made pursuant to § 1499; or (ii) renders the entire § 1499 admissibility process inapplicable.

If CBP's seizure of goods during the § 1499 admissibility process constitutes a determination on admissibility—*i.e.*, an exclusion—then it is indisputably a protestable decision under 19 U.S.C. § 1514(a)(6). On the other hand, if it is not an admissibility determination, then

---

[11] Section 174.21 of the CBP Regulations, 19 C.F.R. § 174.21, provides a 30-day deadline for CBP to decide 19 U.S.C. § 1514(a)(6) exclusion protests, and stipulates that a protest is "deemed denied" if not decided within that 30-day period.

[12] *See e.g., 19* U.S.C. § 1304.

[13] *See e.g.*, *United States v. Utex International*, 857 F.2d 1408 (Fed. Cir. 1988).

[14] *See e.g., Jazz Photo Corp.* v. United States, 439  F.3d 1344, 1098 (Fed. Cir. 2006).

no admissibility determination has been reached meaning that a protestable "deemed exclusion" occurs by operation of law 30-days after the subject goods are presented for examination. Here, under either scenario, Plaintiff's protest was a timely protest against either an affirmative or "deemed" exclusion.

Defendant has suggested that CBP's seizure of Plaintiff's goods *prevented* a protestable exclusion decision from occurring but has offered no authority for this proposition. Def.'s Br. At 13-14 (ECF 27). Nothing in the statute, CBP's regulations, or judicial precedent suggests that the seizure of a product by CBP somehow terminates the statutory process set out in 19 U.S.C. § 1499.[15]

Thus, CBP's seizure of Plaintiff's merchandise either *is* an admissibility determination, in which case Plaintiff's protest lies against an affirmative exclusion; or it is not an admissibility determination, in which case a "deemed" exclusion occurred under § 1499. Here, this is a distinction without a difference because Plaintiff timely protested the exclusion of its merchandise, its protest was denied, and only this Court can exercise jurisdiction to review a denied protest. *See* 28 U.S.C. § 1581(a).

The Government notes that the seizure of Plaintiff's merchandise triggers a series of events which might (but not necessarily will) result in the filing of a forfeiture action in Federal District Court. That, however, is a remedy given to the government by law, which in no way vitiates the remedy given to an importer under 19 U.S.C. § 1499, 19 U.S.C. § 1514(a)(6) and 28 U.S.C. § 1581(a). It merely creates the possibility that two different actions may be commenced,

---

[15] Congress could not logically have intended that seizure of a good during the course of importation terminates the operation of 19 U.S.C. § 1499. As noted in Plaintiff's response to the Government's Motion to Dismiss, seizures may be effected without regard to the admission of merchandise, and by a number of agencies other than CBP. Suppose, in the instant case, Plaintiff's merchandise had been seized by the Drug Enforcement Administration ("DEA") instead of CBP, such a seizure could hardly be characterized as a determination on admissibility, since only CBP can make an admissibility determination.

in two different but coequal Article III courts, regarding the same merchandise. This creates a tension which has been a feature of American customs law for some time[16]; but it merely begets questions of comity which asks whether this Court should forbear from hearing an exclusion case until after a District Court resolves a (potential future) forfeiture action involving the same merchandise, or whether it should proceed to consider the issues presented in the exclusion protest without waiting for a District Court to consider the issues in the context of a forfeiture proceeding many months or years later.

4.  **Plaintiff argues that the effective date of seizure should be, at the earliest, the date of Notice, _i.e._, March 8, 2021.  Pl.'s Br. at 9, 12.  If seizures and exclusions can co-exist, what relevance to the disposition of this case does the effective date of seizure have on this case?**

a.  **Defendant contends that even if the date of notice of seizure controls, i.e., March 8, 2021, the court still lacks jurisdiction because the merchandise was seized within sixty days of it being presented for examination on January 11, 2021.  Def.'s Reply at 9–11 (citing, e.g., H.R. Rep. 103–361, pt. 1, at 111–12 (1993), <u>as reprinted</u> in 1993 U.S.C.C.A.N. 2552, 2661–63).  How does Plaintiff respond to this argument?**

**Plaintiff's Response**: As noted above, a seizure of merchandise has the potential to create an issue of comity for this Court to address. It is well-established that a notice of seizure is not effective until it is served on the owner of the property. _See e.g., United States v. Ritchie_, 342 F.3d 903, 909-10 (9th Cir. 2003); _Mullane v. Central Hanover Bank & Trust Co.,_ 339 U.S. 306, 314 (1950); _United States v. Marolf_, 173 F.3d 1214, 1216 (9th Cir. 1999). Thus, no issue of comity can arise until the seizure notice occurs and is received by the necessary party.

That the goods were seized within 60-days of presentment to CBP for examination is of no moment. Even if one were to take the position that seizure can prevent a "deemed exclusion" from occurring, a deemed exclusion had occurred weeks before CBP ever stamped the seizure

---

[16] _See e.g.,_ John M. Peterson and John P. Donohue, _Streamlining and Expanding the Court of International Trade's Jurisdiction: Some Modest Proposals_, 18 St. John's J. of Legal Commentary 75, 107 (2003).

notice, on February 11, 2021, and a protest had been filed on February 18, 2021. Once the 30-day period specified in 19 C.F.R. § 174.21(b) elapsed, the protest was by regulation "treated as having been denied on such 30th day for purposes of 28 U.S.C. § 1581." 19 C.F.R. § 174.21(b). CBP acknowledged this in its March 23, 2021, email to counsel. *See* Aff. O'Neill, at ¶ 14 and Ex. C.

To the extent the legislative history to the 1993 amendments mentions a 60-day period, As explained in the report of the House Committee on Ways and Means accompanying the Customs Modernization Act ("House Report"), it is in the following context:

> It is intended that the provisions set forth in subsection (c), relating to the detention of merchandise, provide a carefully balanced structure which allows the Customs Service, in the first instance, a minimum of 60 days in which to determine whether merchandise initially detained shall be excluded from entry or seized and forfeited if otherwise authorized under other provisions of law. After the passage of 60 days, an importer may institute an action in the Court of International Trade. If such action is taken, it is the Committees intent that the burden of proof shall be on the Customs Service to show, by a preponderance of evidence, good cause as to why an admissibility decision had not been made prior to the time the importer commenced suit. Only in this special form of exclusion action will the burden of proof be on the Government. Thus, if, prior to commencement of the action, the Customs Service determines to exclude the merchandise from the United States, an importer wishing to challenge that decision shall bear the burden of proof consistent with the provisions set forth in 28 U.S.C. 2639.

H.R. Rep. No. 103-361, pt. 1, at 111-12 (1993), as reprinted in 1993 U.S.C.C.A.N. 2552, 2659 ("House Rept."). The 60-day period given to CBP to determine admissibility consists of (i) the 30-day detention period following presentation of the goods; plus (ii) the 30-day period for CBP to consider the exclusion protest. *See* 19 C.F.R. § 174.21(b). This is made clear by the Committee's remarks above that, "[a]fter the passage of 60 days, an importer may institute an action in the Court of International Trade." *Id.*

The Committee Report regarding the amendments to Section 499 mentions seizure only in the following context:

> Once an action has commenced before the CIT, the Customs Service shall immediately notify the Court if a decision to release, exclude or seize has been reached.

House Rept., *supra* at 110. The legislative history nowhere suggests that CBP's notification to the Court somehow ousts the Court of jurisdiction. As noted above, it merely alerts the Court to the possibility that an issue of comity may arise.

5. **In <u>Tempco Marketing v. United States</u>, 21 CIT 191, 194, 957 F. Supp. 1276, 1279 (1997), the court held that, with respect to the second of three entries at issue in that case, "[s]ince the seizure occurred within thirty days of the presentation for examination, the merchandise was never deemed excluded pursuant to 19 U.S.C. § 1499(c)(5)(A)." In that case, the court used the date of actual seizure, not the date of notice of seizure, which was issued after the elapse of the thirty days following presentation of the merchandise. What, if anything, distinguishes that holding from the present case?**

<u>**Plaintiff's Response**</u>: As noted above, there has been an evolution of caselaw and judicial viewpoints concerning when a seizure is considered to occur. This Court has not followed the holding in *Tempco*. In particular, in *Blink Design*, 986 F. Supp. 2d 1348, 1356-57 (Ct. Int'l Tr. 2014), the Court addressed the pre-CAFRA decision in *Tempco*, and this very issue of timing, quite directly:

> Having addressed the legal issues regarding the beginning of the thirty day period leading to deemed exclusion, the court now turns to the question of when Customs effects a seizure. In their briefs, the parties assume that the date of seizure asserted by Customs in its seizure notices marks the time at which the court considers the entries seized. However, this Court has held that "an internal agency decision to proceed with seizure, which did not ripen into a notice to the importer" cannot affect the Court's jurisdiction. *CBB Grp., Inc. v. United States*, 35 CIT __, __, 783 F. Supp. 2d 1248, 1255 n.3 (2011) (citing 19 C.F.R. § 162.31). In that case, the court declined to rely on the date Customs asserted that seizure occurred and, instead, utilized the date of the Notice of Seizure. However, case law appears unsettled on whether the court should consider the date that Customs issued a Notice of Seizure or the date a party received the Notice of Seizure to determine whether an entry was deemed excluded prior to seizure. See id. at __, 783 F. Supp. 2d at 1255 & n.3; *H & H Wholesale Servs., Inc.*, 30 CIT at 694, 437

14

F. Supp. 2d at 1342; *Tempco Mktg. v. United States*, 21 CIT 191, 193, 957 F. Supp. 1276, 1278 (1997). The court need not resolve this issue. As illustrated below, even using the earlier dates upon which Customs issued the Notices of Seizure, such dates are uniformly more than thirty days after the date the merchandise was presented for examination.

Plaintiff submits that the more recent decisions in *Blink Design* and *CBB Group, supra,* provide a better construction of the law, and should be followed here. In this case, it is clear that the Notice of Seizure was not created until long after 30-days after presentment elapsed and was not known, or received, by Plaintiff until 2 days after this case was commenced. Consequently, the Court must recognize that a protestable deemed exclusion occurred and is properly challenged.

Finally, we note that the *Tempco* decision was rendered prior to enactment of the Civil Asset Forfeiture Reform Act, Pub. L. No. 106-185, 114 Stat. 202 (2000) ("CAFRA"), which made clear that notice is an essential requirement for giving legal effect to any act of seizure.

6. **How does Plaintiff respond to Defendant's argument that giving a seizure legal effect only upon the issuance or receipt of notice would "curtail the statutory timeframe that Congress provided for CBP to make its admissibility decisions" and "interfere with potential criminal enforcement or prosecution by the U.S. Attorney"? Def.'s Reply at 9.**

**Plaintiff's Response**: Defendant's argument is without legal basis. The requirement of notice to give legal effect to give legal effect to an act of seizure was enshrined in 2000 in the CAFRA, *supra*. The law of the Federal Circuit in this regard was summarized by the Court of Federal Claims in *Ramirez v. United States*, 57 Fed. Cl. 240, 251 (2003). In *Ramirez*, the court considered the effect of a seizure made under the Controlled Substances Act ("CSA") (which is similar to the authority for CBP's seizure in this case).[17] Discussing a related criminal forfeiture

---

[17] Forfeiture proceedings arising out of drug offenses are "covered by the same statutory provision as applies to Customs forfeitures," *United States v. One Motor Yacht Named Mercury*, 527 F.2d 1112, 1114 (1st Cir. 1975).

provision, 18 U.S.C. § 983 ("General Rules for Civil Forfeiture Proceedings),[18] the Claims Court noted (*id.* at 251-52) (emphasis added):

> The court's examination of CAFRA's history and purpose sheds new light on the meaning and effect of 18 U.S.C. § 983(e). It is clear that subsection (e) is designed to promote the three legislative policies described above. For example, as the [Federal Circuit] has observed, **"the basic Constitutional requirement of due process of law is the right to be heard, and this 'right to be heard has little reality or worth unless one is informed that the matter is pending. … '"** *Litzenberger v. United States* **89 F.3d 818, 820 (Fed. Cir. 1996)** (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 94 L. Ed. 865, 70 S. Ct. 652 (1950)). Subsection (e) enhances due process protections by establishing a statutory means for challenging closed forfeiture proceedings on the grounds of defective notice.

Indeed, 18 U.S.C. § 983 mandates that, in non-judicial civil forfeiture proceedings, "in a manner to achieve proper notice as soon as practicable, and in no case more than 60-days after the date of the seizure," except that no notice is required if the government files a civil judicial forfeiture action regarding the goods " and provides notice of that action as required by law." If, within the 60-day period, the Government secures an indictment on a charge providing for forfeiture, it must still give notice and either continue non-judicial forfeiture proceedings or cease such proceedings and take steps to exercise custody over the property seized until the criminal proceeding can be held.

Thus, giving notice of seizure does not curtail the statutory period for CBP to make admissibility determinations. And it certainly does not curtail the work of prosecutors, who are required to give notice in cases where seizures are accompanied by criminal proceedings.

---

16

**7.   Please explain in more detail if and how each of the four factors regarding the nature of CBP's action supports the argument that Plaintiff has challenged an exclusion, and not a seizure.   _See, e.g.,_ _Blink Design, Inc. v. United States_, 38 CIT __, __, 986 F. Supp. 2d 1348, 1360 (2014); _CDCOM (U.S.A.) Int'l_, 963 F. Supp. at 1216-18.**

**Plaintiff's Response**: This Court established persuasive guidelines for the exercise of comity in these situations in *Blink Design, Inc.,* stating:

> … to determine whether a plaintiff has challenged a seizure, as opposed to an exclusion, the Court has considered various factors, including whether:

> > 1) the plaintiff's protest indicated that it was challenging the "seizure" of the merchandise; 2) the plaintiff received a notice of seizure from Customs; 3) the government had control over the merchandise; and 4) upon notice, the plaintiff was required to choose between immediate forfeiture proceedings or a petition for relief from seizure.

986 Supp. 2d at 1360 (citing *H & H Wholesale Servs., Inc*., 30 CIT at 694, 437 F. Supp. 2d at 1341; *Tempco Mktg*., 957 F. Supp. at 1278).

Here, Root Sciences' action only challenges a CBP exclusion. Plaintiff knew nothing about the purported seizure when it filed its protest with CBP and this CIT action. Evaluating each factor, it is clear that (i) Root Sciences' Protest only indicated it was challenging a deemed exclusion; (ii) Root Sciences never received a notice of seizure from CBP; (iii) the Government has control over the merchandise; and (iv) Plaintiff could not have elected a remedy to challenge the seizure at any point before March 24, 2021, when—2 days after litigation commenced—it was first served with the notice of seizure. Thus, it is evident that the protest challenges an admissibility, rather than a seizure, determination.[19] Plaintiff's Protest raises a clear question of

---

[19] By contrast, where a protest lies essentially against the determination to seize the goods, this Court has deferred to the District Courts to resolve the issues of seizure and forfeiture first. In *Blink Design, supra*, the goods in question (wearing apparel) were clearly admissible goods. The seizure resulted from a question about whether Blink had committed violations of law (*i.e.,* undercounting the goods) when making entry. In this case, however, the issue presented is one of pure admissibility, as a matter of law. There is no reason why this Court should not proceed immediately to resolve this issue, for which it is just as well suited as a District Court.

law—*i.e.,* whether Plaintiff's merchandise is admissible under the authorization exemption set out in 21 U.S.C. § 863(f)(1). There is no reason why this Court should not immediately address and resolve this issue without delay.

> **8. What authority supports the contention that CBP's automated email regarding the deemed denial of the protest, equates to a concession by the Government of the operative facts in this case?  Pl.'s Br. at 8.  Why doesn't the Government's presentation of evidence regarding the seizure overcome the presumption of regularity for that notice?  Id. at 9–10 n.4.**

**Plaintiff's Response**: Whether affirmative or deemed by operation of law, CBP's protest determinations are by statute presumed to be correct. 28 U.S.C. § 2639(a). The burden of proving otherwise rests with the Government. Evidence that the Government had a seizure that was not noticed to Plaintiff until after litigation commenced, and not stamped until well after the 30-day "deemed exclusion" period expired, does not prevent a deemed exclusion from occurring. As the Government never responded to Plaintiff's repeated inquiries about the status of the entry and took no affirmative action on Plaintiff's protest, a "deemed exclusion" by operation of law occurred pursuant to 19 C.F.R. § 174.21(b).

> **9. Has Plaintiff initiated another action in federal district court or at the administrative level concerning the seized goods?**

**Plaintiff's Response**: No. Plaintiff has not initiated another action in federal district court or at the administrative level concerning the seized goods.[20]

---

[20] The Government has waived all deadlines associated with the seizure until after this Court decides the instant jurisdictional challenge, thereby giving this Court the opportunity to decide all issues without conflict from another Federal court.

**10. Upon what authority could the court order the release of goods seized by CBP?  See Pl.'s Br. at 26 ("[N]otwithstanding the Notice of Seizure, the [c]ourt is empowered to order release of goods back to Plaintiff.").  Does Plaintiff contend that the court may order CBP to reverse its decision to seize the goods?**

<u>Plaintiff's Response</u>: "The Court of International Trade shall," pursuant to 28 U.S.C. § 1585, "possess all the powers in law and equity of, or as conferred by statute upon, a district court of the United States." Moreover, 28 U.S.C. § 2643(c)(1) authorizes the CIT to "order any other form of relief that is appropriate in a civil action, including, but not limited to, declaratory judgments, orders of remand, injunctions, and writs of mandamus and prohibition." If, to effectuate a judgment holding Plaintiff's goods admissible, the Court sought to enter an order setting aside the Notice of Seizure, it certainly has the power to do so under § 2643(c)(1).

**11. What cases and authorities best support your argument?**

<u>Plaintiff's Response:</u> *Spirit Aerosystems v. United States*, 468 F.Supp.3d 1349 (Ct. Int'l Tr. 2020) (in drawback protest action, CIT is empowered to order CBP to change programming of ACE system); *Best Key Textiles Co. v. United States*, 942 F. Supp. 2d 1367 (Ct. Int'l Tr. 2013) (CIT is empowered to toll notice period under 19 U.S.C. § 1625 due to government shutdown); *IBEW Indus. Div. of Comm. Workers of Am v United States*, 29 C.I.T. 74 (2005) (CIT has broad power to issue injunctive relief); *Rhone Poulenc Inc. v. United States*, 888 F.2d 401 (Fed. Cir. 1989) (CIT is empowered to restore dismissed actions onto its calendar); *Borlem S.A. Empreedimentos Industriais v. United States*, 913 F.2d 933, 937 (Fed. Cir. 1990) ("The legislative history of 28 U.S.C. § 1585 provides the [CIT] 'with all the necessary remedial powers in law and equity possessed by other federal courts established under Article III of the Constitution.'").

**12. Are there any recent or pending Federal Circuit or CIT cases that may affect the court's analysis?**

**Plaintiff's Response**: A near identical action was filed on June 11, 2021, in this Court seeking review of a denied protest involved alleged "drug paraphernalia" excluded from the United States. *See Eteros Technologies USA, Inc. v. United States*, CIT Case No. 21-00287. Unlike the instant action, in *Eteros*, the Government has not (yet) claimed that the merchandise was seized.

Respectfully submitted,

NEVILLE PETERSON LLP

/s/ Richard F. O'Neill
Richard F. O'Neill
999 Third Ave., Ste. 2525
Seattle, WA 98104
(206) 518-9335
roneill@npwny.com

/s/ John M. Peterson
John M. Peterson
Patrick B. Klein
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Dated:  June 28, 2021