UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. GARY S. KATZMANN, JUDGE

| | |
|---|---|
| ROOT SCIENCES, LLC, | : |
| | : |
| Plaintiff, | : Court No. 21-00123 |
| | : |
| v. | : |
| | : |
| UNITED STATES, | : |
| | : |
| Defendant. | : |

**DEFENDANT'S RESPONSES TO
THE COURT'S QUESTIONS FOR ORAL ARGUMENT**

Defendant, United States (the Government), respectfully submits these responses to the Court's questions for oral argument. ECF no. 39.

1. Does the Government disagree with or challenge any aspect of Plaintiff's presentation of facts or the evidence offered in support of its motions?

a. Specifically, Plaintiff contends that "nothing available to Plaintiff reflected that the merchandise had been seized." Pl.'s Br. at 15. And, further, that "Plaintiff could have done nothing more to learn about the alleged administrative seizure in advance of bringing this exclusion case." Id. at 15 n.6. Does the Government challenge either of these assertions?

**Answer**: The Government disagrees with Plaintiff's, Root Sciences, LLC (Root Sciences), presentation of the facts and evidence offered in support of its opposition to the pending motion to dismiss, including Root Sciences' contention that "nothing available to Plaintiff reflected that the merchandise had been seized," and that Plaintiff "could have done nothing more to learn about" the seizure. Pl.'s Br. at 15, 15 n.6. For example, we also disagree with plaintiff's presentation of facts concerning when the merchandise was entered, and when it was presented for Customs examination. As explained in detail in our briefing and supporting declarations, on March 8, 2021, U.S. Customs and Border Protection (CBP) mailed written notice of the February

10, 2021, seizure, to the official importer of record address that was provided to CBP in the formal entry documentation for this entry, which was the same address that was also provided in the general importer of record documentation required under 19 U.S.C. § 4320 and 19 C.F.R. § 24.5.

On March 11, 2021, the United States Postal Service (USPS) unsuccessfully attempted delivery of the notice of seizure. USPS identified deficiencies with the mailing address, indicating that the street number did not exist and/or that no mail receptacle was located at the address. Thus, the notice of seizure was provided to Root Sciences at the address that Root Sciences filed with CBP specifically for purposes of customs business related to this entry of merchandise. Providing a correct address is the general responsibility of Root Sciences as an importer. *See* 19 C.F.R. § 24.5 and CBP Form 5106 (Create/Update Importer Identity) (requiring a mailing address and a physical location address, if different from the mailing address, for all importers of record); *cf.* 19 U.S.C. § 4320(b)(1)(C) (requiring CBP to collect sufficient information to identify the correct address for importers); CBP Form 7501 (Entry Summary) (requiring importer of record name and address for formal entry documentation). Root Sciences could and should have been aware of the seizure had it provided an address to CBP for official importing business where Root Sciences could actually receive mail. Thus, Root Sciences could have done more, by providing CBP with an address capable of receiving mail, as required under applicable regulations.

Root Sciences failed to receive CBP's timely notice of the seizure solely due to its own failure to comply with the legal requirement to keep CBP updated regarding its current address for purposes of receiving official mail from CBP concerning the entry of merchandise, including bills and refunds. *See* 19 C.F.R. § 24.5(a) ("Customs Form 5106, Notification of Importer's

Number or Application for Importer's Number, or Notice of Change of Name or Address," must be filed "with the first formal entry which is submitted or the first request for services that will result in the issuance of a bill or a refund check upon adjustment of a cash collection"). It is eminently reasonable for the agency to have used the same address that would be used to demand payment of revenue owed to the United States to notify the importer of record that admission has been denied and the merchandise has been seized as prohibited. Accordingly, Root Sciences' failure to learn of the seizure prior to its commencement of this legal action is a failure of its own making – CBP provided notice on March 8th, and, as a courtesy, CBP resent the March 8th notice on March 24th. Counsel for the Government also provided a courtesy copy of the notice to Root Sciences' counsel on March 24th. Thus, even though Root Sciences' official importer of record address on file with CBP either did not exist or did not have a mail receptacle, such that the mailed notice was undeliverable, it is indisputable that notice of the February 10th seizure was provided, and Root Sciences' rights with respect to the seized merchandise, if any, are not subject to this Court's jurisdiction.

> 2. Plaintiff argues that "nothing in the [relevant] statute suggests that an uncommunicated seizure prevents a 'deemed exclusion' from occurring." Id. at 15. What, if any, legal consequence is there for Plaintiff's non-receipt of the notice of seizure? See id. at 14.

**Answer**: Contrary to Root Sciences' argument, there is nothing in the relevant statute that would cause merchandise that has been determined to be inadmissible and seized by CBP to nevertheless be deemed excluded until the seizure is communicated. Specifically, the statute provides that "[t]he failure by [CBP] to make *a final determination with respect to the admissibility of detained merchandise* within 30 days after the merchandise has been presented for customs examination, or such longer period if specifically authorized by law, shall be treated as a decision of [CBP] to exclude the merchandise for purposes of section 1514(a)(4) of this

3

title." 19 U.S.C. § 1499(c)(5)(A) (emphasis added).  Thus, a deemed exclusion occurs for purposes of protest under 19 U.S.C. § 1514(a)(4) only if CBP does not make a final admissibility "determination" within thirty days of the merchandise being presented for customs examination, and there is nothing in the statute that requires that CBP communicate *notice* of such final determination within the same thirty days (let alone anything that requires that such notice be *received* within those same thirty days). ).  Moreover, even if CBP had failed to make a final admissibility determination within thirty days of the merchandise being presented for customs examination (which in this case it did not), such that a deemed exclusion had occurred for purposes of protest under 19 U.S.C. § 1514(a)(4), even then the statute permits the agency an additional 30 days after protest is filed to still make an admissibility determination.  *See* H.R. Rep. No. 103–361, pt. 1, at 111–12 (1993), *as reprinted in* 1993 U.S.C.C.A.N. 2552, 2659 (House Rep.) (the purpose of 19 U.S.C. § 1499(c) is to "provide a carefully balanced structure which allows the Customs Service, in the first instance, a minimum of 60 days in which *to determine* whether merchandise initially detained shall be excluded from entry or seized and forfeited if otherwise authorized under other provisions of law" (emphasis added)).

      Indeed, as is clear from the overall statutory structure, 19 U.S.C. § 1499(c) is intended to address situations where CBP makes no determination at all, not where, as here, CBP determines to seize the inadmissible merchandise as prohibited.  Specifically, pursuant to 19 U.S.C. § 1499(c)(1), when CBP fails to make an affirmative determination to release or detain within five days of presentation for examination, then the merchandise is deemed detained, and pursuant to 19 U.S.C. § 1499(c)(5)(A), when CBP still fails to make a determination within thirty days of presentation for examination, then the merchandise is deemed excluded, and only if CBP *still* fails to make a determination within sixty days of presentation for examination, and

cannot establish by a preponderance of the evidence that an admissibility decision has not been reached for good cause, only then under 19 U.S.C. § 1499(c)(5)(C) can the court "grant the appropriate relief which may include, but is not limited to, an order to cancel the detention and release the merchandise." Thus, it is clear from the statutory structure as a whole that it is intended to address situations where more than sixty days have passed since the presentation of imported merchandise for customs examination but CBP still has not made its admissibility determination and CBP still has not released nor excluded nor seized the merchandise. But this is not the case here.

Here, as explained in detail in our briefing and supporting declarations, CBP's final determination with respect to the admissibility of the subject detained merchandise occurred on February 10th, within thirty days of presentation for examination on January 11th, when the CBP official with authority to authorize the agency's seizure of the merchandise formally approved the seizure, as reflected in the agency's official system of record for seizures. At that point, the status of the subject merchandise in CBP's official system of record was changed from "held" to "seized," the merchandise was officially determined to be inadmissible as prohibited, and was seized and transferred to a long-term storage facility, where it remains in CBP's custody to date.

Thus, for purposes of the deemed exclusion analysis and this Court's jurisdiction, Root Sciences' non-receipt of the notice of seizure has no legal consequence. All that is legally relevant is that CBP made the determination to seize, which was a final determination with respect to the admissibility of the detained merchandise, within thirty days (and certainly well within sixty days) of the merchandise being presented for customs examination. An importer cannot avoid the consequences of such determination simply by setting itself up in a manner that avoids receipt of a notice.

While not relevant to the jurisdictional analysis here, the date of mailing of the notice of seizure is relevant to the importer's due process rights and the ultimate disposition of the merchandise. "Petitions for relief from seizures must be filed within 30 days from the date of mailing of the notice of seizure." 19 C.F.R. § 171.2(b)(1). In this regard, the date of mailing of the notice (but not the date of *receipt*) starts the clock for administrative petitions for relief from the seizure (though here CBP has agreed to toll the applicable deadlines for challenging the forfeiture of the seized merchandise until this Court makes its jurisdictional determination in this case). But neither the date of the mailing of the notice nor the date of receipt of the notice are legally relevant here for the purpose of deciding whether and when CBP made a final determination with respect to the admissibility of the merchandise.

In sum, to the extent there are legal consequences for Root Sciences' initial non-receipt of the notice, such consequences are not relevant to the jurisdictional issues presented here. The jurisdictional question here turns only on whether CBP made a final determination with respect to the admissibility of the merchandise within thirty days from the date on which the merchandise was presented for examination. *See* 19 U.S.C. § 1499(c)(5). In this regard, the only two legally relevant events are: (1) the presentation of the merchandise for customs examination on January 11, 2021, and (2) CBP's seizure of the merchandise on February 10, 2021, as recorded in CBP's system of record, the Seized Asset and Case Tracking System (SEACATS). *See* Jarrell Decl. ¶ 8, 19. The date on which Root Sciences received the notice of seizure is immaterial to the requirement that CBP make an admissibility determination under 19 U.S.C. § 1499 and the jurisdictional requirement that the CBP action for which judicial review is sought under 28 U.S.C. § 1581(a) must be a protestable decision under 19 U.S.C. § 1514. Here, the CBP action in question was a decision to seize the merchandise as prohibited.

> a. Does an uncommunicated seizure equate to an ousting of the court's jurisdiction by agency action as Plaintiff contends? Id. at 7–8.

**Answer**: No, an uncommunicated seizure does not equate to an ousting of the Court's jurisdiction by agency action as Root Sciences contends. Rather, this Court's jurisdiction never attached because CBP, by seizing the merchandise on February 10, 2021, made a final determination with respect to the admissibility of the detained merchandise before a deemed exclusion occurred. See 19 U.S.C. § 1499(c)(5)(A). The plain statutory language provides CBP with thirty days to decide admissibility after imported merchandise is presented for customs examination. That is, CBP has thirty days from presentation for customs examination to determine whether to release the merchandise as admissible or, if the merchandise is inadmissible, to exclude or seize. See House Rep. at 111-12 (19 U.S.C. § 1499(c) ("[A]llow[ing] the Customs Service, in the first instance, a minimum of 60 days in which to determine whether merchandise initially detained shall be excluded from entry or seized and forfeited if otherwise authorized under other provisions of law.")). If, within those thirty days, CBP determines to seize the prohibited (and thus inadmissible) merchandise, then the law provides Root Sciences with legal options to contest the forfeiture and seek the return of the seized merchandise. See 19 U.S.C. §§ 1607, 1608, 1617, 1618.[1] Unlike exclusions, seizures of merchandise are not protestable events reviewed by this Court, but are reviewed by the district courts. 28 U.S.C. § 1356.

---

[1] See also 19 C.F.R. § 162.23(c) ("Resolution of seizure under § 1595a(c). When merchandise is either required or authorized to be seized under this section, the forfeiture incurred may be remitted in accord with 19 U.S.C. 1618, to include as a possible option the exportation of the merchandise under such conditions as CBP shall impose, unless its release would adversely affect health, safety, or conservation, or be in contravention of a bilateral or multilateral agreement or treaty.").

> 3. Please explain the process by which goods can be seized by CBP and yet that seizure would not have been communicated throughout the agency such that a conflicting record update and notice could be sent out. See Def.'s Br. at 6. Was the "inaccurate belief" regarding the exclusion and protest on the part of a CBP agent or officer? Id.

**Answer**: The February 10th seizure of the subject merchandise was properly recorded in the agency's system of record and properly communicated throughout the agency. Indeed, the CBP import specialist who mistakenly updated the CBP's Automated Commercial Environment (ACE) protest record for this protest was aware of the seizure, but mistakenly believed that the protest had nevertheless been denied by operation of law. However, as explained in detail in our briefing and supporting declarations, 19 U.S.C. § 1499(c)(5)(B) did not operate to deny the protest because § 1499(c)(5)(B) applies only to protests "against the decision to exclude the merchandise." Just as "[d]eemed liquidation under § 1504(d) . . . does not result from any affirmative action on the part of Customs [because] deemed liquidation results from operation of law, and Customs makes no decision and performs no act in order to bring about a deemed liquidation," neither can the deemed denial of a protest by operation of law be dependent on any decision by CBP. *See Alden Leeds Inc. v. United States*, 34 C.I.T. 1179, 1185 (2010), *rev'd in part, vacated in part on other grounds*, 476 F. App'x 393 (Fed. Cir. 2012).

Goods are seized by a CBP Officer at the Port of Entry. Before a seizure takes place, the merchandise is appraised by an import specialist at a Center of Excellence and Expertise (Center). Once imported merchandise has been seized, the seizure is transferred to the Port of Entry's Office of Fines, Penalties and Forfeiture (FP&F), responsible for managing the disposition of seized merchandise. Protests are typically filed in ACE and are reviewed by import specialists at the Centers. In this case, the protest was reviewed by the same personnel that handled the appraisement of the merchandise for seizure purposes. All agency personnel were aware of the seizure, as it had been recorded in CBP's system of record, SEACATS.

Despite understanding that CBP seized the subject merchandise, Center personnel mistakenly altered the protest record based on the incorrect belief that the protest had been deemed denied by operation of law.  Center personnel misunderstood the procedures for handling an invalid protest that challenges an underlying seizure, causing plaintiff to receive an incorrect auto-generated notice.  The operational error does not signify an admission by the agency, nor can it override the salient jurisdictional facts.  Further, pursuant to 19 U.S.C. § 1515(c), "any administrative action taken [with respect to a protest that is the subject of an action commenced in this court] subsequent to the commencement of the action is null and void."

> 4.  How does the Government respond to Plaintiff's argument that the notice sent by CBP stating that Plaintiff's protest was deemed denied by operation of law on March 20, 2021, is "entitled to a presumption of regularity"?  Pl.'s Br. at 9 n.4.  Does CBP's email bear any legal consequence in this case?

**Answer**:  The presumption of regularity is inapplicable here and CBP's auto-generated email from ACE has no legal consequence in this case.  "The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."  *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15 (1926).  The presumption is "a general working principle" that, where applicable, requires "clear evidence" to displace it.  *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004).  The presumption of regularity is used to establish that procedural formalities took place and to prevent the ascription of government misconduct where evidence to the contrary does not exist.  Root Sciences' reliance on the presumption here is misplaced.  As explained in detail in our briefing, Root Sciences' protest could not have been deemed denied by operation of 19 U.S.C. § 1499(c)(5)(B) because no decision to exclude occurred, by operation of law or otherwise, such that this was not "a protest against the decision

9

to exclude the merchandise." *See* 19 U.S.C. § 1499(c)(5)(B) (covering only "a protest against *the decision to exclude* the merchandise") (emphasis added)).

    a. Why can't Plaintiff or other similarly situated parties rely on those CBP communications?

**Answer**: As noted above and explained in detail in our briefing, the deemed denial of a protest by operation of law is not an affirmative decision by CBP to approve or deny a protest under 19 U.S.C. § 1515. Thus, while importers can certainly rely on CBP's official communications concerning the final affirmative approval or denial of a protest, the operation of law to deny a protest, if the statutory conditions are met, is not a CBP decision.

    5. What authorities govern the notice requirements for CBP to communicate a seizure to an importer? Could CBP effectively seize goods without ever issuing a notice to the importer or responding to the importer's attempts to communicate with CBP about those goods?

**Answer**: Section 607 of the Tariff Act of 1930 (codified in 19 U.S.C. § 1607) requires that CBP provide notice of a seizure of merchandise made pursuant to 19 U.S.C. § 1595a.[2] Specifically, § 607 requires that, "If . . . such seized merchandise is merchandise the importation of which is prohibited . . . the appropriate customs officer shall cause a notice of the seizure of such articles and the intention to forfeit and sell or otherwise dispose of the same according to law to be published for at least three successive weeks in such manner as the Secretary of the Treasury may direct. Written notice of seizure together with information on the applicable procedures

---

[2] Other notice requirements in statutes and regulations governing CBP seizures are covered by the Civil Asset Forfeiture Reform Act of 2000 (CAFRA). CBP seizures made pursuant to 19 U.S.C. § 1595a are non-CAFRA seizures and are exempt from certain CAFRA rules and regulations, including those governing notices of seizures. *See* 18 U.S.C. § 983(i)(2)(A). In seizures covered by CAFRA, CBP has sixty days after the merchandise is seized to send a notice of seizure. *See* 18 U.S.C. § 983(a); 19 C.F.R. § 162.92(a) (issued under 18 U.S.C. § 983. *See* 65 Fed. Reg. 78091.) There is no specific statutory or regulatory deadline for providing notice of non-CAFRA seizures.

shall be sent to each party who appears to have an interest in the seized article." 19 U.S.C. § 1607(a)(2). Moreover, 19 U.S.C. §§ 1602, 1603, and 1604 require that a customs officer report immediately any seizure to his district office, and that the U.S. Attorney immediately institute proceedings where necessary.

In accordance with these authorities, CBP could not seize imported goods without also issuing a notice to the importer or otherwise communicating the seizure to the importer. However, this does not mean that the goods are not "effectively seized" until the notice is provided. On the contrary, the seizure and the notice are distinct events, and the notice necessarily post-dates the seizure. Indeed, as evidenced by the notice of seizure in this case, and in all similar cases, the notice is primarily intended to apprise the interested party of available options with regard to the *forfeiture* (i.e., the disposition) of the merchandise that has already been seized. *See* Notice of Seizure at page 2, option 1 ("You may file a petition … within 30 days from the date of this letter … seeking remission of the forfeiture"); page 2, option 2 ("[a]t any time prior to forfeiture, you may file an offer in compromise …"); page 3, option 4 ("You may request to have this matter referred to the U.S. Attorney for institution of judicial forfeiture proceedings …"); page 4, option 5 ("If you choose to do nothing, CBP may seek to forfeit the property. In order to obtain forfeiture, CBP must publish a notice of seizure and intent to forfeit for 30 consecutive days, and after that time the Government acquires full title to the seized property. The first notice will be posted on or about 30 days from the date of this letter."). And this is the reason the agency's action to seize is taken by a CBP law enforcement officer, *see* 19 U.S.C. § 1589a, whereas the mailing of the notice to initiate proceedings for the subsequent disposition of the merchandise is done by the Fines, Penalties and Forfeitures office. If the Court were to hold that CBP does not actually make the final determination to seize until FP&F mails

the notice, then that would effectively make an FP&F paralegal the final agency decision maker for a law enforcement decision that properly resides with the seizing officer at the port.

> 6. Of the four factors used to determine whether Plaintiff has challenged a seizure instead of an exclusion, the second factor is whether "the plaintiff received a notice of seizure from [CBP]." See, e.g., Blink Design, Inc., 986 F. Supp. 2d at 1360. Given that Plaintiff did not receive the notice of seizure and was unaware of the seizure until after it commenced this action, does the Government contend that Plaintiff's protest should nevertheless be deemed a protest of seizure outside of the court's jurisdiction? See CDCOM (U.S.A.) Int'l, 963 F. Supp. at 1218 (holding that "since Plaintiff's protest is deemed a protest of a seizure, it is not a 'valid' protest for purposes of § 1514(a), and, therefore, the matter is not appealable to this [c]ourt.").

**Answer**: Yes, Root Sciences' protest in this case is an invalid protest of a seizure that falls outside of this Court's jurisdiction. The Court's jurisdiction here turns on whether CBP made an admissibility determination within the thirty-day period prescribed by 19 U.S.C. § 1499(c)(5)(A) (or, more broadly, whether CBP made an admissibility determination within the overall sixty-day period that Congress intended for CBP to determine in the first instance whether merchandise initially detained shall be excluded from entry or seized and forfeited if otherwise authorized under other provisions of law). Where, as here, CBP makes a final determination with respect to the admissibility of the detained merchandise within thirty days after the merchandise has been presented for customs examination, and where such determination is that the merchandise is inadmissible as prohibited, and the merchandise is seized, there is no protestable "decision to exclude the merchandise" because the merchandise has been seized rather than excluded.

CBP's system of records, and the official notice of seizure, as well as our supporting declarations in this case, unequivocally demonstrate that CBP seized the merchandise on February 10, 2021, within 30 days after the merchandise was presented for customs examination on January 11, 2021. *See* Jarrell Decl. ¶ 19; Baxley Decl. at Ex. 1. Because CBP timely seized

the merchandise, no deemed exclusion occurred, and CBP did not affirmatively exclude the merchandise. Because there was no protestable action, Root Sciences' protest is invalid.

That Root Sciences was unaware of the seizure until after it commenced this action is immaterial to the jurisdictional facts. Absent an actual or deemed decision to exclude the merchandise, a protest merely alleging that a deemed exclusion occurred cannot form the basis for this Court's jurisdiction where none otherwise exists.

> 7. In Blink Design, the court relied on the date CBP sent notice of seizure, rather than the date of actual seizure "to determine whether an entry was deemed excluded prior to seizure." 986 F. Supp. 2d at 1357. Why should the court not do the same in this case?

**Answer**: The Court should not follow *Blink Design*'s reliance on the date CBP sent the notice of seizure, rather than the date of actual seizure, as determinative of the date on which CBP made its "final determination with respect to the admissibility of detained merchandise" for purposes of 19 U.S.C. § 1499(c)(5)(A). The statute is carefully constructed to give CBP thirty days from presentation for customs examination to make its admissibility decision – *i.e.*, whether to release, exclude or seize – plus an additional thirty days to consider the matter further upon protest before an importer can file an action with the court. *See* 19 U.S.C. § 1499(c)(5)(A)-(B); House Rep. at 111, 12 (the purpose of 19 U.S.C. § 1499(c) is to "provide a carefully balanced structure which allows the Customs Service, in the first instance, a minimum of 60 days in which to determine whether merchandise initially detained shall be excluded from entry or seized and forfeited if otherwise authorized under other provisions of law").

Here, consistent with the statutory timeframe for CBP's admissibility determinations, CBP made its admissibility determination on February 10th, within thirty days of the presentation of the merchandise for customs examination on January 11th. Then, within the next thirty days (and thus still before an action could be filed), on March 8th, CBP provided notice of the seizure,

and advised the importer of its legal rights to contest the resulting forfeiture, after ensuring that the administrative file was complete and all supporting documentation was accounted for. As Congress recognized, and as evidenced by the plain language of the statute, thirty days is not sufficient to both make the determination and to provide the notice.

> 8. Assuming arguendo that the court applies the reasoning of <u>Blink Design</u> and concludes that a deemed exclusion occurred prior to the effective date of seizure, i.e. the date notice was sent on March 8, 2021, would the court properly have jurisdiction over, at least, Plaintiff's denied protests? <u>See</u> 986 F. Supp. 2d at 1359, 1361 (finding that "[CBP] uniformly seized the imported the merchandise, and provided notice of that seizure, within sixty days of the presentation for examination of that merchandise," but nevertheless holding that it retained jurisdiction over denied protests).

**Answer**: In our view, *Blink Design* wrongly concluded that the date on which the notice was sent is determinative of the date on which an admissibility determination is made. However, even assuming, *arguendo*, that a deemed exclusion occurred prior to the date that notice was sent on March 8, 2021, this Court does not have jurisdiction over CBP's decision to seize the merchandise. *See* 28 U.S.C. § 1356.

> a. If the court does find it has jurisdiction over any deemed exclusion in this case, should the court stay the case pending a result from the district court or an administrative procedure, as the court did in <u>Blink Design</u>, 986 F. Supp. 2d at 1362?

**Answer**: No. The court should dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to CIT Rule 12(b)(6). As explained in detail in our briefing, here CBP seized prohibited merchandise—unlike excluded merchandise, here the merchandise is in CBP's custody and is not being released to the importer for re-exportation, and this Court does not have the power to order its release. Only a district court can review CBP's seizure of the merchandise. Accordingly, Root Sciences cannot receive any relief from this court. Nevertheless, if the Court does find it has jurisdiction over a deemed exclusion in this case, and does not dismiss the case for failure to state a claim, then the Court should stay the case pending a result from a district court with respect to the seizure.

9.  What cases and authorities best support your argument?

**Answer**:  The authorities cited above and in our briefing best support our arguments.

10.  Are there any recent or pending Federal Circuit or CIT cases that may affect the court's analysis?

**Answer**:  There is a pending CIT case that, while unrelated, also concerns prohibited drug paraphernalia.  *Eteros Technologies Inc. v. United States*, CIT No. 21-00287.  The *Eteros* case challenges CBP's denial of Protest No. 3004-21-101275, and concerns CBP's exclusion of drug paraphernalia.  The *Eteros* case is not relevant to the jurisdictional analysis here because in *Eteros* the merchandise was excluded, not seized, but it may be relevant insofar as it is another pending case presenting the same or similar underlying legal issues concerning the prohibition on importation of drug paraphernalia.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

JUSTIN R. MILLER
Attorney in Charge
International Trade Field Office

/s/ Aimee Lee
AIMEE LEE
Assistant Director

/s/ Guy Eddon
GUY EDDON
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-9232 or 9230
*Attorneys for Defendant*

Of Counsel:
Mathias Rabinovitch
Alexandra Khrebtukova
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

Dated: June 28, 2021

16