Slip Op. 21-136

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ROOT SCIENCES, LLC,<br><br>                    Plaintiff,<br>    v.<br><br>THE UNITED STATES,<br><br>                    Defendant. | Before: Gary S. Katzmann, Judge<br>Court No. 21-00123 |

## OPINION

[The court grants Defendant's motion to dismiss.]

Dated: October 7, 2021

John M. Peterson, Neville Peterson LLP, of New York, N.Y., argued for Plaintiff Root Sciences LLC.  With him on the briefs were Richard F. O'Neill, of Seattle, WA and Patrick B. Klein.

Guy R. Eddon, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y., argued for Defendant United States. With him on the brief were Brian M. Boynton, Acting Assistant Attorney General, Jeanne E. Davidson, Director, Justin R. Miller, Attorney in Charge, International Trade Field Office, Aimee Lee, Assistant Director.  Of Counsel on the brief were Mathias Rabinovitch and Alexandra Khrebtukova, Office of the Assistant Chief Counsel for International Trade Litigation, U.S. Customs and Border Protection, of New York, N.Y.

      Katzmann, Judge:  This is a case about a cannabis processor manufactured in Germany that was seized by Customs and Border Protection ("CBP") as prohibited merchandise, namely drug paraphernalia, not subject to import.  Is the dispute regarding that seizure to be adjudicated by the United States Court of International Trade ("CIT") or the United States District Court?  This case addresses the question of whether the CIT has jurisdiction over a deemed exclusion and protest therefrom where CBP seized goods within thirty days of presentation for examination, but Plaintiff did not receive the notice of that seizure from CBP until bringing a challenge to the court.  Plaintiff Root Sciences, LLC, an importer, manufacturer, and distributor of merchandise for the cannabis

and hemp processing industry, challenges what it contends is the deemed denial of its protest to exclusion of merchandise for import and argues that the CIT has jurisdiction over the case. Compl. ¶¶ 1–3, Mar. 24, 2021, ECF No. 15. In response, Defendant the United States ("Government") moves to dismiss this case for lack of jurisdiction, arguing that there has been no exclusion, and no denial of Plaintiff's protest, because of CBP's seizure of the merchandise and that jurisdiction is thereby lodged in the district court. Def.'s Mot. to Dismiss, Apr. 23, 2021, ECF No. 27 ("Def.'s Br."). The court concludes that it does not have jurisdiction over this dispute because CBP seized Plaintiff's merchandise before a deemed exclusion occurred by operation of law. Accordingly, the case is dismissed.

## BACKGROUND

### I. Legal Framework and Jurisdiction

The jurisdictional statute 28 U.S.C. § 1581(a) grants the court "exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930," which enumerates certain decisions made by CBP. The exclusion of merchandise is one such protestable decision. 19 U.S.C. § 1514(a)(4). In 1993, Congress passed the Customs Modernization Act ("Mod Act"), which amended 19 U.S.C. § 1499 to create the mechanisms of deemed exclusion and deemed denial of protests. Under 19 U.S.C. § 1499(c)(5)(A), the failure of CBP "to make a final determination with respect to the admissibility of detained merchandise within 30 days after the merchandise has been presented for customs examination . . . shall be treated as a decision of the [CBP] to exclude the merchandise for purposes of section 1514(a)(4) of this title," i.e., a deemed exclusion. Under CBP's implementing regulation, 19 C.F.R. § 151.16(b), "merchandise shall be considered to be presented for [CBP] examination when it is in a condition to be viewed and examined by a [CBP] officer." Presentation

for examination requires that "the merchandise itself -- not a proxy or summary -- be laid out or put before a [CBP] official to look at or otherwise visually inspect." Blink Design, Inc. v. United States, 38 CIT __, __, 986 F. Supp. 2d 1348, 1355 (2014). Under 19 U.S.C. § 1499(c)(5)(B), if CBP fails to respond to a protest of an exclusion within thirty days, that protest will be deemed denied. That denial is then appealable to the court under 28 U.S.C. § 1581(a). Thus, if an importer promptly protests a deemed exclusion, and CBP fails to make a decision to admit or exclude the importer's goods within sixty days, that importer may challenge the deemed denial to its deemed exclusion before the court.

However, 19 U.S.C. § 1499(c)(4) states that "if otherwise provided by law, detained merchandise may be seized and forfeited." Seizures, unlike exclusions, are not protestable decisions under 19 U.S.C. § 1514(a), and are not appealable to this court. Int'l Maven, Inc v. McCauley, 12 CIT 55, 57, 678 F. Supp. 300, 302 (1988); Milin Indus., Inc. v. United States, 12 CIT 658, 659, 691 F. Supp. 1454, 1454 (1988); see also Ovan Int'l, Ltd. v. United States, 39 CIT __, __, 49 F. Supp. 3d 1327, 1331 (2015) (The Court's jurisdiction "is limited to appeals of valid and timely protests that have been denied by Customs."). Rather, they are governed by 28 U.S.C. § 1356, which grants to the federal district court in which the merchandise is located exclusive jurisdiction over "any seizure under any law of the United States . . . except matters within the jurisdiction of the [CIT] under section 1582 of this title." Section 1582 refers only to actions commenced by the United States, and so is not applicable to the instant case. Relatedly, 19 C.F.R. § 162.31 states that "[w]ritten notice of . . . any liability to forfeiture shall be given to each party that the facts of record indicate has an interest in the . . . seized property." Notably, the regulation does not state when such notice must be provided, nor that CBP must ensure notice is received. To obtain relief from seizure, the importer may file an administrative petition pursuant to 19 U.S.C.

§ 1618 and 19 C.F.R. § 171.1; or file a claim pursuant to 19 U.S.C. § 1608 and 19 C.F.R. § 162.47, for referral to the U.S. attorney for the district in which the seizure was made, who shall then institute forfeiture proceedings.

In short, the CIT has jurisdiction over CBP's decision to exclude goods from entry (if properly protested), but the CIT does not have jurisdiction over seized goods.

## II.    Factual Background

The facts of this case are largely undisputed. In December 2020, Plaintiff attempted to import through the port at Los Angeles/Long Beach, California a German-manufactured component of a Cryo-Ethanol Extraction System, "an all-in-one cryo-extraction, solvent recovery and decarboxylation system designed for the recovery of cannabis crude extract from cannabis biomass," ("Merchandise"). Compl. ¶ 6. In essence, the Merchandise is a component part of a cannabis extraction machine.

According to the Declarations of CBP officials Scott Jarrell and Lee Baxley, the following happened upon presentation of the Merchandise to CBP: CBP selected the Merchandise for cargo examination on December 16, 2020.[1] Def.'s Br. at 9 (citing Decl. of Scott Jarrell in Supp. of Def.'s Mot. to Dismiss ¶ 9, Apr. 23, 2021, ECF No. 28-1 ("Jarrell Decl.")). The vessel transporting the Merchandise arrived at the Los Angeles/Long Beach Seaport on December 31, 2020. Id. On January 13, 2021, CBP detained the Merchandise as "possible drug paraphernalia," and issued a notice of detention to Plaintiff's broker. Id. at 10 (citing Jarrell Decl. ¶ 13). On or about January 25, 2021, a CBP official determined that the Merchandise was to be seized as drug paraphernalia,

---

[1] Plaintiff's Complaint mistakenly identifies the date the Merchandise was presented to CBP for examination as December 18, 2020. Compl. at 2. Plaintiff amended this error in responding to the Government's motion to dismiss, and both parties now agree that the Merchandise was presented to CBP for examination on January 11, 2021. Pl.'s Br. at 3, 10–11; Def.'s Br. at 2.

and as such would be subject to forfeiture. Id. at 3–4 (citing Jarrell Decl. ¶ 16). On February 10, 2021, CBP seized the Merchandise and updated its records system to reflect the seizure. Id. (citing Jarrell Decl. ¶¶ 18-19). That system was updated again on February 11, 2021, to release the "hold" on the Merchandise and reflect that it had been seized. Id. (citing Jarrell Decl. ¶ 20). On February 17, 2021, the Merchandise was transferred to CBP's long-term seizure storage facility where it remains to date. Id. at 4 (citing Jarrell Decl. ¶ 20). On March 8, 2021, CBP sent notice of the seizure ("Notice") to Plaintiff via certified mail using the address listed by Plaintiff's broker on the entry filing for the Merchandise. Id. at 5 (citing Decl. of Lee Baxley in Supp. of Def.'s Mot. to Dismiss ¶ 5, Apr. 23, 2021, ECF No. 28-2 ("Baxley Decl.")). On March 11, 2021, the United States Postal Service unsuccessfully attempted to deliver the Notice. Id. (citing Baxley Decl. at Exh. 3). On March 22, 2021, the Notice was returned to CBP as undeliverable. Id. (citing Baxley Decl. ¶ 6). On March 24, CBP re-sent the Notice via regular mail, but this attempt was also returned as undeliverable on April 2, 2021. Id. (citing Baxley Decl. ¶ 7).

Plaintiff does not dispute this version of events, but stresses that "Plaintiff could have done nothing more to learn about the alleged administrative seizure in advance of bringing this exclusion case." Resp. of Pl. in Opp. to Def.'s Mot. to Dismiss 15 n.6, Apr. 30, 2021, ECF No. 29 ("Pl.'s Br."). Rather, according to the Affirmation of Richard F. O'Neill, counsel to Plaintiff, beginning in late January 2021, Plaintiff repeatedly asked CBP for information about the detention. Pl.'s Br. at 3 (citing Aff. of Richard O'Neill in Supp. of Pl.'s Appl. for an Order to Show Cause, Mar. 24, 2021, ECF No. 14-3 ("O'Neill Aff.")). Plaintiff received no substantive response to its multiple requests, which continued throughout early February 2021. Id. The Government does not dispute Plaintiff's representations of CBP's lack of communication. See generally Def.'s Br. Having received no information regarding the detention, and unaware of the seizure of February 11, 2021,

Plaintiff acted on its belief that the Merchandise was deemed excluded by operation of 19 U.S.C. § 1499(c)(5)(A) thirty days after the Merchandise was presented to CBP for examination and filed a protest of the deemed exclusion on February 18, 2021. Pl.'s Br. at 3. Plaintiff's protest argued that the Merchandise was not prohibited drug paraphernalia because the Merchandise was subject to an authorization exemption under 21 U.S.C. § 863(f)(1), which allows individuals authorized by local, state, or federal law to import otherwise prohibited merchandise. Plaintiff also argued that because California and Washington states both authorize the use of machinery for processing hemp and marijuana, its importation is allowed under 21 U.S.C. § 863(f)(1). Pl.'s Br. at 4.

Plaintiff, having not received the Notice, and having received no other updates on the status of the detained Merchandise, believed its protest was deemed denied pursuant to 19 C.F.R. § 174.21(b) on March 20, 2021, thirty days after Plaintiff's protest was filed. Id. at 4. On March 23, 2021, CBP sent an automated email to Plaintiff stating that its protest had been deemed denied on March 20, 2021. Id. at 5. The Government notes this email was automated, related only to the protest, and was triggered by "an import specialist" who "mistakenly believed" that a protest after a seizure could still be deemed denied by operation of law. Def.'s Resps. to the Ct.'s Questions for Oral Arg. at 8, June 28, 2021, ECF No. 41 ("Def.'s Resps. to Ct.'s Questions"); see also Def.'s Br. at 6. Eight hours after filing this case, Plaintiff learned of the seizure via an email sent to Plaintiff from Government counsel. Pl.'s Br. at 5.

### III.   *Procedural History*

On March 22, 2021, Plaintiff initiated this action and filed a motion for an order to show cause requesting that the court order the Government "to appear and show cause why the [c]ourt should not order (i) the cancellation of the deemed exclusion of, and the release of, the [Merchandise] pursuant to 19 U.S.C. § 1499(c)(5)(C); and/or (ii) the entry of an expedited

litigation schedule." Summons, Mar. 22, 2021, ECF No. 1; Compl. at 1; Pl.'s Mot. For an Order to Show Cause, Mar. 24, 2021, ECF No. 14 ("Pl.'s Mot."). The court held a teleconference on March 30, 2021, during which the Government first informed the court of the seizure. Teleconference, Mar. 30, 2021, ECF No. 21. The court then ordered the parties to file proposed briefing schedules. Id. The Government filed a motion to dismiss on April 23, 2021. Def.'s Br. Plaintiff responded in opposition on April 30, 2021. Pl.'s Br. The Government replied on May 12, 2021. Def.'s Reply in Supp. of Mot. to Dismiss, May 12, 2021, ECF No. 30 ("Def.'s Reply"). Oral argument was held on June 30, 2021. Oral Arg., ECF No. 42. Prior to oral argument, the court issued and the parties responded to questions regarding the case. Ct.'s Letter re: Questions for Oral Arg., June 16, 2021, ECF No. 39; Pl.'s Resp. to June 16, 2021 Questions for Oral Arg., June 28, 2021, ECF No. 40 ("Pls.' Resp. to Oral Arg. Questions"); Def.'s Resps. to Ct.'s Questions. As directed by the court, the parties also filed briefs following oral argument. Pl.'s Suppl. Br. in Opp'n to Def.'s Mot. to Dismiss, July 8, 2021, ECF No. 44; Def.'s Post-Arg. Submission, July 8, 2021, ECF No. 43.

## STANDARD OF REVIEW

The court's determination of its subject matter jurisdiction is a threshold inquiry. Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94–95 (1998); CR Indus. v. United States, 10 CIT 561, 562 (1986) ("It is fundamental that the existence of a jurisdictional predicate is a threshold inquiry in which plaintiff bears the burden of proof."). Whether to grant a motion to dismiss for lack of jurisdiction is a question of law. JCM, Ltd. v. United States, 210 F.3d 1357, 1359 (Fed. Cir. 2000). Where jurisdiction is challenged pursuant to Rule 12(b)(1), the burden rests on the plaintiff to establish the basis for jurisdiction. Pentax Corp. v. Robison, 125 F.3d 1457, 1462 (Fed. Cir. 1997); see also Wally Packaging, Inc. v. United States, 7 CIT 19, 20, 578 F. Supp. 1408,

1410 (1984) (noting that "[w]hen the court's jurisdiction is challenged, the party asserting jurisdiction has the burden of establishing that jurisdiction exists"). If a Rule 12(b)(1) motion controverts factual allegations in the complaint, the allegations in the complaint are not controlling and are subject to factfinding by the court. Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583–84 (Fed. Cir. 1993); Blink Design, 986 F. Supp. 2d at 1352; H & H Wholesale Servs., Inc. v. United States, 30 CIT 689, 691–92, 437 F. Supp. 2d 1335, 1339 (2006). In these circumstances, as part of the motion, the court is permitted to "review evidence outside the pleadings to determine facts necessary to rule on the jurisdictional issue." H & H Wholesale, 30 CIT at 692, 437 F. Supp. 2d at 1340 (citations and quotations omitted). Accordingly, the court is permitted to review the documents attached to the Motion to Dismiss for purposes of assessing jurisdiction.

## DISCUSSION

Root Sciences asserts jurisdiction under 28 U.S.C. § 1581(a), *see* Compl. ¶ 2, which, as noted above, grants the CIT exclusive jurisdiction over "any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930." 28 U.S.C. § 1581(a). In disputing jurisdiction, as discussed below, the Government contends that Root Sciences has not challenged the denial of a valid protest because its merchandise was timely seized by CBP, which is not a protestable decision. See 19 U.S.C. § 1514(a) (see page 3, supra). The Government argues that pursuant to 28 U.S.C. § 1356 (see page 3, supra,) jurisdiction over seized merchandise lies within the district court. Accordingly, due to the seizure of the merchandise at issue, the Government concludes that Root Sciences cannot satisfy the requirements for subject matter jurisdiction in this court and asks the court to dismiss the instant case for lack of jurisdiction. Def.'s Br. at 1. Plaintiff, however, contends that the court has jurisdiction over the dispute because an uncommunicated seizure cannot prevent the occurrence of a deemed exclusion or subsequently

deemed denied protest. Pl.'s Br. at 7–8. Thus, the court must answer two questions in determining whether it has jurisdiction over this case: (1) whether a seizure effected within thirty days of presentment of goods for examination constitutes an admissibility determination that prevents a deemed exclusion from occurring by operation of law; and (2) what effect notice of seizure has on the court's jurisdiction. The court concludes that a seizure effectuated within thirty days of presentation of the goods to CBP, even if uncommunicated to the importer within those thirty days, will prevent the occurrence of a deemed exclusion. Thus, the court dismisses the case for lack of jurisdiction because Plaintiff's protest was not valid as there was no deemed exclusion.

### I.   *A Seizure Effected Within Thirty Days of Presentment for Examination Will Prevent a Deemed Exclusion.*

The parties first contest whether a seizure by CBP constitutes an "admissibility determination" for purposes of 19 U.S.C. § 1499(c), which precludes a deemed exclusion from occurring. The Government contends that seizure does constitute an admissibility determination, and, because CBP actually seized Plaintiff's merchandise within thirty days of its presentment for examination, no deemed exclusion occurred in this case. Def.'s Reply at 14. Plaintiff asserts that a "seizure of goods . . . is not an admissibility determination made pursuant to 19 U.S.C. § 1499," and that "a seizure can be undertaken completely independent of, and without regard to, any determination of admissibility." Pl.'s Br. at 16.

While the court agrees with Plaintiff that a seizure does not constitute an admissibility decision, it nevertheless concludes that CBP's seizure of the Merchandise did prevent the deemed exclusion from occurring. The statute, CBP's implementing regulation, the legislative history, and the court's case law support this conclusion. First, the statute contains a provision stating that "[i]f otherwise provided by law, detained merchandise may be seized and forfeited." 19 U.S.C. § 1499(c)(4). The implementing regulation, 19 CFR § 151.16(j) elaborates that "[i]n lieu of seizure

<u>and forfeiture</u>, where authorized by law, Customs may deny entry and permit the merchandise to be exported, with the importer responsible for paying all expenses of exportation" (emphasis added). In other words, merchandise not already seized may be excluded by CBP. Furthermore, the regulation states that "[a] final determination with respect to admissibility of detained merchandise will be made within 30 days from the date the merchandise is presented for Customs examination. <u>Such a determination may be the subject of a protest.</u>" 19 C.F.R. § 151.16(e) (emphasis added). So, while an admissibility determination may be the subject of protest, a seizure is not. See also <u>Int'l Maven</u>, 12 CIT at 57, 678 F. Supp. at 302. This distinction is consistent with the court's well-established case law that seizures are not protestable decisions within this court's jurisdiction. See, e.g., <u>CDCOM (U.S.A.) Intern., Inc. v. United States</u>, 21 CIT 435, 439, 963 F. Supp. 1214, 1218 (1997) ("since Plaintiff's protest is deemed a protest of a seizure, it is not a 'valid' protest for the purposes of § 1514(a), and, therefore, the matter is not appealable to this [c]ourt"); <u>H & H Wholesale Servs.</u>, 30 CIT at 692–93, 437 F. Supp. 2d at 1340 ("[A]n exclusion must take place before a plaintiff may protest it. If only a seizure took place, the court has no jurisdiction.").

Second, the legislative history of the Mod Act, which created the deemed exclusion process, shows that the purpose of 19 U.S.C. § 1499(c) is to afford relief to importers for CBP's inaction. Congress explained that the statute would give CBP "a minimum of 60 days in which to determine whether merchandise initially detained shall be excluded from entry or seized and forfeited if otherwise authorized under other provisions of law." H.R. Rep. No. 103–361, pt. 1, at 111–12 (1993). The use of the word "or" here suggests that Congress intended that exclusions and seizures be mutually exclusive actions. In the instance in which CBP takes no action and a deemed exclusion of merchandise occurs, the burden of proof, typically resting on the complainant,

switches to CBP to demonstrate "that it has good cause for not reaching an admissibility decision." Id. at 110. If a suit is commenced after an admissibility decision has been reached, the burden remains with the complainant in accordance with 28 U.S.C. § 2639. Id. "Thus, if, prior to commencement of the action, the Customs Service determines to exclude the merchandise from the United States, an importer wishing to challenge that decision shall bear the burden of proof consistent with the provisions set forth in 28 U.S.C. § 2639." Id. at 112 (emphasis added). Congress's failure to use the term "seizure" here indicates that seizures are not admissibility decisions under section 1499(c)(5). Further, the court notes that the reference to section 2639 includes "any civil action commenced in the [CIT] under section 515, 516, or 516A of the Tariff Act of 1930." 28 U.S.C. § 2639(a)(1). It makes little sense that a provision intended to shift the burden of proof in cases brought before the CIT would concern seizure, the contesting of which cannot properly be brought before this court but must instead be heard at the appropriate district court, per 28 U.S.C. § 1356. Recent decisions have also relied upon this legislative history in similarly concluding that seizures are not admissibility determinations. See CBB Grp., Inc. v. United States, 35 CIT 743, 748, 783 F. Supp. 2d 1248, 1253 (2011) ("Customs failed to make either an admissibility or a seizure determination within the 60-day period established by section 499(c)(5) and addressed in the House Report"); Blink Design, 986 F. Supp. 2d at 1359 (quoting CBB Grp., Inc.'s discussion of the same legislative history). But see CDCOM, 21 CIT at 438–39, 963 F. Supp. at 1217 ("[CBP] made an admissibility determination within the thirty-day statutory period required under 19 U.S.C. § 1499(c)(5)(A), declaring both shipments of the subject merchandise 'seized.'").

Thus, the court agrees with Plaintiff that a seizure is not, by itself, an admissibility determination. Rather, an "admissibility decision" means a decision to admit or exclude

merchandise by CBP.  This conclusion is especially apparent in light of the fact that agencies other than CBP may seize goods that have been presented for examination.

That said, previous decisions of the court make clear that a seizure of merchandise, if effected within thirty days of that merchandise being presented for examination, prevents the occurrence of a deemed exclusion.  For example, in <u>Tempco Marketing v. United States</u>, the court held that, with respect to the second of three entries at issue, "[s]ince the seizure occurred within thirty days of the presentation for examination, the merchandise was never deemed excluded pursuant to 19 U.S.C. § 1499(c)(5)(A)."  21 CIT 191, 194, 957 F. Supp. 1276, 1279 (1997).  In <u>CDCOM</u>, the court held that "[u]nder 19 U.S.C. § 1499(c)(5)(A), since both seizures occurred within thirty days of the presentation for examination, the merchandise was never deemed excluded."  21 CIT at 439 n.7, 963 F. Supp. at 1217 n.7.  In <u>H & H Wholesale</u>, the court held that "the merchandise in this case was seized within thirty days after it was presented to Customs for inspection.  Therefore, no 'deemed exclusion' took place."  30 CIT at 693, 437 F. Supp. 2d at 1341 (citations omitted).  Similarly, in <u>Blink Design</u>, the court found that CBP "seized each entry more than thirty days after presentation and that, therefore, each entry was deemed excluded prior to seizure."  986 F. Supp. 2d at 1357.

In sum, the conclusion that a seizure of goods is not an admissibility determination made pursuant to 19 U.S.C. § 1499 is rendered inapposite because whether or not seizure is an "admissibility determination," it is clear that seizure, if effected within thirty days of the subject merchandise being presented for examination, precludes deemed exclusion.  Plaintiff may be correct that "a seizure can be undertaken completely independent of, and without regard to, any determination of admissibility," in the narrow sense that CBP or another agency may later seize merchandise previously determined to be admissible, but it does not therefore follow that CBP can

determine previously seized merchandise to be admissible. Rather, seizure of goods prior to an admissibility determination precludes further decision by CBP on the admissibility of the merchandise because the goods then become subject to forfeiture proceedings, in which case the admissibility of the goods becomes irrelevant. Per Plaintiff's logic, a seizure executed by another agency would result in a deemed exclusion by CBP in all cases, unless CBP affirmatively issued a declaration that the underlying merchandise is admissible (which is a strange result if the merchandise is seized by another agency), or is excluded, in which case CBP would be making an affirmative exclusion, thereby creating grounds for protest and the importer's bringing a case to the CIT in every such case. This result is impractical and counter to the Mod Act legislative history described previously.[2]

---

[2] However, where a seizure post-dates a deemed exclusion, the court's case law is unclear as to whether the later seizure in some way negates, or cancels out, the exclusion. In R.J.F. Fabrics, Inc., v. United States, 10 CIT 735, 739, 651 F. Supp. 1431, 1434 (1986), the court considered "the issue of whether this [c]ourt's jurisdiction over an exclusion ceases upon the seizure of merchandise by [CBP]." Finding that "it is clear that plaintiff protested the exclusion of its merchandise," the court said it was "unwilling, therefore, to adopt a rule that would divest the [CIT] of jurisdiction simply because plaintiff filed its protest after [CBP] chose . . . to formally seize the subject goods." Id. at 1433. In International Maven, the court characterized the holding in R.J.F. Fabrics as "enunciat[ing] this [c]ourt's interpretation that its jurisdiction over protested exclusions did not necessarily cease once the goods were subsequently seized." 12 CIT at 58; 678 F. Supp. at 302 (citing R.J.F. Fabrics, 651 F. Supp. at 1433). In H & H Wholesale, the court noted that "the court sees no reason to assume that the Mod Act amendments to § 1499 were intended to deprive [CBP] of the authority to issue an express exclusion of merchandise, which might be effective if a later seizure were found defective." 30 CIT at 693 n.5, 437 F. Supp. 2d at 1341 n.5. Although the court there did not say so, a deemed exclusion that took place prior to seizure might also be effective should the seizure later prove defective. In Blink Design, the court held that "it is not clear that the seizures negate the deemed exclusion." 986 F. Supp. 2d at 1361. The court in that case went on to hold that it retained jurisdiction over deemed exclusions of merchandise later seized by CBP. Id. However, a contrary result is found in PRP Trading Corp. v. United States, where the court held that, despite the Government conceding that two of the five entries at issue in that case were deemed excluded prior to seizure, "the fact of seizure trumps the fact of deemed exclusion" where the merchandise is seized prior to the commencement of the action. 36 CIT 1354, 1357, 885 F. Supp. 2d 1312, 1314 (2012). Therefore, the court held it did not have subject matter jurisdiction under 28 U.S.C. § 1581(a). Id. at 1315. The court notes, but need not here resolve, this further wrinkle in the seizure-exclusion jurisdictional divide.

Thus, the court concludes that where a seizure occurs prior to a deemed exclusion by operation of law, a deemed exclusion will not occur.

> **II.    Plaintiff's Merchandise was Seized by CBP on February 10, 2021, and Never Deemed Excluded, Regardless of Notice of the Seizure.**

The court next turns to whether, regardless of its conclusion that a deemed exclusion does not occur when goods are seized, notice of seizure must be provided to the importer to complete the seizure of goods. Plaintiff argues that a seizure is effective, at the earliest, upon the date notice of seizure is sent to the importer. Pl.'s Br. at 9–10. Plaintiff further contends that where notice of seizure is sent more than thirty days after the merchandise at issue is presented to CBP for examination, the seizure does not prevent the occurrence of a deemed exclusion. Id. Under Plaintiff's view, because CBP first sent notice of seizure on March 8, 2021 -- more than thirty days after the Merchandise had been presented for examination (on January 11, 2021) -- the seizure did not become legally effective until after the deemed exclusion occurred, and thus the seizure cannot preclude the court's jurisdiction over the deemed exclusion and subsequently denied protest. Id. The Government contends that the court ought to give legal effect to the date of actual seizure, here February 10, 2021, and hold that because actual seizure occurred within thirty days of the Merchandise being presented for examination, no deemed exclusion occurred, and therefore the court must dismiss this action for want of subject matter jurisdiction. Def.'s Reply at 6–7. For the reasons discussed below, the court agrees with the Government and concludes that, due to the seizure on February 10, 2021, Plaintiff's Merchandise was never deemed excluded and this court does not have jurisdiction over its subsequent protest.

The applicable regulation, 19 C.F.R. § 162.31, requires that "written notice of . . . any liability to forfeiture shall be given to each party that the facts of record indicate has an interest in the . . . seized property." The Government argues that the court has held the date of actual seizure,

as stated in the notice of seizure, to be controlling in an "overwhelming number of cases." Def.'s Reply at 7. To the contrary, the case law is mixed on this question.

One line of cases indicates that the court has previously credited the date of actual seizure as the date seizure is given legal effect. In Tempco Marketing, with respect to the second entry at issue in that case, the date of actual seizure fell within thirty days of the merchandise being presented for examination, and the notice of seizure was issued after the elapse of those thirty days. 21 CIT at 194, 957 F. Supp. at 1279. The court gave effect to the date of actual seizure when it held that "since the seizure occurred within thirty days of the presentation for examination, the merchandise was never deemed excluded." Id. Similarly, in PRP Trading Corp., CBP seized five entries of merchandise on February 7, 2012, imported at various dates in December 2011 and January 2012, and issued a notice of seizure on March 23, 2012, over six weeks later. 36 CIT at 1355, 885 F. Supp. 2d at 1313. The court found that two of the five entries had been deemed excluded "because [CBP] did not act upon them within the requisite thirty days from the date the merchandise was presented for examination," but three were not deemed excluded because they "were seized within thirty days." Id. at 1313–14. The time gap between the actual seizure and notice of seizure in PRP Trading, indicates that the court there used the date of actual seizure to make this determination. In CDCOM, the court similarly found that seizure of the merchandise at issue within thirty days of presentation for examination prevented the occurrence of a deemed exclusion. 21 CIT at 438, 963 F. Supp. at 1217. Thus, the court again gave legal effect to the date of seizure. See id.

However, in at least two prior cases, the court seems to credit the date notice of seizure was issued or received. First, in CBB Grp., Inc., the court held that "an internal agency decision to proceed with seizure, which did not ripen into a notice to the importer" cannot affect the court's

jurisdiction.  35 CIT at 751 n.3, 783 F. Supp. 2d at 1255 n.3.  A few years later, in Blink Design, the court explicitly rejected the notion that the date of actual seizure necessarily controls, refuting the notion that "the date of seizure asserted by [CBP] in its seizure notices marks the time at which the court considers the entries seized."  986 F. Supp. 2d at 1356.  The court found that "case law appears unsettled on whether the court should consider the date that [CBP] issued a Notice of Seizure or the date a party received the Notice of Seizure to determine whether an entry was deemed excluded prior to seizure."  Id. at 1356–57.  The court went on to say that it "need not resolve . . . whether the court should consider the date that Customs issued a Notice of Seizure or the date a party received the Notice of Seizure to determine whether an entry was deemed excluded prior to seizure," because there all notices were issued more than thirty days after the date the merchandise was presented for examination.  Id. at 1357.  The court therefore held that all eight entries of merchandise at issue had been deemed excluded prior to seizure and that the court retained jurisdiction over the case.  Id.

It is idiomatic that every case turns on its own facts.  Faced with the at least seeming divergence in judicial approaches to the legal effectiveness of seizure in relation to notice, the court here concludes that, for the purposes of determining whether the court's jurisdiction has attached to a deemed exclusion, the date of actual seizure controls.  As noted above, 19 U.S.C. § 1499(c)(4) states that "[i]f otherwise provided by law, detained merchandise may be seized and forfeited."  The court concludes that the best reading of the statute regarding the interaction between section 1499(c)(4) and section 1499(c)(5) is that, when section 1499(c)(4) is invoked via a seizure of the subject merchandise within thirty days of that merchandise's presentation for examination, the mechanism of deemed exclusion embodied in section 1499(c)(5) is inapplicable.

As has been noted, the purpose of section 1499(c)(5) is to afford the importer a remedy where CBP takes no action with respect to detained merchandise. Seizure, while not an admissibility determination, is an action by CBP and is an action over which this court has no jurisdiction. Given the court's conclusion that seizure under section 1499(c)(4) precludes the operation of a deemed exclusion under section 1499(c)(5), it makes little practical sense to hold that seizure precludes the occurrence of a deemed exclusion only where the notice of seizure is also issued within thirty days of the subject merchandise's presentation for examination. The case law discussed above shows that the notice of seizure is typically sent two or more weeks after the date of actual seizure. Holding that notice is the final piece to completion of a seizure would result in the occurrence of a deemed exclusion in most instances of seizure, even when the seizure and notice have occurred before the sixty days Congress indicated CBP has to take such an action. See H.R. Rep. No. 103–361, pt. 1, at 111–12. An importer might then bring an exclusion case before the court, with the burden of proof laid on the Government as to why it failed to make an admissibility determination.[3] However, CBP would have been precluded from making such a determination by its own previous action, seizure.

Plaintiff contends that it is "unaware of any instance in federal law where a court has recognized the legal effect of an uncommunicated seizure of goods," and that "[n]otice is an

---

[3] This outcome is consistent with that of Blink Design, in which the court stayed the case regarding deemed exclusions of goods for further resolution of the seizure case. 986 F. Supp. 2d at 1361. In both Blink Design and CBB Grp., seizure occurred more than thirty days after presentation to CBP, no notice was issued within those thirty days, and in CBB Grp. no notice was issued even within sixty days. See Blink Design, 986 F. Supp. 2d at 1357 (showing that the dates of seizure were "uniformly more than thirty days after the date the merchandise was presented for examination"); CBB Grp., 35 CIT at 748, 783 F. Supp. 2d at 1253 (explaining that CBP did not seize the goods at issue within sixty days of presentation for examination). Thus, those cases are factually distinct from the situation at bar but support a distinction between instances in which CBP acts before a deemed exclusion can occur and those in which it does not.

essential requirement for giving legal effect to a seizure." Pl.'s Post-Oral Arg. Br. at 4–5. Indeed, in accordance with the requirements of due process, issuance of a notice of seizure is required in case of seizure. See 19 U.S.C. § 1607(a) ("Written notice of seizure together with information on the applicable procedures shall be sent to each party who appears to have an interest in the seized article."). However, the court is not here deciding the validity of CBP's seizure of Plaintiff's Merchandise or whether the United States will ultimately take title of the Merchandise.[4] Rather, it is seeking to determine the nature of CBP's action and when that action took effect for the purpose of determining whether a deemed exclusion also occurred. Because CBP seized the Merchandise within thirty days of presentation, CBP timely acted and the court has no jurisdiction over a protest based on CBP's inaction.

In short, due to CBP's seizure, no deemed exclusion occurred that Plaintiff could properly protest. Thus, the court concludes that it does not have jurisdiction over this dispute.[5]

## CONCLUSION

For the reasons stated above, the court concludes that it lacks jurisdiction over this case because no deemed exclusion occurred. As noted by the court in CBB Grp., Inc., "Section 9 of the Judiciary Act of 1789 provided, inter alia, '[t]hat the district courts shall . . . have exclusive original cognizance of all seizures on land . . . and of all suits for penalties and forfeitures incurred,

---

[4] Because the seizure is not before the court, neither is the adequacy of the notice of that seizure. Plaintiff makes a non-frivolous argument about the lack of notice, see Pl.'s Br. at 15; Pl.'s Suppl. Br. at 3 (citing CBP's regulation that a receipt be provided for goods seized), but the merits of that contention should be decided by the appropriate district court. If in fact there was such a deficiency, CBP would then be faced again with making an admissibility determination and Plaintiff could return to this court with further complaints regarding that future admissibility decision.

[5] Root Sciences is not without a potential remedy. As the Government states, Root Sciences can seek to obtain relief from the seizure by electing to commence an action in the district court pursuant to 28 U.S.C. § 1356. Def.'s Br. at 14.

under the laws of the United States.'  Whether 28 U.S.C. § 1356 has any current utility as a jurisdictional provision is unclear." 35 CIT at 751 n.4, 783 F. Supp. 2d at 1255 n.4 (citations omitted).  While there may be reason to re-assess the statute and to lodge within the Court of International Trade jurisdiction over CBP's seizure decisions, the court's charge is to apply the statute as written.  Re-assessment is not a matter for this court, but for Congress.  Accordingly, the court grants the Government's motion and dismisses the case.

**SO ORDERED.**

                              /s/  Gary S. Katzmann
                              Gary S. Katzmann, Judge

Dated:  October 7, 2021
        New York, New York