**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. GARY S. KATZMANN, JUDGE**

-------------------------------------------------------------------- X
**ROOT SCIENCES, LLC**      :
      :
      **Plaintiff,**      :
      :
      *v.*      :      **No. 21-00123**
      :
**THE UNITED STATES**      :
      :
      **Defendant.**      :
-------------------------------------------------------------------- X

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR REHEARING

NEVILLE PETERSON LLP

Richard F. O'Neill
999 Third Ave., Ste. 2525
Seattle, WA 98104
(206) 518-9335
roneill@npwny.com

John M. Peterson
Patrick B. Klein
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Dated:  November 8, 2021

# TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................ ii

BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR REHEARING ....................................1

BACKGROUND ........................................................................................................2

STANDARD OF REVIEW ...........................................................................................6

I.     Only a CBP Admissibility Decision Can Prevent a Deemed Exclusion By Operation
       of Law from Occurring Pursuant to 19 U.S.C. § 1499(c)(5)(A)...........................................7

II.    Neither CBP Nor this Court Have the Power to Waive or Toll the 30-Day Deemed
       Exclusion Period Set out in 19 U.S.C. §1499(c)(5)(A). ....................................................9

CONCLUSION..........................................................................................................14

## TABLE OF AUTHORITIES

**Cases**

*Adams Fruit Co. v. Barrett,* 494 U.S. 638 (1990) .......................................................... 14

*Allegheny Defense Project v. FERC*, 964 F.3d 1 (D.C. Cir. 2020) ...................................... passim

*Blink Design Inc v United* States, 986 F. Supp.2d 1348 (Ct. Int'l Tr. 2014) ......................... 3, 5, 9

*Bostock v. Clayton County*, 140 S. Ct. 1731 (2020) .......................................................... 14

*CBB Group Inc. v. United States*, 35 C.I.T. 743 (2011) ...................................................... 3

*CDCOM (USA) Int'l Inc. v. United States*, 21 C.I.T. 435 (1997) .......................................... 3

*Ford Motor Co. v. United States*, 34 C.I.T. 1342 (2010) ................................................... 6, 7

*H&H Wholesale Svcs. Inc. v. United States*, 30 C.I.T. 689 (2006) ...................................... 3

*Intel Corp. Investment Policy Comm. v. Sulyma*, 140 S. Ct. 768 (2020) ............................... 13

*Murphy Exploration & Prod. Co. v. United States*, 252. F.3d 473 (D.C. Cir. 2001) ................. 14

*National Ass'n of Mfrs. v. DOD*, 138 S. Ct. 617 (2018) .................................................... 14

*NSK Corp. v. United States*, 593 F. Supp. 2d 1355 (Ct. Int'l Trade 2008) ............................. 6

*Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029 (2019) .......................................... 13

*Peerless Clothing Int'l, Inc. v. United States*, 637 F. Supp. 2d 1253 (Ct. Int'l Tr. 2009) ............. 7

*Root Sciences LLC v. United States*, Slip Op. 21-136 (Ct. Int'l Tr. October 7, 2021) ......... passim

*Target Stores v. United States*, 31 C.I.T. 154 (2007) ........................................................ 6

*Tempco Mktg v. United States,* 21 C.I.T. 191 (1997) ........................................................ 3

*Tianjin Magnesium Int'l Co. v. United States*, 36 C.I.T. 1698 (2012) .................................... 6

**Statutes**

19 U.S.C. § 1499 ............................................................................................... passim

19 U.S.C. § 1514 ............................................................................................... 6, 8, 13

21 U.S.C. § 863 .................................................................................................. 2, 8, 13, 14

28 U.S.C. § 1581 ............................................................................................... passim

28 U.S.C. § 1583 ............................................................................................... 6

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. GARY S. KATZMANN, JUDGE**

```
-------------------------------------------------------------------- X
ROOT SCIENCES, LLC                              :
                                                :
        Plaintiff,                              :
                                                :
        v.                                      :        No. 21-00123
                                                :
THE UNITED STATES                               :
                                                :
        Defendant.                              :
-------------------------------------------------------------------- X
```

<u>**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR REHEARING**</u>

In accordance with Rules 7 and 59 of the Rules of the United States Court of International Trade ("USCIT R."), Plaintiff Root Sciences, LLC, respectfully requests that this Court reconsider and set aside its judgment of dismissal in this action entered on October 7, 2021. *See Root Sciences LLC v. United States*, Slip Op. 21-136 (Ct. Int'l Tr. October 7, 2021) (ECF 19) (hereinafter "Slip Op. 21-136"). As the Court held that United States Customs and Border Protection ("CBP")'s seizure of Plaintiff's goods did not constitute a determination as to the admissibility of the merchandise, there was no event which prevented a "deemed exclusion" of Plaintiff's merchandise from occurring as specified in 19 U.S.C. § 1499(c)(5)(A). *See Allegheny Defense Project v. FERC*, 964 F.3d 1 (D.C. Cir. 2020). This Court erred, as a matter of law, in holding otherwise. Plaintiff timely filed a protest against a deemed exclusion of its merchandise, and this Court has exclusive jurisdiction over this action, which challenges denial of Plaintiff's protest. 28 U.S.C. § 1581(a).

To the extent the Court believes that the seizure of Plaintiff's merchandise should first be considered by a United States District it should (and indeed, must) retain jurisdiction over this

action lest this Court need to make the ultimate determination on admissibility of Plaintiff's goods.

## **BACKGROUND**

Plaintiff commenced this action pursuant to 28 U.S.C. § 1581(a) to contest the deemed denial of its timely-filed protest against CBP's exclusion of certain merchandise from entry as "drug paraphernalia" pursuant to 21 U.S.C. § 863. Plaintiff contends that, because the distillation equipment is imported into a state where the production, distribution and sale of cannabis has been legalized, the exemption to refusal of entry set out in 21 U.S.C. § 863(f)(1) applies.

The subject merchandise—a feeder vessel for a Cryo-Ethanol Extraction System—was entered under cover of Los Angeles Consumption Entry F23-9253382-4 of December 18, 2020, and presented to CBP for examination. The goods were thereafter detained and, on February 12, 2021, were deemed excluded by operation of 19 U.S.C. § 1499(c)(5)(A). Plaintiff protested the deemed exclusion of its merchandise on February 18, 2021, and its protest was deemed denied on March 20, 2021, whereupon Plaintiff brought the instant case to contest the deemed exclusion of its goods.

After this action was commenced, Defendant United States, after confirming the goods' exclusion by email, claimed for the first time, that it had effected a seizure of Plaintiff's goods on February 10, 2021, two days before the "deemed exclusion" of Plaintiff's merchandise occurred pursuant to 19 U.S.C. § 1499(c)(5)(A). The Government moved this Court to dismiss the action for lack of subject matter jurisdiction, asserting that only a District Court could exercise jurisdiction over the seizure. Plaintiff asserted that, if the seizure was **not** considered a decision regarding admissibility of the merchandise, a protestable deemed exclusion occurred, by operation of law under 19 U.S.C. § 1499(c)(5)(A), on February 12, 2021. If the seizure **was**

2

considered an admissibility determination, to wit, an exclusion, then Plaintiff's protest was nonetheless timely filed within 180 days of exclusion and deemed denied. In either event, the possibility of a parallel forfeiture action in Federal District Court did not oust this Court of subject matter jurisdiction to entertain this action.

In its decision and order dismissing this case for lack of subject matter jurisdiction, *see* Slip Op. 21-136, this Court agreed with Plaintiff that the CBP seizure of its merchandise was not an admissibility determination, Slip Op. 21-136, at 9, but concluded that "CBP's seizure of the Merchandise did prevent the deemed exclusion from occurring." *Id.* The Court reasoned that because a seizure was not a protestable decision, the fact of seizure must somehow prevent a "deemed exclusion" from occurring. *Id.* at 10. In so ruling, the Court referred to several prior decisions holding that a seizure which occurs within 30 days prevents the running of the clock on a "deemed exclusion," but none of which ever explained why or how that was. *See e.g.*, *Tempco Mktg v. United States,* 21 C.I.T. 191, 194 (1997); *CDCOM (USA) Int'l Inc. v. United States*, 21 C.I.T. 435, 439 n.7 (1997); *H&H Wholesale Svcs. Inc. v. United States*, 30 C.I.T. 689, 693-94 (2006).

At the same time, this Court has recognized that a seizure effected *after* passage of the 30-day "deemed exclusion" period does not divest this Court of jurisdiction over a deemed exclusion protest. *See e.g.*, *Blink Design Inc v United* States, 986 F. Supp.2d 1348, 1360 (Ct. Int'l Tr. 2014); *CBB Group Inc. v. United States*, 35 C.I.T. 743, 746 (2011). Thus, it is possible that exclusion protest proceedings in this Court, and seizure/forfeiture proceedings in a District Court, may both proceed with respect to the same merchandise.[1]

---

[1] That different actions may proceed in different courts as to the same merchandise undercuts this Court's reliance on the legislative history to the Customs Informed Compliance

This Court's explicit (and, Plaintiff submits, correct) determination that a seizure does not constitute an admissibility determination calls into question the validity of the prior decisions on which this Court relied for the notion that seizure prior to expiration of the 30-day "deemed exclusion" period stops the running of the statutory deemed exclusion period. It thus calls into question as well, the Court's dismissal of this action. Section 499(c)(5)(A) of the Tariff Act specifies only one circumstance which can prevent a deemed exclusion: CBP's rendering of an admissibility determination before the expiration of the 30-day period. It follows that, a seizure, not being an admissibility determination, would not stop the statutory clock.

Therefore, there *was* a protestable "deemed exclusion" of Plaintiff's merchandise, which was timely protested, and upon deemed denial of that protest, summoned to this Court. While this Court has indicated that the appropriate District Court should first address the seizure of the goods—a case that may never be brought—it has recognized that a District Court forfeiture proceeding might founder on issues of due process, and may not resolve the question of the admissibility of Plaintiff's goods. Indeed, this Court observed:

> Because the seizure is not before the court, neither is the adequacy of the notice of that seizure. Plaintiff makes a non-frivolous argument about the lack of notice, see Pl.'s Br. at 15; Pl.'s Suppl. Br. at 3 (citing CBP's regulation that a receipt be provided for goods seized), but the merits of that contention should be decided by the appropriate district court. If in fact there was such a deficiency, CBP would then be faced again with making an admissibility determination and Plaintiff

and Modernization Act for the proposition that exclusions and seizures are "mutually exclusive." Slip Op. 21-136 at 10, where this Court stated:

> Second, the legislative history of the Mod Act, which created the deemed exclusion process, shows that the purpose of 19 U.S.C. § 1499(c) is to afford relief to importers for CBP's inaction. Congress explained that the statute would give CBP "a minimum of 60 days in which to determine whether merchandise initially detained shall be excluded from entry or seized and forfeited if otherwise authorized under other provisions of law." H.R. Rep. No. 103–361, pt. 1, at 111–12 (1993). The use of the word "or" here suggests that Congress intended that exclusions and seizures be mutually exclusive actions.

<u>could return to this court with further complaints regarding that future admissibility decision.</u>

Slip Op. 21-136 at 18, n.4. The Court does not, however, explain how, with this action having been dismissed with prejudice, for lack of jurisdiction, Plaintiff would return here.[2] There may well be no "future admissibility decision"; 19 U.S.C. § 1499 is the only statute authorizing CBP to make admissibility determinations.

Absent an explanation of why seizure of Plaintiff's goods—which this Court has held not to be a CBP "admissibility determination" under § 1499(c)(5)(A)—terminates the operation of that statute without a "deemed exclusion" occurring, this Court must retain jurisdiction over this action to the extent that Plaintiff filed a timely protest against a statutory "deemed exclusion" determination.

An analysis of the factors set out by the court in *Blink Design Inc.*, 986 F. Supp. 2d at 1355, will reveal that Plaintiff's protest is, in substance, one against the exclusion of its merchandise from entry, rather than against a seizure. Plaintiff filed a timely protest against a statutory exclusion of its merchandise. This Court—and only this Court—has subject matter jurisdiction over the denial of Plaintiff's exclusion protest. While the Court may, in the exercise of comity, decide to stay consideration of the merits of the protest while the District Court considers the seizure and forfeiture application of the Government[3], it must retain jurisdiction

---

[2] Nor is it clear that CBP would be required to make a "future admissibility decision." If, for example, a District Court dismissed a government forfeiture action on due process grounds, it would *not* need to reach the issue of admissibility. CBP might simply decide to rest on the present exclusion of Plaintiff's goods, and argue that Plaintiff's challenge to that exclusion has been dismissed by this Court. While the Government may not be allowed to forfeit the goods, it might still elect not to admit them. The Tariff Act does not provide any mechanism or authority for CBP to make an admissibility determination other than the time-delimited process set out in 19 U.S.C. § 1499.

because, as the Court noted in Slip Op. 21-136, Plaintiff may have need of relief from this Court in the future.[4]

The judgment of dismissal should be vacated, and this case restored to the Court's docket.

## STANDARD OF REVIEW

The court has broad discretion in deciding a Rule 59 motion for reconsideration. *Tianjin Magnesium Int'l Co. v. United States*, 36 C.I.T. 1698, 1699 (2012); *Ford Motor Co. v. United States*, 34 C.I.T. 1342, 1343 (2010). The circumstances in which a motion for reconsideration will be granted are limited, including for "an error or irregularity," "a serious evidentiary flaw," "the discovery of new evidence which even a diligent party could not have discovered in time," or "an accident, unpredictable surprise or unavoidable mistake which impaired a party's ability to adequately present its case." *Tianjin Magnesium Int'l, supra; Target Stores v. United States*, 31 C.I.T. 154, 156 (2007). Similarly, "an intervening change in the controlling law, the availability of new evidence, the need to correct a clear factual or legal error, or the need to prevent manifest injustice," will support a Rule 59 reconsideration. *Ford Motor*, 34 C.I.T. at 1343; *NSK Corp. v. United States*, 593 F. Supp. 2d 1355, 1361 (Ct. Int'l Trade 2008). "A motion for reconsideration is thus a mechanism to correct a significant flaw in the original judgment, but is not a mechanism to 'allow a losing party the chance to repeat arguments or to relitigate issues

---

[3] Plaintiff concedes that if the District Court forfeits the imported merchandise to the Government, Plaintiff's ownership interest will be terminated and this protest action would be rendered moot.

[4] Section 514(a)(1) of the Tariff Act, 19 U.S.C. § 1514(a)(1), allows an importer to protest the exclusion of its goods from entry by CBP. In the Customs Courts Act, 28 U.S.C. § 1583(a), Congress has given this Court *exclusive nationwide* jurisdiction over actions to contest such CBP exclusions. However, if CBP can block an importer's access to this Court's review by the expedient seizing of goods within 30-days after their presentation to the agency, it could potentially deprive this Court of access to an important area of its subject matter jurisdiction.

previously before the court.'" *Ford Motor*, 34 C.I.T. at 1343 (quoting *Peerless Clothing Int'l, Inc. v. United States*, 637 F. Supp. 2d 1253, 1256 (Ct. Int'l Tr. 2009)).

In the instant case, the Court should grant rehearing to correct a clear legal error and to clarify the operation of Section 499(c)(5)(A) of the Tariff Act; when the statutory detention period set out in the statute expires, without an affirmative exclusion decision from CBP, *the law itself* provides a decision of denial of admission. If, as this Court held, CBP's decision to seize the goods was not an admissibility determination, it follows that a protestable deemed exclusion occurs *as a matter of law*, at the time specified in the statute. The Court furnished no reasons in its decision as to why the running of the statutory period was terminated in the absence of an exclusion decision by CBP. And if CBP did make an exclusion decision prior to expiration of the 30-day statutory detention period, Plaintiff's protest was timely as to that decision and was properly brought before the Court.

## **ARGUMENT**

I.     **Only a CBP Admissibility Decision Can Prevent a Deemed Exclusion By Operation of Law from Occurring Pursuant to 19 U.S.C. § 1499(c)(5)(A)**

Section 499 of the Tariff Act of 1930, as amended by the Customs Informed Compliance and Modernization Act of 1993, creates a strict statutory timeline in which CBP must make determinations regarding the admissibility of merchandise. It provides that, after CBP has had five (5) days to examine the merchandise, the goods, if not released, are deemed "detained." At that point, CBP is required to provide notice of the detention to the importer. The statute further prescribes that the detention period may last no longer than thirty (30) days, and provides:

> (5) Effect of failure to make determination
>
> (A) The failure by the Customs Service to make a final determination with respect to the admissibility of detained merchandise within 30 days after the merchandise has been presented for customs examination, or such longer

7

period if specifically authorized by law, shall be treated as a decision of the Customs Service to exclude the merchandise for purposes of section 1514(a)(4) of this title.

(B) For purposes of section 1581 of title 28, a protest against the decision to exclude the merchandise which has not been allowed or denied in whole or in part before the 30th day after the day on which the protest was filed shall be treated as having been denied on such 30th day.

19 U.S.C. § 1499(c)(5) (emphasis added). The statute is quite generous to CBP, in terms of allowing the agency to make admissibility decisions. If the agency fails to act within 30 days after the merchandise is presented for examination, a "deemed exclusion" occurs by operation of law. But this does not let the importer proceed directly to court to secure the release of its goods. Rather, it merely creates a protestable decision, which the importer may protest pursuant to 19 U.S.C. § 1514(a)(1).

The filing of a protest against the deemed exclusion, in effect, gives CBP an additional 30-days to make an admissibility decision. It can do this either by allowing the protest and admitting the goods to entry, or denying the protest, making a specific (if tardy) exclusion decision. If no decision is rendered on the protest, the law, 19 U.S.C. § 1499(c)(5)(B), deems the protest denied, perfecting the conditions for the importer to invoke this court's 28 U.S.C. § 1581(a) protest jurisdiction, as Plaintiff did here.

It is unquestioned that the only action taken within the 30-day statutory detention period was CBP's seizure of the goods for alleged violation of 21 U.S.C. § 863(a). In Slip Op. 21-136, this Court emphatically held that the seizure was **not** a decision regarding admissibility of the goods. Unquestionably, the seizure opened a second proceeding—one running in parallel to this exclusion action; and a proceeding which could (but not necessarily will) lead to the filing of a forfeiture action in Federal District Court. In prior cases, this Court has recognized the possibility of actions regarding the disposition of a *res* in two different, coequal Federal courts. *See e.g.,*

*Blink Design, supra.* While nothing requires this Court to stay its hand in the interest of comity, the Court, in deciding whether to proceed with the exclusion action or stay it pending District Court review, has analyzed the factors set out in *Blink Design*, *supra.*

Here, however, the Court has created a paradox: it has ruled, on the one hand, that CBP's seizure of the goods at bar is not an admissibility determination for purposes of 19 U.S.C. § 1499(c)(5); while at the same time, it has ruled that, in some unspecified manner, the seizure prevents a deemed exclusion from occurring. While § 1499 notes that CBP may affect a seizure during the detention period, thereby opening up a potential "second front" in a fight to secure admission of its goods, it does not state that seizure stops or tolls the running of the 30-day exclusion period. As the seizure is not a determination of admissibility, it does not stop the running of the 30-day period pursuant to 19 U.S.C. § 1499(c)(5)(A), leaving the Plaintiff to wonder "what does?" By suggesting that CBP may render some "future admissibility determination" that might trigger the need for judicial intervention by this Court, the Court's decision implies that seizure somehow "tolls" the running of the 30-day period. Slip Op. 21-136 at p. 18, n.4

This Court's decision is in error to the extent that it creates a non-statutory basis for the termination of the 30-day "deemed exclusion" period in 19 U.S.C. § 1499(c)(5)(A).

## II.   Neither CBP Nor this Court Have the Power to Waive or Toll the 30-Day Deemed Exclusion Period Set out in 19 U.S.C. §1499(c)(5)(A).

Where Congress has established a statutory deadline for the issuance of a "deemed denial" of an agency action, neither the agency, nor a reviewing court, has the power to disregard or toll the specified deadline.

This point was recently driven home by the *en banc* decision of the District of Columbia Circuit in *Allegheny Defense Project v. FERC*, 964 F.3d 1 (D.C. Cir. 2020). That case involved

Section 717r of the Natural Gas Act, which provides that applications for rehearing of FERC decisions are "deemed denied" unless acted on within 30-days of submission. Several homeowners had filed requests for rehearing of FERC decisions granting a natural gas company permission to build a pipeline over their properties in Southeastern Pennsylvania. The agency "tolled" the 30-day "deemed denial" period for the express purpose of nullifying the 30-day deadline and giving it more time to rule on the petitions. (The agency often took 9 months or a year to so rule.) When petitioners sought to challenge the deemed denials of their rehearing petitions in court, the agency moved to dismiss, claiming there was no judicially reviewable final agency decision. The *Allegheny Defense Project* Court began by noting the "real world" consequences of FERC's standard practice of "tolling" the 30-day deemed denial period under Section 717r, stating:

> The use of these tolling orders has real-world consequences. In practice, they can prevent aggrieved parties from obtaining timely judicial review of the Commission's decision. As mentioned, Section 717r provides that a rehearing application may be deemed denied if the Commission does not act upon it within thirty days. 15 U.S.C. § 717r(a). But through the use of tolling orders, the Commission has eliminated entirely the jurisdictional consequences of its inaction, preventing rehearing applications from being deemed denied even after they have been pending for prolonged periods of time. In this case, the Commission used tolling orders to give itself roughly ten times as long as the statute allots for it to act.

> On top of that, the Commission and private certificate holders use its tolling orders to split the atom of finality. They are not final enough for aggrieved parties to seek relief in court, but they are final enough for private pipeline companies to go to court and take private property by eminent domain. And they are final enough for the Commission to greenlight construction and even operation of the pipelines. Tolling orders, in other words, render Commission decisions akin to Schrödinger's cat: both final and not final at the same time.

*Allegheny Def. Project v. FERC,* 964 F.3d 1 at 10,

The court then noted the actions that FERC was authorized by statute to take in response to an application for rehearing, *viz*., the actions which would prevent a "deemed denial":

> So, to break it down, the Commission can (i) "grant * * * rehearing," (ii) "deny rehearing," (iii) "abrogate * * * its order without further hearing," or (iv) "modify its order without further hearing[.]" Id.
>
> The statute is equally precise about what is to happen if the Commission fails to "act[] upon the application" within thirty days: The application "may be deemed to have been denied." 15 U.S.C. § 717r(a). By referring again in the deemed-denied provision to what the Commission has—or has not—done "upon the application[,]" Congress signaled that the kinds of actions that prevent a deemed denial are the four dispositions just listed. **So once thirty days pass without an enumerated action by the Commission, the applicant may deem its rehearing application denied and seek judicial review of the now-final agency action.** Id. § 717r(b); see *Texas-Ohio Gas Co. v. Federal Power Comm'n*, 207 F.2d 615, 616-617, 93 U.S. App. D.C. 117 (D.C. Cir. 1953) ("The primary intent evidently was to permit an appeal to the courts by a disappointed litigant as soon as thirty days have passed, without waiting longer for the Commission to act on his application for rehearing.").

*Id.* at 13 (emphasis added).

Similarly, in this action, Section 1499(c)(5)(A) specifies a single action which can prevent a "deemed exclusion"—*i.e.,* an admissibility determination by CBP. And this Court has ruled that the seizure of the goods is not an admissibility determination. What, then, stops the running of the 30-day "deemed denied" period?

The Circuit Court in *Allegheny Defense Fund* concluded that neither an agency nor a court may pre-empt the operation of a "deemed denied" provision of a statute by taking an action not specified in the statute itself:

> At bottom, what the Tolling Order did was delete the thirty-day time limit and the deemed-denied provision from the statute. Section 717r(a) says in straightforward terms that the Commission's failure to act on a rehearing application within thirty days means that rehearing can be deemed denied and the applicant can obtain judicial review. 15 U.S.C. § 717r(a); *see Texas-Ohio Gas Co.*, 207 F.2d at 616-617. The Commission has rewritten the statute to say that its failure to act within thirty days means nothing; it can take as much time as it wants; and until it chooses to act, the applicant is trapped, unable to obtain judicial review.
>
> But the Commission has no authority to erase and replace the statutorily prescribed jurisdictional consequences of its inaction. **Agencies, no less than courts, cannot render statutory language a nullity and leave entire operative**

11

**clauses with "no job to do."** *Doe v. Chao*, 540 U.S. 614, 623, 124 S. Ct. 1204, 157 L. Ed. 2d 1122 (2004); *see also Clark v. Rameker*, 573 U.S. 122, 131, 134 S. Ct. 2242, 189 L. Ed. 2d 157 (2014) ("Petitioners' reading would write out of the statute the first element. It therefore flouts the rule that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous.") (internal quotation marks omitted).

964 F.3d at 15 (emphasis added).

This Court's decision in Slip Op. 21-136 does precisely what the *Allegheny Defense Project* decision says is forbidden: it prevents the 30-day "deemed exclusion" period set out in § 1499(c)(5)(A) from running; it apparently "tolls" the period for a CBP exclusion decision to some indefinite point in the future when, after uncertain but potential District Court consideration, there may be some "future Customs decision on admissibility." Slip Op. 21-136, p.18 at n.4. To the extent the seizure of merchandise is not an admissibility decision, this Court has blocked the route to quick judicial review of deemed exclusions in this Court, even though in this case no action has been taken which, as a matter of law, stops the running of the 30-day period. Indeed, Congress not only intended for this Court to be able to quickly adjudicated deemed exclusion cases, but provided, in 19 U.S.C. § 1499(c)(5)(C), that in deemed exclusion cases, CBP bears the initial burden of showing why an admissibility determination was not reached.[5]

But under this Court's decision in Slip Op. 21-136, Plaintiff's access to quick judicial review of a deemed exclusion is denied despite no admissibility determination having been made, the 30 day "deemed exclusion" period having elapsed, and Plaintiff's protest having been

---

[5] 19 U.S.C. § 1499(c)(5)(C) provides:

Notwithstanding section 2639 of title 28, once an action respecting a detention is commenced, unless the Customs Service establishes by a preponderance of the evidence that an admissibility decision has not been reached for good cause, the court shall grant the appropriate relief which may include, but is not limited to, an order to cancel the detention and release the merchandise.

timely filed and deemed denied, yet this Court improperly bars its doors to a litigant who has exhausted administrative remedies, suffered the exclusion of its merchandise, and satisfied all conditions for invoking this Court's *exclusive* 28 U.S.C. § 1581(a) jurisdiction over denied protests.

Litigants in the CIT are now cast into a jurisdictional wilderness in which they may never receive a determination of admissibility. For example, as this Court surmised in its opinion, a District Court might dismiss a forfeiture action on the basis of what this Court has noted are "non-frivolous" Due Process arguments, without reaching the merits of whether Plaintiff's merchandise is subject to exclusion under 21 U.S.C. § 863(f)(1). CBP may simply decide not to make an admissibility determination. This would force Plaintiff to initiate a new action to seek a "future admissibility determination."[6] With no new "exclusion" decision to protest, there would seem to be no way for Plaintiff to approach this Court again under 28 U.S.C. § 1581(a). Presumably, Plaintiff would have to fashion some new action invoking this Court's "residual" jurisdiction under 28 U.S.C. § 1581(i). Having made the exclusion of merchandise an expressly protestable decision under 19 U.S.C. § 1514(a)(1), Congress could not possibly have intended such a result.

It is well-established that courts must apply the laws as written by Congress. *See e.g., Intel Corp. Investment Policy Comm. v. Sulyma*, 140 S. Ct. 768, 776 (2020) ("We must enforce plain and unambiguous statutory language … according to its terms."); *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1040 (2019) ("[W]e must enforce the statute that Congress enacted."). There is no ambiguity in the text of 19 U.S.C. § 1499(c)(5). As the Supreme Court

_____

[6] Again, since CBP's authority to make admissibility determinations arises solely in the time-delimited 19 U.S.C. § 1499, it is unclear what statutory authority exists to allow CBP to make a "future" admissibility determination.

13

"has explained many times over many years," when "the meaning of the statute's terms is plain, our job is at an end." *Bostock v. Clayton County*, 140 S. Ct. 1731, 1749 (2020); *see also e.g., National Ass'n of Mfrs. v. DOD*, 138 S. Ct. 617, 631 (2018). Moreover, to the extent CBP has argued before this Court that no exclusion occurred, the Supreme Court has since recognized, agencies get no deference in interpreting jurisdictional statutes. *See Adams Fruit Co. v. Barrett*, 494 U.S. 638, 649-50 (1990); *Murphy Exploration & Prod. Co. v. United States*, 252. F.3d 473, 478-79 (D.C. Cir. 2001).

<u>**CONCLUSION**</u>

For the reasons set forth herein, Plaintiff respectfully moves the Court to reconsider its decision in Slip Op. 21-136, vacate its order of dismissal, and restore the action to this Court's calendar. Thereafter, the Court may elect to stay action in this case pending an uncertain but potential future forfeiture case regarding the merchandise to be commenced in Federal District Court in California.

We note that the issue posed by this action—the scope of the exception to importation of "drug paraphernalia" contained in 21 U.S.C. § 863(f)(1) is currently before this Court in the case of *Eteros Technologies, Inc. v. United States*, Court No. 21-287, and *Keirton USA, Inc. v. United States*, Court No. 21-452. Forthcoming decisions on one or both of those cases may inform this Court's determination on how thereafter to proceed in the instant case.

Congress intended that this Court have exclusive nation-wide jurisdiction over actions commenced to contest the denial of a protest, including denial of a protest against exclusion of merchandise from entry. To the extent Plaintiff received a decision, deemed or otherwise, excluding its merchandise from entry, and timely protested same, this Court should—indeed, must—exercise jurisdiction over Plaintiff's claim. No other court has the authority to do so. If

14

this Court feels that, in the interest of comity, it should delay action in this case while uncertain, possible district court proceedings are commenced, that is a matter for the Court's sound discretion, but there is no defect in Plaintiff's actions which perfected 28 U.S.C. § 1581(a) jurisdiction over the instant case.

For the foregoing reasons, Plaintiff respectfully asks that the Court grant the instant motion for rehearing and set aside the dismissal.

Respectfully submitted,

NEVILLE PETERSON LLP

/s/ Richard F. O'Neill
    Richard F. O'Neill
    999 Third Ave., Ste. 2525
    Seattle, WA 98104
    (206) 518-9335
    roneill@npwny.com

/s/ John M. Peterson
    John M. Peterson
    Patrick B. Klein
    One Exchange Plaza
    55 Broadway, Suite 2602
    New York, NY 10006
    (212) 635-2730
    jpeterson@npwny.com

Dated:  November 8, 2021

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. GARY S. KATZMANN, JUDGE**

```
-------------------------------------------------------------------- X
ROOT SCIENCES, LLC                            :
                                              :
          Plaintiff,                          :
                                              :
          v.                                  :        No. 21-00123
                                              :
THE UNITED STATES                             :
                                              :
          Defendant.                          :
-------------------------------------------------------------------- X
```

<u>CERTIFICATE OF COMPLIANCE</u>

I, Richard F. O'Neill, of Neville Peterson LLP, who is responsible for the instant Brief, relying upon the word count feature of the word processing program used to prepare the Brief, certify that it complies with the word count limitation under the Court's Standard Chambers Procedures and contains 4,833 words.

Respectfully submitted,

/s/ Richard F. O'Neill
Richard F. O'Neill