UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. GARY S. KATZMANN, JUDGE

```
------------------------------------------------------------------ X
ROOT SCIENCES, LLC                                :
                                                  :
       Plaintiff,                                 :
                                                  :
       v.                                         :   No. 21-00123
                                                  :
THE UNITED STATES                                 :
                                                  :
       Defendant.                                 :
------------------------------------------------------------------ X
```

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR REHEARING**

NEVILLE PETERSON LLP
*Counsel for Plaintiff*

Richard F. O'Neill
701 Fifth Ave., Ste. 4100-2159
Seattle, WA 98104
(206) 905-3648
roneill@npwny.com

John M. Peterson
Patrick B. Klein
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Dated: February 9, 2022

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................................... ii

REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR REHEARING ........................1

ARGUMENT ...................................................................................................................................1

I.      This Court's Decision Expands 19 U.S.C. § 1499(c) Beyond its Literal Terms. .................1

II.     The Court's Decision Encourages Forum-Shopping and Evasion of Judicial Review and Abdicates this Court's Statutory Role. ........................................................................4

        A.      Forum Shopping and Evasion of Judicial Review. ..................................................4

        B.      Notwithstanding a Seizure, this Court May Still Have Work to Do. ........................5

        C.      The Court's Interpretation of Legislative History is Misplaced ..............................8

III.    Rehearing Gives this Court an Opportunity to Bring Order to Chaos. ................................9

# TABLE OF AUTHORITIES

**Cases**
*Allegheny Defense Project v. FERC*, 964 F.3d 1 (D.C. Cir. 2020) .......................................... 2, 3
*Blink Design, Inc. v. United States,* 986 F. Supp. 2d 1348 (Ct. Int'l Tr. 2014) ..................... 2, 6, 7
*Bostock v. Clayton Cty.*, 140 S. Ct. 1731 (2020) ................................................................... 9
*CBB Group, Inc. v. United States,* 35 C.I.T. 743 (2011) ........................................................ 2
*Eteros Technologies Inc. v. United States*, CIT 21-00287 (pending) .................................... 5
*H&H Wholesale Serv.s v. United States,* 30 C.I.T. 689 (2006) .............................................. 2
*Keirton USA, Inc. v. United States Customs & Border Prot.*, 2021 Dist. Lexis 73578
   (W.D. Wa. April 16, 2021) ............................................................................................... 4
*Milner v. Dep't of the Navy*, 562 U.S. 562 (2011) .................................................................. 9
*PRP Trading Corp. v. United States*, 36 C.I.T. 1354 (2012) .................................................. 2
*Root Sciences LLC v. United States*, Slip Op. 21-136 (Ct. Int'l Tr. October 7, 2021) ............. 1
*Tempco Mktg. v. United States,* 21 C.I.T. 191 (1998) ............................................................ 2
*Train v. Colorado Public Interest Research Group*, 426 U.S. 1 (1976) .................................. 9

**Statutes**
19 U.S.C. § 1499 ................................................................................................................ passim
19 U.S.C. § 1514 ............................................................................................................ 2, 5, 6, 10
21 U.S.C. § 863 ................................................................................................................. 4, 5, 7
28 U.S.C. § 1581 ........................................................................................................... 3, 5, 10, 11
28 U.S.C. § 2639 ...................................................................................................................... 9
North American Free Trade Agreement Implementation Act, Pub L. 103-82, 107 Stat.
   2057 (1993) ........................................................................................................................ 6

**Regulations**
19 C.F.R. § 177.9 ....................................................................................................................... 4

**Other Authorities**
H. Rep. No. 103-361, pt. 1 (1993) ........................................................................................... 10

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. GARY S. KATZMANN, JUDGE

------------------------------------------------------------------ X
ROOT SCIENCES, LLC                                                 :
                                                                   :
      **Plaintiff,**                 :
                                                                   :
      *v.*                            :   No. 21-00123
                                                                   :
THE UNITED STATES                                                  :
                                                                   :
      **Defendant.**                  :
------------------------------------------------------------------ X

### REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR REHEARING

Pursuant to Rules 7 and 59 of the Rules of the United States Court of International Trade ("USCIT R."), and this Court's January 19, 2021 Order (ECF 52), Plaintiff Root Sciences, LLC, replies in support of its motion for rehearing and responds to the opposition brief of Defendant, the United States (ECF 51). For the reasons stated herein and in our original motion, Plaintiff respectfully requests that this Court reconsider and set aside its judgment of dismissal in this action *See Root Sciences LLC v. United States*, Slip Op. 21-136 (Ct. Int'l Tr. October 7, 2021) (ECF 19) (hereinafter "Slip Op. 21-136").

### ARGUMENT

**I.    This Court's Decision Expands 19 U.S.C. § 1499(c) Beyond its Literal Terms.**

Section 499(c) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1499(c), is, for lack of a better word, a "mechanistic" statute. Designed by Congress to ensure that importers facing product exclusions have a quick and certain path to judicial review in *this* Court, Section 499(c) grants CBP a 30-day detention period to examine imported merchandise and make an admissibility determination thereon. Section 499(c) is explicit regarding the consequences of CBP's failure to make an admissibility determination within the prescribed period—"the failure

by [CBP] to make a final determination … within 30 days [of presentment to CBP] <u>shall be treated as a decision of the Customs Service to exclude the merchandise</u> for purposes of section 1514(a)(4) of this title." (Emphasis added)). *Id*. Thus, <u>the only event that stops the running of the 30-day "countdown clock" in Section 499(c) is a CBP admissibility determination</u>. If none is made, the clock runs out and a protestable "deemed exclusion" results.

Here, the Court rejected the Government's claims that CBP's November 10, 2021 seizure of its merchandise was an "admissibility" determination.[1] The Court correctly "agree[d] with Plaintiff that a seizure does not constitute an admissibility decision[.]" Op. at 9.

Considering this holding, there was no event which prevented a protestable "deemed exclusion" from occurring. *Allegheny Defense Project v. FERC*, 964 F.3d 1 (D.C. Cir. 2020). This Court erred in holding otherwise. Without a CBP admissibility determination, the Court's holding that "CBP's seizure of the Merchandise did prevent the deemed exclusion from occurring," *id.*, simply cannot be squared with the language of Section 499(c).

Several prior decisions— none binding on this Court—held that if a seizure were made before expiry of the 30-day period in Section 499(c), no deemed exclusion occurred.[2] Implied in these decisions was that CBP's seizure of imported merchandise was an admissibility determination. In this case, the Court correctly held that seizure is *not* an admissibility determination. Yet the Court paradoxically held that no "deemed exclusion" occurred. This Court thereby expanded 19 U.S.C. § 1499(c)(5) beyond its literal terms, holding, that something

---

[1] *See* Govt Resp. Oral Arg. Questions (ECF 41), at 5 ("CBP's <u>final determination with respect to the admissibility of the subject detained merchandise</u> occurred on February 10th, within thirty days of presentation for examination on January 11th[.]" (emphasis added)).

[2] *See e.g., Blink Design, Inc. v. United States,* 986 F. Supp. 2d 1348 (Ct. Int'l Tr. 2014)*; CBB Group, Inc. v. United States,* 35 C.I.T. 743 (2011)*; H&H Wholesale Serv.s v. United States,* 30 C.I.T. 689 (2006)*; Tempco Mktg. v. United States,* 21 C.I.T. 191 (1998)*; PRP Trading Corp. v. United States*, 36 C.I.T. 1354 (2012).

*other* than an admissibility determination can stop the 30-day statutory countdown and prevent deemed exclusion from occurring. This holding is directly at odds with statutory language and Congressional intent.

Had this Court ruled that a seizure constitutes an admissibility determination under Section 499(c), there would likely have been no basis for Plaintiff to seek reconsideration of the Court's dismissal.[3] But its contrary conclusion has the effect of expanding the statute beyond its terms, and treats events not specified in the statute as precluding or interrupting the "deemed exclusion" event which occurs automatically by operation of law. 19 U.S.C. § 1499(c). This begets the question of whether a Federal agency may, by taking action not specified in a statute, prevent the occurrence of a statutory "deemed denial" prescribed by Congress.

As the D.C. Circuit cautioned in an *en banc* decision in *Allegheny Defense Project v. FERC*, 964 F.3d 1, 18-19 (D.C. Cir. 2020), where a statute specifies a fixed deadline for the issuance of a "deemed denial," and includes an enumeration of agency actions which will prevent such a deemed denial from occurring, the agency may not take extra-statutory action to "toll" or prevent the running of the statutory deadline. However, by holding that a seizure somehow aborts the running of the statutory period for a "deemed denial," this Court's decision permits precisely what *Allegheny Defense Project* rejects. It impermissibly expands the operation of the statute beyond the terms prescribed by Congress.

If, as this Court ruled, seizure of goods does not constitute an admissibility determination, it follows that a protestable deemed exclusion occurred 30-days after the goods were presented to CBP, and this Court is vested with jurisdiction over this action by 28 U.S.C. § 1581(a). Even if

---

[3] Plaintiff would have instead proceeded directly to the U.S. Court of Appeals for the Federal Circuit to review the notion that a seizure constitutes an admissibility determination.

3

this Court decides to stay proceedings for reasons of comity while a possible District Court forfeiture case progresses, it should not dismiss the case outright, for the reasons set out below.

**II.     The Court's Decision Encourages Forum-Shopping and Evasion of Judicial Review and Abdicates this Court's Statutory Role.**

This Court's observation that the occurrence of a deemed exclusion is unimportant once CBP, or some other federal agency, seizes merchandise does not anticipate all possible eventualities that may flow from the act of seizure. The Court's decision encourages forum-shopping and evasion of judicial review by CBP. It also disregards the fact that even after seizure occurs, there may likely be a necessary role for this Court to play.

**A.     Forum Shopping and Evasion of Judicial Review.**

In controversial case such as this, the Court's decision empowers CBP to seize goods within the 19 U.S.C. § 1499 detention period to prevent the occurrence of a protestable deemed exclusion, and prevent this Court from *ever* rendering an opinion on the operation of statutes addressing the admissibility of merchandise—*e.g.,* 21 U.S.C. § 863(f)(1). After seizing goods to prevent a deemed exclusion, CBP might thereafter release them to the importer, thereby frustrating judicial review of certain statutes while pursuing questionable policies.

There is evidence that CBP has followed such a "seize-and-release" pattern to avoid judicial review of 21 U.S.C. § 863(f)(1). *See e.g., Keirton USA, Inc. v. United States Customs & Border Prot.*, 2021 Dist. Lexis 73578 (W.D. Wa. April 16, 2021). This Court's decision to dismiss this case rather than retain jurisdiction, in some capacity, encourages forum-shopping by the Government and provides a means for the Government to avoid judicial review by this Court, or any court, of particular agency actions, policies, and/or interpretations.[4]

---

[4] Thus, in CBP Headquarters Ruling H306125 (August 5, 2020)—which represents the official, binding agency position, 19 C.F.R. § 177.9(a)—CBP has taken the position that

B.     **Notwithstanding a Seizure, this Court May Still Have Work to Do.**

If, seizure is not an admissibility determination, then this Court must maintain jurisdiction over Plaintiff's denied protest action even if it determines to exercise comity and stay the case pending a potential judicial forfeiture action in District Court. The fact of seizure does not foreclose the possibility that this Court may need to take action with respect to the excluded goods.

This Court's interpretation of § 1499(c) invites gamesmanship by Government agencies which may be interested in avoiding judicial review altogether, or at least judicial review by this Court. If, as this Court held, seizure is not an admissibility decision for purposes of 19 U.S.C. § 1499(c), it follows that a statutory deemed exclusion occurred and, this Court possesses subject matter jurisdiction over goods where a protest is filed and denied. The Tariff Act explicitly makes the refusal of admission a category of protestable decision, 19 U.S.C. § 1514(a)(1), and the Customs Courts Act specifically grants this Court "exclusive" jurisdiction to rule on the denial of protests challenging such a refusal. 28 U.S.C. § 1581(a).

---

importations of drug paraphernalia are absolutely banned and there is no circumstance that could ever satisfy the authorization exemption of 21 U.S.C. § 863(f)(1):

> If a state could essentially exempt itself from this federal statutory regime, then importations of drug paraphernalia into that state could easily be transported to other states in which drug paraphernalia remains illegal. We decline to interpret 21 U.S.C. § 863(f)(1) in this way because doing so would deprive other states of the full protections afforded by federal law.

Before this Court in *Eteros Technologies Inc. v. United States*, CIT 21-00287, the Government has taken a different position, now stating that the importation of 21 U.S.C. § 863(d) drug paraphernalia is allowed by § 863(f)(1), but only if the individual person seeking to import the goods has a State-issued license that is "specific to the person." *See* Def.'s Reply Br., Case No. 21-00287, ECF 25 at 3. Of course, this position is absurd considering that states do not issue licenses to persons engaged in the manufacture, sale, or possession of nearly all kinds of cannabis paraphernalia.

This Court and its predecessor have for decades exercised exclusive jurisdiction over exclusion protests, whatever the reason.[5] The amendments made to Section 499(c) were designed to provide importers with timely decisions on exclusions, and to *expedite* the path to judicial review of exclusions. *See* North American Free Trade Agreement Implementation Act, Pub L. 103-82, 107 Stat. 2057 (1993). This Court's decision here, however, provides CBP a blueprint to selectively, unilaterally *defeat* this Court's jurisdiction over protested exclusions, simply by the expedient of issuing a seizure notice prior to, or as here, (allegedly) on the day of the "deemed exclusion" deadline. This cannot possibly square with Congress' intent.

As held in *Blink Design, Inc. v. United States*, 986 F. Supp. 2d 1348 (Ct. Int'l Tr. 2014), the Court must evaluate the Plaintiff's protest to determine if it is substantively a valid protest of a 19 U.S.C. § 1514(a)(1) exclusion or an invalid protest of a (non-protestable) seizure. Here, that determination in an easy one, since the parties agree, and the record shows, that Plaintiff was unaware of any seizure at the time it filed its protest (and at the time it filed this suit). CBP even notified Plaintiff of the denial of its protest and its right to challenge such denial in this Court. And considering Plaintiff's many unsuccessful efforts to learn the status of its goods, it was hardly surprised to receive formal notice from CBP confirming jurisdictionally operative facts—

---

[5] *See e.g.*, *Wirtgen Amer. Inc. v. United States*, 447 F. Supp. 3d 1359 (Ct. Int'l Tr. 2020) (exclusion based on violation of 19 U.S.C. § 1337 exclusion order); *Cyber Power Sys. (USA) Inc. v. United States*, 471 F. Supp. 3d 1371 (Ct. Int'l Trade 2020) (refusal to mark goods under 19 U.S.C. § 1304(a)); *Blink Design Inc. v. United States*, 986 F. Supp. 2d 1348 (Ct. Int'l Tr. 2014) (allegations of false entry quantity reporting); *Luxury Int'l Inc. v. United States*, 23 C.I.T. 694 (1999) (allegation of piratical copyright infringement under 19 C.F.R. § 133.43); *China Diesel Imports v. United States*, 18 C.I.T. 515 (1994) (exclusion based on 19 U.S.C. § 1307 forced labor restrictions); *Wilsey Foods Inc. v. United States*, 18 C.I.T. 85 (1994) (exclusion based on dairy quotas); *A.N. Deringer Inc. v. United States*, 37 Cust. Ct. 166 (1956) (refusal to allow entry of goods under bond); *Central Commodities Corp. v. United States*, 6 Cust. Ct. 452 (1941) (rejection of entry without acceptance of another).

*i.e.,* that its exclusion protest was denied. Could there be a stronger factual showing under the *Blink* factors that this is a protest of exclusion, rather than of seizure?

Plaintiff has lamented CBP's lack of communication during the detention and protest periods. Notwithstanding, Plaintiff pursued the singular prescribed path to exclusive judicial review in this Court of the exclusion of its goods. As this Court has ruled that CBP's seizure was not an admissibility determination under Section 499(c), Plaintiff walked that path to its end and arrived at Court's door. While the Court, in the exercise of equity and discretion, might stay consideration of this action pending resolution of possible District Court forfeiture litigation, there is no ground to dismiss it.

If a seizure is not itself an exclusion of merchandise, but somehow prevents a "deemed exclusion" from occurring, then Congress' expressed intent that importers have a path to timely judicial review of exclusions in this Court can be easily defeated. This has been a pattern when Plaintiff and others have challenged CBP exclusions of claimed "drug paraphernalia," only to have the agency release or offer to release the goods, to avoid judicial review of CBP's absolute refusal to apply the 21 U.S.C. § 863(f)(1) authorization exemption. If past is prologue, we can reasonably deduce that CBP may not commence forfeiture proceedings.[6]

Plaintiff can posit at least three (and many more) scenarios, all of which have occurred in undersigned counsel's experience, it could be disadvantaged if this exclusion action is dismissed outright:

---

[6] This is, of course, identical to what happened to Root Sciences at the Port of Seattle in early 2020 involving goods that were concededly cannabis paraphernalia. *See e.g.,* Didier Decl. (ECF 14-2) at Ex. A, ¶ 11. This catch-and-release approach also occurred at the Port of Chicago in 2020, though in that instance, CBP engaged with counsel and the mere threat of filing a claim and cost bond to force a judicial forfeiture action led CBP to forego seizure altogether and instead proceed directly to releasing the merchandise back to Root Sciences—merchandise which Root Sciences, again, conceded to CBP was cannabis paraphernalia. *Id*.

1. **CBP Releases the Goods after Dismissal of Action**. CBP frustrates judicial review in this or any court, effectively "forum shopping";

2. **Department of Justice Declines to Institute Forfeiture Proceedings, but CBP continues to exclude the goods**. Plaintiff is in jurisdictional and procedural limbo, with no way to seek exclusion of its goods, unless it can fashion some type of "non-protest" exclusion challenge;

3. **District Court Dismisses Forfeiture Proceedings on Procedural Grounds**. If CBP does not rescind the exclusion, Plaintiff is in the same dire straits as in #2.

In any of these three scenarios, if this Court maintained jurisdiction over the denied protest, it could provide the importer/owner of the goods with appropriate declaratory and/or coercive relief, and resolve admissibility issues.

### C. The Court's Interpretation of Legislative History is Misplaced

The Court's opinion repeatedly cites the Mod Act (*see* Op. at 2, 10, 13), in discussing the creation of the "deemed exclusions" process in 19 U.S.C. § 1499(c). However, we submit that the Court's analysis of the relationship between "exclusions" and "seizures" is misplaced. This Court held:

> Congress explained that the statute would give CBP "a minimum of 60 days in which to determine <u>whether merchandise initially detained shall be excluded from entry</u> **or** <u>seized and forfeited</u> if otherwise authorized under other provisions of law." H.R. Rep. No. 103–361, pt. 1, at 111–12 (1993). **The use of the word "or" here suggests that Congress intended that exclusions and seizures be mutually exclusive actions**. In the instance in which CBP takes no action and a deemed exclusion of merchandise occurs, the burden of proof, typically resting on the complainant, switches to CBP to demonstrate "that it has good cause for not reaching an admissibility decision." *Id*. at 110. If a suit is commenced after an admissibility decision has been reached, the burden remains with the complainant in accordance with 28 U.S.C. § 2639.

Op. at 10-11 (emphasis added). Seizure is nowhere mentioned in the statutory provisions governing examination and detention. *See* 19 U.S.C. §§ 1499(c)(1) and (2). Nor is it mentioned in the provisions relating to deemed exclusions. *See* 19 U.S.C. § 1499(c)(5). The reference to "seizures" stands independently in 19 U.S.C. § 1499(c)(4) ("If otherwise provided by law,

8

detained merchandise may be seized and forfeited."). Had Congress intended seizures to preclude a "deemed exclusion," it could have clearly provided for this in § 1499(c)(5). It did not. It is well-settled that the primary evidence of Congressional intent is the language of the statute. *See e.g.*, *Train v. Colorado Public Interest Research Group*, 426 U.S. 1 (1976). Equally well-settled is that legislative history may not be relied upon to introduce an ambiguity in the statute. *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1749 (2020), *Milner v. Dep't of the Navy*, 562 U.S. 562, 574 (2011). By separately identifying seizure as an event that might occur during the admissibility decision process, Congress did nothing more than to indicate that a shipment of imported merchandise might become subject to two sets of proceedings—and, as noted by Plaintiff here, this might require courts administering those proceedings, to exercise comity and discretion.

Further, differences in the statutory burden of proof, 28 U.S.C. § 2639, do not turn on the existence of a seizure, but rather on whether the exclusion is an *actual* exclusion or a *deemed* exclusion. *See* 19 U.S.C. § 1499(c)(5)(C).

### III. Rehearing Gives this Court an Opportunity to Bring Order to Chaos.

Plaintiff does not seek reconsideration of this Court's jurisdictional decision lightly. We do so because this Court has a singular opportunity to bring order to what has been a chaotic area in Customs administration. There is no reason why CBP's erratic handling of seizures, and particularly this one,[7] should create havoc in what Congress intended to be a clear, computable path in 19 U.S.C. § 1499(c) for importers to file exclusion protests and invoke this Court's

---

[7] *See* Plaintiff's Application for an Order to Show Cause (ECF 14), at 2-5, 14-20; *see also e.g.,* O'Neill Decl. (ECF 16-3); Didier Decl. (ECF 16-3); Pl.'s Resp. Opp'n Mot. Dismiss (ECF 29) at 3-6, 12-15, 20-24; Pl.'s Resp. Oral Arg. Questions (ECF 40) at 4-5.

jurisdiction over denied protests—a path which Congress intended to operate expeditiously. H. Rep. No. 103-361, pt. 1, at 109-112. (1993).

Following this Court's dismissal ruling, seizures operate as an uncharacterized "X-factor" which *may* (if claimed to be made within the 30-day detention period) *or may not* (if effected after that period) block an importer's path to judicial review of exclusions in this Court. This case shows how chaotic and confusing the seizure process can be. The exercise of this Court's mandatory jurisdiction was not meant to turn on such details. Under this Court's decision, seizure of the goods—held not to be an admissibility determination—if made within the 30-day detention period, causes the careful statutory pathway which Congress laid out in 19 U.S.C. § 1499(c) to simply evaporate into thin air—something Congress could not have intended.

This Court's earlier finding that a seizure is not an admissibility determination suggests that a seizure does nothing to stop the § 1499(c) process, and that Plaintiff received a "deemed exclusion" at the end of the detention period. The better view is that a seizure, whether effected before or after "deemed exclusion" occurs, merely presents this Court with issues of comity when it exercises its 28 U.S.C. § 1581(a) jurisdiction over a category of protestable decisions outlined in 19 U.S.C. § 1514(a)(1). The exercise of comity and sound judicial discretion in such cases prevents the erosion of this Court's jurisdictional mandate, and assures that owners of imported goods will avoid being cast into jurisdictional or procedural limbo in the circumstances outlined above.

The same result would obtain if this Court were to amend its decision to conclude that a seizure, *when effected by Customs* (the only agency with power to *exclude* goods from entry) constitutes an actual exclusion under § 1499(c). This Court could then assert jurisdiction over a protest filed timely after the actual exclusion, applying comity and discretion as noted above.

Either determination would ensure that CBP could not obtain a procedural or judicial advantage by subjecting an importer to the shabby treatment it accorded Root Sciences here—lack of actual or constructive notice of seizure, failure to respond to counsel's incessant attempts to communicate, CBP confirming the existence of a denied exclusion protest and formally inviting litigation under 28 U.S.C. § 1581(a). Either decision would prevent forum-shopping or gamesmanship by CBP. Either determination would prevent importers from being cast into jurisdictional and procedural limbo if judicial forfeiture proceedings fail to materialize or fail to decide the issue which prompted the exclusion.

For the foregoing reasons, Plaintiff respectfully asks that the Court grant the instant motion for rehearing and set aside the dismissal.

Respectfully submitted,

NEVILLE PETERSON LLP

/s/ Richard F. O'Neill
    Richard F. O'Neill
    701 Fifth Ave., Ste. 4100-2159
    Seattle, WA 98104
    (206) 905-3648
    roneill@npwny.com

/s/ John M. Peterson
    John M. Peterson
    Patrick B. Klein
    One Exchange Plaza
    55 Broadway, Suite 2602
    New York, NY 10006
    (212) 635-2730
    jpeterson@npwny.com

Dated:  February 9, 2022

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. GARY S. KATZMANN, JUDGE

| | | |
|---|---|---|
| ROOT SCIENCES, LLC | : | |
| Plaintiff, | : | |
| v. | : | No. 21-00123 |
| THE UNITED STATES | : | |
| Defendant. | : | |

## CERTIFICATE OF COMPLIANCE

I, Richard F. O'Neill, of Neville Peterson LLP, who is responsible for the instant Brief, relying upon the word count feature of the word processing program used to prepare the Brief, certify that it complies with the word count limitation under the Court's Standard Chambers Procedures and contains 3,456 words.

Respectfully submitted,

/s/ Richard F. O'Neill
Richard F. O'Neill